## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BRYNDON FISHER and BRUCE REID, derivatively on behalf of Federal National Mortgage Association,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE UNITED STATES OF AMERICA,<br><br>    Defendant.<br><br>and FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>    Nominal Defendant. | Case No. 13-cv-00608-MMS (Judge Sweeney) |
| ERICK SHIPMON, derivatively on behalf of Federal National Mortgage Association,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>    Defendant.<br><br>and FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>    Nominal Defendant. | Case No. 13-cv-00672-MMS (Judge Sweeney) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR CONSOLIDATION OF SHAREHOLDER
DERIVATIVE ACTIONS AND APPOINTMENT OF LEAD COUNSEL**

## **TABLE OF CONTENTS**

I.   INTRODUCTION

II.  ARGUMENT

    A.  Consolidation of the Derivative Actions Is Appropriate.

    B.  The Court Should Appoint Robert C. Schubert as Lead Counsel and Attorney of Record for the Consolidated Derivative Action.

        1.  Proposed Lead Counsel Robert C. Schubert, Along with Proposed Of Counsel, Fully Meet the Criteria for Appointment of Lead Counsel for the Consolidated Derivative Action.

        2.  The Rule 23(g) Factors Also Support Appointment of Attorney Schubert as Lead Counsel for the Consolidated Derivative Action.

III. CONCLUSION

## TABLE OF AUTHORITIES

*Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982) ...................................................... 3

*Cheyenne-Arapaho Tribes of Indians of Okla. v. United States*, 671 F.2d 1305, 1312 (Ct. Cl. 1982) ............................................................................................................................................ 3

*Cienega Gardens v. United States*, 62 Fed. Cl. 28, 31 (2004) ........................................................ 3

*Deborah G. Mallow IRA SEP Inv. Plan v. McClendon*, No. Civ-12-426-M, 2012 WL 2886677, *2 (W.D. Okla. July 13, 2012) .................................................................................................... 4, 6

*Gross v. United States,* 106 Fed. Cl. 369, 382–83 (2012) ........................................................ 6, 8

*Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) .................................................... 3

*King v. U.S.*, 93 Fed. Cl. 718, 719 (2010) ............................................................................... 6, 8

*Moradi v. Adelson*, No. 11-cv-00490, 2011 WL 5025155, *2 (D. Nev. Oct. 20, 2011) ........... 6, 8

*Richey v. Ells*, No. 12-cv-1831, 2013 WL 179234, *1 (D. Colo. Jan. 17, 2013) ...................... 4, 6

*Sparano v. Lief*, No. 10-cv-2079, 2011 WL 830109, *1 (S.D. Cal. Mar. 3, 2011) ............... 4, 6, 8

## I.      INTRODUCTION

Plaintiffs Bryndon Fisher, Bruce Reid, and Erick Shipmon (collectively, the "Derivative Plaintiffs"), respectfully move this Court for an order (1) consolidating the two shareholder derivative actions pending in this Court captioned *Fisher v. United States*, No. 13-cv-00608-MMS and *Shipmon v. United States*, No. 13-cv-00672 (together, the "Derivative Actions" and, if consolidated, the "Consolidated Derivative Action") and (2) appointing Robert C. Schubert of Schubert Jonckheer & Kolbe LLP ("Schubert Jonckheer") as Lead Counsel and Attorney of Record for the Consolidated Derivative Action.

The Derivative Plaintiffs brought the Derivative Actions on behalf of nominal defendant Federal National Mortgage Association ("Fannie Mae") against the United States of America (the "United States" or "Government"). In both Derivative Actions, the Derivative Plaintiffs seek just compensation for the taking of the private property of Fannie Mae for public use by the United States. Specifically, the Derivative Plaintiffs in each case allege that in 2012, the United States unilaterally imposed upon Fannie Mae what the Government describes as a "Net Worth Sweep." As set forth in the complaints in the Derivative Actions, the Net Worth Sweep requires Fannie Mae to pay its entire net worth to the U.S. Treasury every quarter in perpetuity, thus taking Fannie Mae's entire value, without providing any compensation to Fannie Mae. The Derivative Plaintiffs allege that this action by the United States constituted a taking of Fannie Mae's property for which the Fifth Amendment requires the payment by the Government of "just compensation" to Fannie Mae.

