## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **Bryndon Fisher, Bruce Reid,** and **Erick Shipmon**, derivatively on behalf of **Federal National Mortgage Association,** | |
| Plaintiffs, | No. 1:13-cv-00608-MMS |
| v. | |
| **The United States of America** | |
| Defendant, | |
| and **Federal National Mortgage Association** | |
| Nominal Defendant. | |
| **Bruce Reid** and **Bryndon Fisher,** derivatively on behalf of **Federal Home Loan Mortgage Association,** | |
| Plaintiffs, | No. 1:14-cv-00152-MMS |
| v. | |
| **The United States of America** | |
| Defendant, | |
| and **Federal Home Loan Mortgage Association** | |
| Nominal Defendant. | |

### PLAINTIFFS BRYNDON FISHER, BRUCE REID, AND ERICK SHIPMON'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS

The plaintiffs from the *Fisher* and *Reid* cases[1] join most, but not all, parts of the omnibus response to the Government's motion to dismiss.[2] In particular, the omnibus response focuses primarily on the viability of the direct claims other shareholders have asserted against the Government. The *Fisher* and *Reid* Plaintiffs submit this supplemental memorandum to explain how the shareholder claims asserted in connection with the Third Amendment are properly asserted as derivative claims.

The *Fisher* and *Reid* Plaintiffs were the first shareholders to bring claims in this Court derivatively on behalf of Fannie Mae and Freddie Mac, respectfully. After multiple courts of appeals ruled that shareholders' claims relating to the Third Amendment were derivative, other shareholders with cases pending in this Court amended their complaints to assert derivative claims, while at the same time maintaining their argument that the harms caused by the Third Amendment may be pursued directly on behalf of shareholders. For the reasons set forth below, both controlling precedent in this circuit, and the persuasive authority from other courts with respect to the Third Amendment, dictate that the claims the *Fisher* and *Reid* Plaintiffs assert (including takings, illegal exaction, and breach of fiduciary claims) are derivative.

---

[1] Plaintiffs Bryndon Fisher, Bruce Reid, and Erick Shipmon have filed derivative claims on behalf of the Federal National Mortgage Association ("Fannie Mae,"),  and plaintiffs Bruce Reid and Bryndon Fisher have filed derivative claims on behalf of the Federal Home Loan Mortgage Association ("Freddie Mac," or together with Fannie Mae, simply, the "Companies"). The plaintiffs from these two actions are referred to in this memorandum as the "*Fisher* and *Reid* Plaintiffs."

[2] As set forth in the appendix to the omnibus brief, the *Reid* and *Fisher* Plaintiffs join in the Introduction and Statement of the Case in their entirety. From the Argument section, the derivative plaintiffs join in the following subsections: I.A-C & E; II.B-C.; IV, footnote 16 and subsection C.1.; V.A.1. and V.B.-D.; VI.A., VI.B & C insofar as those subsections argue that the Government undertook fiduciary duties to the Companies, and VI.D. The *Fisher* and *Reid* Plaintiffs also join in the Conclusion in its entirety.

## I.      THE CLAIMS IN THIS CASE

Each of the shareholders asserting claims relating to the Third Amendment largely assert the same theory: the Government effectively nationalized the Companies by taking for the Government's use all of the Companies' net worth in perpetuity. Whether the Government's conduct in implementing the Third Amendment was authorized by HERA is a question this Court has not yet decided. The *Fisher* and *Reid* Plaintiffs allege that if the Government is correct that the Third Amendment was permissible under HERA, then the Government's exercise of authority under HERA in implementing the Third Amendment represented a taking without just compensation. *See*, *e.g.*, Fisher Compl.[3] ¶ 18. In contrast, if FHFA exceed its authority under HERA, then its conduct constituted an illegal exaction in violation of the Due Process Clause of the Fifth Amendment. *Id.* ¶ 19.

The "property" the Government seized through the Third Amendment is, simply enough, the Companies' rights to its future earnings—that is, the Companies' net worth in perpetuity. Although certain shareholders characterize the relevant property interests in different ways, the terms of the Third Amendment taken at face value refer to the Companies' net worth at the end of each quarter; the thrust of each of the shareholders' complaints focuses on the quarterly transfers of the Companies' net worth from the Companies to the Government. The transactions at issue are between the Companies and the Government; no money or other property has been taken directly from the shareholders that is distinct from the property and money that the Companies have paid and will pay to the Government. As explained below, given these facts, shareholders' claims are derivative.

## II.     ARGUMENT

This is not the first time this Court has considered claims arising from the Government's taking advantage of the financial crisis to take the assets of private companies for its own use.

---

[3] "Fisher Compl." refers to the Second Amended Consolidated Derivative Complaint filed on behalf of Fannie Mae in Case No. 1:13-cv-00608.