In addition to the Derivative Actions, there are now pending in this Court four class actions (the "Class Actions") on behalf of variously defined classes of shareholders of Fannie Mae and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "Government Sponsored Enterprises" or "GSEs"). The plaintiffs in the Class Actions allege that

certain subsets of shareholders of Fannie Mae and Freddie Mac were harmed by the Net Worth

Sweep and various other actions by the United States government with respect to the GSEs. The

Class Actions are: (i) *Wash. Fed. v. United States*, No. 13-385C; (ii) *Cacciapelle v. United

States*, No. 13-446C; (iii) *Am. European Ins. Co. v. United States*, No. 13-496C; and (iv) *Dennis

v. United States*, No. 13-542C.

There are also now pending in this Court two non-class actions on behalf of particular

preferred shareholders of Fannie Mae and Freddie Mac (the "Non-Class Investor Actions")

alleging that these preferred shareholders were harmed by the Net Worth Sweep. The Non-Class

Investor Actions are: (i) *Fairholme Funds, Inc. v. United States*, No. 13-465C and (ii) *Arrowood

Indem. Co. v. United States*, No. 13-698C.[1]

The plaintiffs in the *Washington Federal* and *Cacciapelle* cases have filed a motion

seeking consolidation (the "*Cacciapelle* Motion") of three of the four class actions referenced

above: *Cacciapelle*, *American European*, and *Dennis*. Those plaintiffs also ask that the proposed

consolidated class action be coordinated (but not consolidated) with *Washington Federal*, the

Non-Class Investor Actions, and the Derivative Actions.[2]

---

[1] As of the date of this memorandum, there are also pending in the United States District Court
for the District of Columbia ten actions against the Government, including the FHFA and
Treasury, relating to the same or similar subject matter involving the GSEs as the Derivative
Actions. This motion does not address or affect any cases pending in any other court (unless any
such cases are transferred to this Court, as described below).

[2] The *Cacciapelle* Motion *originally* had sought consolidation of *Cacciapelle*, *American
European*, and *Dennis*, as well as the Derivative Actions. The Derivative Plaintiffs' counsel has
conferred with counsel to the plaintiffs in the *Washington Federal* and *Cacciapelle* actions, and
all such counsel agree that the Derivative Actions should be consolidated separately from
*Cacciapelle*, *American European*, and *Dennis,* which are direct, rather than derivative, actions.
Counsel for those plaintiffs also agree that the Derivative Actions, the Class Actions, and the
Non-Class Investor Actions should be coordinated. Counsel's agreement is reflected in the
Derivative Plaintiffs' response to the *Cacciapelle* Motion, *see Cacciapelle* Dkt. No. 33, and the
*Cacciapelle* plaintiffs' reply on that motion, *see Cacciapelle* Dkt. No. 34.

Through the present motion, the Derivative Plaintiffs seek the consolidation of the
Derivative Actions and appointment of Robert C. Schubert as Lead Counsel and Attorney of
Record to prosecute the Consolidated Derivative Action.

## II.   ARGUMENT

### A.   *Consolidation of the Derivative Actions Is Appropriate.*

This Court should consolidate the Derivative Actions. Under Rule of the Court of Federal
Claims ("RCFC") 42(a), "[i]f actions before the court involve a common question of law or fact,
the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2)
consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." RCFC
42(a).