Specifically, the claims in *Starr International Co. v. United States*, 856 F.3d 953 (Fed. Cir. 2017), arose from a familiar series of events. *Starr* concerned the Government's investment in AIG at the height of the financial crisis. AIG, like Fannie and Freddie, is a publicly traded company, to which regulators paid acute notice during the recession of 2008, given AIG's size and importance in the economy. *Id.* at 958. Much like Fannie and Freddie, AIG received an infusion of capital from the Government, and as part of that infusion, the Government took a 79.9% equity stake in AIG. *Id.* at 958–59.[4] Although the particulars of the Government's investment in AIG are different than the Government's investment in Fannie and Freddie, the gravamen of the shareholders' claims is the same: the Government's conduct "amounted to an attempt to 'steal the business.'" *Id.* at 960.

In *Starr*, the Claims Court held a trial on the shareholders' direct claims, having dismissed the derivative claims earlier in the case. *Id.* at 962. The Claims Court held that the Government's acquisition of equity was not authorized under the Federal Reserve Act, and therefore, the transaction was an illegal exaction. *Id.* at 962. The Claims Court, however, found that the shareholders suffered no damages. *Id.* Both parties appealed.

On appeal, the Federal Circuit focused on whether the shareholders' claims were direct or derivative. On this question, the Federal Circuit confirmed that where shareholders' claims arise under federal law (as with shareholders' takings and illegal exaction claims here), federal law dictates whether the claims are direct or derivative. Here, however, federal law aligns with Delaware law. *Id.* at 965–66. The Federal Circuit therefore applied the leading Delaware decision that sets forth the standard on whether claims are direct or derivative, *Tooley v. Donaldson Lufkin & Jenrett, Inc.*, 845 A.2d 1031 (Del. 2004). There, the Delaware Supreme Court held that the two core questions relevant to distinguishing between direct and derivative

---

[4] Likewise, the Government acquired warrants to purchase 79.9% of Fannie Mae's and Freddie Mac's common stock. It has not, however, exercised those warrants.

3

claims are "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Id.* at 1033.

With respect to the first prong of *Tooley*—who suffered the alleged harm—typically, "claims of corporate overpayment are treated as causing harm solely to the corporation, and thus, are regarded as derivative." *Starr*, 856 F.3d at 967 (quoting *Gentile v. Rosette*, 906 A.2d 91 (Del. 2006)); *see also J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 818 (Del. Ch. 2005) (claim for corporate overpayment is derivative). Of course, both shareholders and the company may be harmed by a single transaction, but the relevant question is whether "an injury is suffered by the shareholder that is not dependent on a prior injury to the corporation." *Agostino v. Hicks*, 845 A.2d 1110, 1122 (Del. Ch. 2004); *see also El Paso Pipeline GP Co. v. Brinckerhoff*, 152 A.3d 1248, 1260 (Del. 2016) (relevant question is whether the stockholder "can prevail without showing an injury to the corporation") (quoting *Tooley*, 845 A.2d at 1039). Of course, shareholders are themselves adversely affected by corporate overpayments, but the harm shareholders suffer is essentially "dilution in value of the corporation's stock," which "is merely the unavoidable result (from an accounting standpoint) of the reduction in value of the entire corporate entity." *Starr*, 856 F.3d at 967 (quotations omitted). Therefore, despite the shareholders' protestations in *Starr* that the Government's conduct was designed to enrich itself as a shareholder at the expense of non-government shareholders, the Federal Circuit held that the plaintiffs' claims that the Government took AIG's assets for itself were derivative. *Id.*

Here, the core complaint of Fannie and Freddie's shareholders is the same as the complaint of AIG shareholders in *Starr*—the Government took advantage of the financial crisis to effectively nationalize a private company for the Government's own public use. The claims of Fannie and Freddie's shareholders against the Government for such conduct are derivative for largely the same reasons as in AIG. With respect to the takings claim, the substance of Plaintiffs' claim here is that the Government seized the Companies' net worth for its own purposes without

providing just compensation for what it took from the Companies. The property that was taken at the time of the Third Amendment was, specifically, Fannie's Mae's rights to receive and retain its future net earnings.[5] As was the case with AIG's shareholders, the Third Amendment no doubt adversely affected Fannie and Freddie's shareholders, but such effects were the "unavoidable result" of the reduction in value to the Companies that occurred as a result of the Government taking the Companies' assets. The immediate injury occurred to the Companies, who are the entities that paid the money over to the Government as required by the Third Amendment. Had the Companies not paid that money to the Government, the shareholders would not have been injured. Because the shareholders' injuries are dependent upon the prior injury to the Companies, the claims are derivative.

With respect to the second prong of *Tooley*—who would receive the benefit of any recovery—the recovery here would flow to the Companies, as the Companies are the entities required to pay the net worth sweep to the Government. With respect to the takings claim, as a "direct government appropriation," the Fifth Amendment requires that the payment of "just compensation" necessarily be returned to the source from which it was taken—Fannie Mae and Freddie Mac. *See Brown v. Legal Found.*, 538 U.S. 216, 240 (2003) (requirement that interest earned on client funds be transferred to a different owner for a legitimate public use "could be a *per se* taking requiring the payment of 'just compensation' to the client."); *Webb's Fabulous Pharms., Inc. v. Beckwith*, 449 U.S. 155, 164 (1980). That shareholders may indirectly benefit from the payment of "just compensation" to the companies, in the form of increased share prices and the possibility of dividend payments, cannot, through alchemy, transform a derivative claim into a direct claim

---

[5] Even if one focuses on the subsequent quarterly extractions of net worth from the Companies pursuant to the Third Amendment, the result is still the same: value is being taken from the Company, not the shareholders.