This rule creates a two-part test. First, the Court must determine whether the cases
proposed for consolidation share a common issue of law or fact. *Cheyenne-Arapaho Tribes of
Indians of Okla. v. United States*, 671 F.2d 1305, 1312 (Ct. Cl. 1982) ("existence of a common
issue of law or fact [is a] prerequisite to consolidation"). Second, if the prerequisite is met, the
Court "must weigh the interest of judicial economy against the potential for delay, confusion,
and prejudice that may result from consolidation." *Cienega Gardens v. United States*, 62 Fed. Cl.
28, 31 (2004). The Court asks "whether specific risks of prejudice and possible confusion are
'overborne by the risk of inconsistent adjudications of common factual and legal issues, the
burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the
length of time required to conclude multiple suits as against a single one, and the relative
expense to all concerned of the single-trial, multiple-trial alternatives.'" *Id*. (quoting *Johnson v.
Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) and *Arnold v. E. Air Lines, Inc.*, 681 F.2d
186, 193 (4th Cir. 1982)).

First, the Derivative Actions plainly share common questions of law or fact. Their substantive allegations are identical. Both complaints seek compensation for the nominal defendant, Fannie Mae, from the United States due to the Government's unilateral imposition of the Net Worth Sweep, which appropriated tens of billions of dollars in present and future value from Fannie Mae for the public use of the United States.

Second, the consolidation of the Derivative Actions would not create any risks of prejudice or possible confusion. Consolidation is particularly appropriate where, as here, more than one shareholder derivative action has been filed on behalf of a single company based on the same substantive allegations. *See, e.g., Deborah G. Mallow IRA SEP Inv. Plan v. McClendon*, No. Civ-12-426-M, 2012 WL 2886677, *2 (W.D. Okla. July 13, 2012) (consolidating derivative actions that "arise from similar allegations against similar defendants"); *Sparano v. Lief*, No. 10-cv-2079, 2011 WL 830109, *1 (S.D. Cal. Mar. 3, 2011) (consolidating three derivative actions on behalf of same company that "clearly involve common questions of law and fact"); *Richey v. Ells*, No. 12-cv-1831, 2013 WL 179234, *1 (D. Colo. Jan. 17, 2013) (consolidating three derivative actions that "involve common questions of law or fact, including common parties and common claims").[3] Given that the legal and factual issues in the Derivative Actions are the same, consolidation of the Derivative Actions will reduce delay and avoid unnecessary costs. Consolidation of the Derivative Actions will avoid duplication of the parties' and Court's efforts on discovery, motion practice, and trial. Such consolidation is particularly appropriate because both Derivative Plaintiffs assert the legal rights of the same company—Fannie Mae—and

---

[3] The Derivative Plaintiffs have not found any case law from this Court regarding the consolidation of multiple shareholder derivative actions. That being said, RCFC 42(a) is identical to Fed. R. Civ. P. 42(a). Case law interpreting Rule 42 of the Federal Rules of Civil Procedure is therefore instructive here. *See, e.g., Cienega Gardens*, 62 Fed. Cl. at 31-32 (relying on case law under Fed. R. Civ. P. 42 to interpret RCFC 42).

therefore, it is important that a single action in this Court resolve the rights of Fannie Mae against the United States.

The Derivative Plaintiffs contacted the Government regarding its position on this motion. The Government does not oppose the consolidation of the *Fisher* and *Shipmon* derivative actions but plans to file a response regarding the other portions of this motion.