The same is true with respect to the illegal exaction claim, which requires that money be paid to the Government in contravention of law. *See* Defs. Motion to Dismiss at 70. Here, the Companies are who paid money to the Government pursuant to the Third Amendment; the shareholders have not paid any money in any relevant sense, either directly or in effect.[6]

The Federal Circuit's decision in *Starr*, which under similar facts found claims such as those asserted here to be derivative, echoes the decisions of multiple other courts, including two circuit courts, which have found that shareholders' claims relating to the Third Amendment are derivative. For example, the Seventh Circuit in *Roberts v. Federal Housing Finance Agency*, 889 F.3d 397, 409 (7th Cir. 2018), observed that shareholders' complaint is that "the net worth dividend illegally dissipated corporate assets by transferring them to the Treasury," which is a "classic derivative claim[]." Although the remedy shareholders seek here is different—they assert claims for damages rather than injunctive and declaratory relief—the essential harm shareholders allege is the same: the Third Amendment unlawfully transferred the Companies' assets to the Treasury. The Northern District of Iowa reached a similar conclusion for similar reasons, emphasizing that the "articulations of alleged harm generally describe harm to the GSE's stock value," which is "derivative in nature." *Saxton v. Fed. Hous. Fin. Agency*, 245 F. Supp. 3d 1063, 1072 (S.D. Iowa Mar. 27, 2017). The D.C. Circuit reached a similar conclusion with respect to shareholders' claim for breach of fiduciary duty. *Perry Capital LLC ex rel. Inv. Funds v. Mnuchin*, 864 F.3d 591, 626–27 (D.C. Cir. 2017).

---

[6] Notably, the Government does not contest that the Companies were required to pay money to the Government; instead, the Government's sole argument for dismissal of Plaintiffs' derivative illegal exaction claims is that HERA authorized the Third Amendment. But of course, even if this were true, it would not negate the Government's liability because, as noted, if the Third Amendment was permitted by law, then it was a taking without just (or any) compensation. And, of course, the property "taken" by the Government is the Companies' asset: the Companies' right to its future earnings in perpetuity.

Moreover, that the Government chose not to move to dismiss derivative plaintiffs' constitutional claims for failure to state a claim—where, by contrast, it did move to dismiss the direct claims—only lends further credence that these claims are properly derivative. Pointedly, nowhere in its eighty-one-page motion to dismiss does the Government dispute that derivative plaintiffs have stated constitutional claims that the Net Worth Sweep constitutes a taking of Fannie Mae's and Freddie Mac's property in violation of the Fifth Amendment. The Government has therefore waived any such argument. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("[A]rguments not raised in the opening brief are waived.").

Nor is it surprising that the Government does seek to dismiss derivative plaintiffs' takings claims for failure to state a claim, because derivative plaintiffs have indisputably alleged cognizable takings.  It is well established that a company's assets are "property" within the meaning of the Fifth Amendment.  *See*, *e.g.*, *Kimball Laundry Co. v. United States*, 338 U.S. 1 (1940). Indeed, Fannie Mae's and Freddie Mac's monetary assets were taken from the *companies*—not from any individual shareholder—providing the companies with a cognizable property interest. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013) (taking occurs if Government takes funds "linked to a specific, identifiable property interest such as a bank account").

## III.   CONCLUSION

For the foregoing reasons, and those set forth in those portions of the omnibus response to the Government's motion to dismiss that *Fisher* and *Reid* Plaintiffs join, the Court should deny the Government's motion to dismiss as to all derivative claims shareholders assert for takings without just compensation, illegal exaction, and breach of fiduciary duty.

DATED: November 2, 2018 **SCHUBERT JONCKHEER & KOLBE LLP**

BY: ___/s/ Robert C. Schubert_____
Robert C. Schubert

Attorney of Record
*rschubert@sjk.law*
Three Embarcadero Ctr Ste 1650
San Francisco, CA 94111-4018
Ph: 415-788-4220
Fx: 415-788-0161

OF COUNSEL: **SCHUBERT JONCKHEER & KOLBE LLP**
Noah M. Schubert
*nschubert@sjk.law*
Miranda P. Kolbe
*mkolbe@sjk.law*
Three Embarcadero Ctr Ste 1650
San Francisco, CA 94111-4018
Ph: 415-788-4220
Fx: 415-788-0161

**SHAPIRO HABER & URMY LLP**
Edward F. Haber
*ehaber@shulaw.com*
53 State Street
Boston, MA 02109
Ph: 617-439-3939
Fx: 617-439-0134

*Attorneys for Plaintiffs*

8