Accordingly, this Court should consolidate the Derivative Actions. The Court should also order that any shareholder derivative actions that are subsequently filed in or transferred to this Court against the United States on behalf of Fannie Mae, and based on the same or similar facts, be automatically consolidated with the Consolidated Derivative Action.[4]

**B.      *The Court Should Appoint Robert C. Schubert as Lead Counsel and Attorney of Record for the Consolidated Derivative Action.***

     1.      <u>Proposed Lead Counsel Robert C. Schubert, Along with Proposed Of Counsel, Fully Meet the Criteria for Appointment of Lead Counsel for the Consolidated Derivative Action.</u>

The Court should appoint Robert C. Schubert as Lead Counsel and Attorney of Record for the Consolidated Derivative Action because he, with support of his law firm, Schubert Jonckheer & Kolbe LLP and support of co-counsel Shapiro Haber & Urmy ("Shapiro Haber"),

---

[4] Courts routinely order that similar future-filed derivative cases be consolidated with an existing consolidated derivative action. *See, e.g., Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005) (ordering "any future-filed or transferred cases based on the same facts as those alleged in [the consolidated] actions will be consolidated into the first-filed [derivative] action"); *Green Meadows Partners LLP v. Tomkinson*, No. SACV 06-91 CJC, 2006 WL 6885989, *3 (C.D. Cal. June 6, 2006) (appointing lead counsel and ordering that "[a]ny and all subsequently-filed shareholder derivative actions based on the same or similar facts as to the above actions shall be automatically consolidated with those actions"); *In re Comverse Tech., Inc. Deriv. Litig.*, No. 06-cv-1849, 2006 WL 3761986, *5 & n.6 (E.D.N.Y. Sept. 22, 2006) (ordering that "[e]ach newly-filed or transferred shareholder derivative action that arises out of the subject matter of the Derivative Litigation shall be consolidated with the Derivative Litigation"); *Deborah G. Mallow*, 2012 WL 2886677 at *2 (same); *In re Diebold Secs. Litig.*, No. 5:05-cv-2873, 2006 WL 3023033, *4 (N.D. Ohio Oct. 23, 2006) (ordering lead counsel to alert the clerk in the event of filing, transfer, or removal of case that might properly be consolidated with the existing derivative action).

satisfy all of the criteria for such an appointment. Unlike RCFC 23(g), which explicitly contemplates the appointment of lead counsel in class actions, there is no corresponding rule expressly governing appointment of lead counsel in shareholder derivative actions. *See* RCFC 23.1. Courts, however, regularly appoint lead counsel in derivative actions based upon their inherent power to manage litigation. Although no statute identifies the specific criteria that courts should consider in appointing lead counsel in derivative cases, courts typically consider "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel." *Sparano*, 2011 WL 830109, at *2; *Moradi v. Adelson*, No. 11-cv-00490, 2011 WL 5025155, *2 (D. Nev. Oct. 20, 2011); *Comverse*, 2006 WL 3761986, at *2; *Richey*, 2013 WL 179234, *2; *Deborah G. Mallow*, 2012 WL 2886677 at *3; *see also Green Meadows*, 2006 WL 6885989, at *2-3.

This Court's rules differ from other federal courts in that RCFC 83.1(c)(1) requires a single individual Attorney of Record for each party in a case. The rule further requires that the Attorney of Record be admitted to practice in the U.S. Court of Federal Claims and that all other attorneys for a party be identified as "Of Counsel." *Id.* Nonetheless, in determining the adequacy of an attorney to act as lead counsel, the qualifications and resources of the proposed lead counsel's law firm and any co-counsel are relevant to establishing the attorney's adequacy. *See Gross v. United States,* 106 Fed. Cl. 369, 382–83 (2012) (Sweeney, J.); *see also**, King v. U.S.*, 93 Fed. Cl. 718, 719 (2010) (acknowledging "anticipated support of [lead counsel's] law firm" in appointing individual as lead counsel).

As we demonstrated herein, in light of the experience and capabilities of Attorney Schubert, his law firm, Schubert Jonckheer and co-counsel, Shapiro Haber, the Court should appoint Attorney Schubert as Lead Counsel for the Consolidated Derivative Action.

***The quality of the pleadings.*** The complaints in both of the Derivative Actions are high in quality and reflect the experience and capacity of Attorney Schubert and his co-counsel. The complaints allege in detail the basis for the derivative claim asserted on Fannie Mae's behalf against the United States, reflecting a thorough factual investigation by counsel. The complaints also include specific allegations explaining why pre-suit demands upon both the Board of Directors for Fannie Mae and the FHFA, acting in its capacity as Conservator for Fannie Mae, are excused. The pleadings in the Derivative Actions therefore instill confidence that Attorney Schubert, with his co-counsel, are qualified and capable to prosecute the derivative claim asserted.

***The vigorousness of the prosecution of the lawsuits.*** Although this case is still in the early stages, Attorney Schubert's efforts to date reflect vigorous prosecution of the case. Attorney Schubert (with his co-counsel) has conducted an extensive investigation into facts and legal issues involved in the actions, including but not limited to: (1) the Government's imposition of the Net Worth Sweep; (2) the validity of a Takings Claim under the Fifth Amendment; (3) the application of sovereign immunity to actions for money damages against the U.S. government; (4) the applicable standards regarding demand futility under Delaware law and RCFC 23.1; and (5) the requirements for standing under the Housing and Economic Recovery Act of 2008 ("HERA"). Schubert Decl. ¶ 2.[5] Attorney Schubert represents three plaintiffs with substantial holdings in Fannie Mae common stock, confirming a commitment to maximize relief for Fannie Mae. Attorney Schubert has prosecuted and will continue to prosecute vigorously the claims against the United States.

---

[5] "Schubert Decl." refers to the declaration of Robert C. Schubert, filed herewith.

***The capabilities of counsel.*** Attorney Schubert, together with his law firm, Schubert

Jonckheer, and co-counsel Shapiro Haber are highly capable derivative lead counsel. Both

Schubert Jonckheer and Shapiro Haber and are well-known and highly regarded securities

litigation firms that have been appointed lead counsel in numerous complex cases, including

shareholder derivative cases. The firms file herewith resumes detailing their experience,

particularly in shareholder derivative and securities litigation, and declarations that highlight

counsel's experience relevant to their ability to prosecute this action. *See* Schubert Decl. ¶¶ 3-8

& Ex. 1 thereto; Haber Decl.[6] ¶¶ 3–8 & Ex. 1 thereto. The firm resumes and the declarations of

counsel submitted herewith amply demonstrate the firms' adequacy, and therefore, Attorney

Schubert's adequacy, to act as Lead Counsel and Attorney of Record for the Consolidated

Derivative Action. *Gross*, 106 Fed. Cl. at 382; *King*, 93 Fed. Cl. at 719.

> 2.    The Rule 23(g) Factors Also Support Appointment of Attorney Schubert
>        as Lead Counsel for the Consolidated Derivative Action.

Although Rule 23(g) applies only to class actions rather than derivative actions, some

courts have relied upon the criteria for appointment of lead counsel set forth in Rule 23(g)(1)(A)

in appointing lead counsel in derivative actions as well. *Sparano*, 2011 WL 830109, at *2;

*Moradi*, 2011 WL 5025155, at *2; *Comverse*, 2006 WL 3761986, at *2. The Rule 23(g) factors,

which overlap with the factors already discussed above, include (1) the work counsel has done in

identifying or investigating potential claims in the action; (2) counsel's experience in handling

class actions, other complex litigation, and the types of claims asserted in the action; (3)

counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to

representing the class. *See* RCFC 23(g)(1)(A); *see also Gross*, 106 Fed. Cl. at 382. Attorney

Schubert, along with his firm and co-counsel, satisfy each of these criteria.

---

[6] "Haber Decl." refers to the declaration of Edward F. Haber, filed herewith.

***Work of counsel in identifying and investigating potential claims.*** Attorney Schubert and his co-counsel have done substantial work in identifying and investigating potential claims in the action. Schubert Decl. ¶ 2. Attorney Schubert has filed the first and only two pending derivative actions in this Court concerning the Net Worth Sweep. As discussed *supra*, Attorney Schubert has conducted extensive legal and factual research into the claims at issue in the Derivative Actions, including both issues common to all off the Fannie Mae actions (e.g., the proper legal standards for unlawful takings claims under the Fifth Amendment, the rules for standing under HERA, the specific agreements the Government entered into, and the relationship of the FHFA, acting as Conservator, with Treasury and the Company's nominal Board of Directors), as well as issues unique to the Derivative Actions (e.g., the standards for maintaining a derivative case under RCFC 23.1, the applicable tests for demand futility under Delaware law, and the propriety of derivative as opposed to direct claims). *Id.* ¶ 2. The complaints in the Derivative Actions reflect Attorney Schubert's substantial factual and legal research into the claims against the United States and therefore demonstrate Attorney Schubert's adequacy as Lead Counsel for the Consolidated Derivative Litigation.

***Counsel's experience and knowledge of the applicable law.*** As noted above and demonstrated by the declarations of counsel and the firm resumes of Schubert Jonckheer and Shapiro Haber, counsel have substantial experience in complex litigation, including substantial experience in derivative and securities litigation. Both firms are eminently qualified to support Attorney Schubert as Lead Counsel in the Consolidated Derivative Action. Furthermore, the Derivative Plaintiffs' pending complaints reflect full understanding of, and the ability to competently try, the unique legal and factual issues raised in this case.

***The resources that counsel will commit to the case.*** Attorney Schubert's firm, Schubert Jonckheer, and co-counsel, Shapiro Haber, together have substantial resources that they intend to commit to this case. At this time, each firm has committed three attorneys to directly participate in the case. This will enable the prosecution to be both efficient and effective. The two firms together, however, have fifteen attorneys, many of whom have extensive experience in shareholder derivative actions and other securities actions. In the event the workload in the case exceeds the capacities of the six attorneys currently working on the case, the firms will devote additional firm attorneys to the case. The firms also employ several paralegals and administrative support staff who will be available to assist with this matter. The firms are well-established, successful, and fully willing and able to make any investment in the case necessary to procure the best possible result for Fannie Mae, including but not limited to the hiring of expert witnesses or other consultants to advance Fannie Mae's interests. Schubert Decl. ¶¶ 10-11; Haber Decl. ¶¶ 10–11.

For all of these reasons, the Court should appoint Robert C. Schubert as Lead Counsel and Attorney of Record for the consolidated Derivative Actions.

## III.   CONCLUSION

For the reasons stated herein, the Court should enter an order (i) consolidating the Derivative Actions and (ii) appointing Robert C. Schubert as Lead Counsel and Attorney of Record for the Consolidated Derivative Action.

DATED: October 29, 2013

Respectfully submitted,

**SCHUBERT JONCKHEER & KOLBE LLP**


BY:      /s/ Robert C. Schubert_____
          ROBERT C. SCHUBERT

Robert C. Schubert
Attorney of Record
rschubert@schubertlawfirm.com

Three Embarcadero Ctr Ste 1650
San Francisco, CA 94111-4018
Ph: 415-788-4220
Fx: 415-788-0161

OF COUNSEL:

**SCHUBERT JONCKHEER & KOLBE LLP**

Noah M. Schubert
nschubert@schubertlawfirm.com

Miranda P. Kolbe
mkolbe@schubertlawfirm.com

Three Embarcadero Ctr Ste 1650
San Francisco, CA 94111-4018
Ph: 415-788-4220
Fx: 415-788-0161

**SHAPIRO HABER & URMY LLP**

Edward F. Haber
*ehaber@shulaw.com*

Ian J. McLoughlin
*imcloughlin@shulaw.com*

Patrick J. Vallely
*pvallely@shulaw.com*

53 State Street
Boston, MA 02109
Ph: 617-439-3939
Fx: 617-439-0134

*Attorneys for Plaintiffs Bryndon Fisher,*
*Bruce Reid, and Erick Shipmon*