IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **Bryndon Fisher**, **Bruce Reid**, and **Erick Shipmon**, derivatively on behalf of **Federal National Mortgage Association**,<br><br>                    Plaintiffs,<br>   v.<br><br>**The United States of America**,<br><br>                    Defendant,<br><br>and **Federal National Mortgage Association**,<br><br>                    Nominal Defendant. | No. 13-608C<br>(Judge Sweeney) |
| **Bruce Reid** and **Bryndon Fisher**, derivatively on behalf of **Federal Home Loan Mortgage Corporation**,<br><br>                    Plaintiffs,<br>   v.<br><br>**The United States of America**,<br><br>                    Defendant,<br><br>and **Federal Home Loan Mortgage Corporation**,<br><br>                    Nominal Defendant. | No. 14-152C<br>(Judge Sweeney) |

1

### **DERIVATIVE PLAINTIFFS' MOTION TO LIFT STAY**

Plaintiffs Bryndon Fisher, Bruce Reid, and Erick Shipmon ("Derivative Plaintiffs")[1] in *Fisher et al. v. United States*, No. 13-608C, and *Reid et al. v. United States*, No. 14-152C, hereby move the Court to (1) lift its stay of consideration of the Government's omnibus motion to dismiss; (2) rule on the Government's motion to dismiss plaintiffs' derivative actions; and (3) allow Derivative Plaintiffs the opportunity to brief whether the Court's ruling should be certified for interlocutory appeal in coordination with *Fairholme Funds, Inc. v. United States*, No. 13-465. The Government opposes this motion.[2]

### **PROCEDURAL HISTORY**

The *Fisher* and *Reid* plaintiffs are the only shareholders who have consistently and exclusively asserted derivative claims in this Court on behalf of Fannie Mae and Freddie Mac in connection with the harm caused by the Net Worth Sweep. In fact, *Fisher* and *Reid* were the first shareholders to bring derivative claims in this Court, filing complaints on August 26, 2013 (on behalf on Fannie Mae) and February 26, 2014 (on behalf of Freddie Mac).[3] *Fisher*, ECF 1; *Reid*,

---

[1] Plaintiffs Bryndon Fisher, Bruce Reid, and Erick Shipmon have filed derivative claims on behalf of the Federal National Mortgage Association ("Fannie Mae,"), and plaintiffs Bruce Reid and Bryndon Fisher have filed derivative claims on behalf of the Federal Home Loan Mortgage Association ("Freddie Mac").

[2] The Government advised Derivative Plaintiffs that, in the event that the Court denies this motion and the Federal Circuit accepts an interlocutory appeal in *Fairholme*, the Government will not oppose Derivative Plaintiffs' filing of amicus briefs in that appeal. As explained *infra*, the mere ability to file amicus briefs would be inadequate to protect Derivative Plaintiffs' rights to defend their standing in the Federal Circuit.

[3] As required by Virginia law, plaintiffs' made a written demand on Freddie Mac on October 18, 2013, after which Freddie Mac had ninety days to respond. On January 15, 2014, the Federal Housing Finance Agency ("FHFA") responded to the demand purportedly in its capacity as conservator. FHFA stated that it did "not intend to authorize Freddie Mac or its directors or officers on behalf of Freddie Mac to take the actions that Shareholders demand." *Reid*, ECF 22.

2

ECF 1. Approximately four years later, on March 8, 2018, following extensive jurisdictional discovery and after multiple courts of appeals had ruled that shareholders' claims concerning the Net Worth Sweep were derivative, *Fairholme* filed an amended complaint in which it also pleaded derivative claims in addition to its direct claims. *Fairholme*, ECF 401. However, throughout briefing and oral argument on the Government's omnibus motion to dismiss, *Fairholme* and plaintiffs in the other related cases have steadfastly maintained that their claims are direct, not derivative. *See Fairholme*, ECF 428 at 21-25.

On December 6, 2019, this Court ruled on the Government's omnibus motion to dismiss in *Fairholme*, granting it as to the direct claims but denying it as to the derivative claims. *Fairholme*, ECF 447. The Court also ordered that the parties in *Fairholme* submit a joint status report proposing further proceedings and, if appropriate, a schedule for such proceedings. *Id.* Following this order, on January 28, 2020, the Court stayed consideration of the Government's motion to dismiss in each of the related cases pending determination of future proceedings in *Fairholme*. *Fisher*, ECF 58. On February 10, 2020, the Court further ordered that the parties in *Fairholme* file respective motions for interlocutory appeal of the Court's order on the motion to dismiss no later than February 21, 2020 and any responses by March 4, 2020. *Fairholme*, ECF 455. The parties in *Fairholme* each subsequently filed motions to certify certain questions for interlocutory appeal. *Fairholme*, ECF 456, 457.

On February 20, 2020, this Court issued a scheduling order in each of the related cases stating that it "is unlikely to issue a ruling on defendant's motion to dismiss in [these cases] prior to such interlocutory appeal." *Fisher*, ECF 59. It noted that "[t]he parties stipulating to the effects of this court's motion-to-dismiss ruling in *Fairholme* on plaintiffs' similar claims, however, would facilitate a more expeditious ruling." *Id.* Accordingly, the Court ordered the parties to submit a

joint status report by February 25, 2020 "in which they state whether they would be willing to provide (or at least discuss with each other) such stipulations." *Id.*

Later that day, Derivative Plaintiffs informed the Government that they were willing to consider a stipulation concerning the effects of the *Fairholme* decision on the Government's motion to dismiss in their cases. Derivative Plaintiffs further informed the Government that, based on this Court's reasoning and decision in *Fairholme*, the parties should stipulate, subject to the Government's right of appeal, that the Government's motion to dismiss the *Fisher* and *Reid* actions should be denied in its entirety. Indeed, each of the three derivative claims asserted in the *Fisher* and *Reid* actions survived the Government's motion to dismiss in *Fairholme*. As of the time of this motion, the Government has not yet provided its position on a potential stipulation.

It is not clear whether the parties will be able to agree on a stipulation in the *Fisher* and *Reid* actions. If the parties can agree on a stipulation, that would, as this Court noted, "facilitate a more expeditions ruling" on the Government' motion to dismiss these actions. *Fisher*, ECF 59. If, however, the parties cannot agree on a stipulation, the Court should promptly deny the Government's motions to dismiss in *Fisher* and *Reid* because the Government's arguments are foreclosed by this Court's reasoning and decision on substantially similar claims in *Fairholme*. In light of the Court's stated intention to rule promptly on certification for interlocutory appeal in *Fairholme*, a ruling on the Government's motions in *Fisher* and *Reid* is necessary in order to prevent prejudice to Derivative Plaintiffs—and will allow any interlocutory appeal to proceed in an orderly and efficient manner in coordination with the other related cases.

## Legal Standard

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). If there is "even a fair possibility" that a stay will prejudice another party, the proponent of a stay "must make out a clear case of hardship or inequity in being required to go forward." *Id.* at 255. Indeed, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.*

In *Cherokee Nation*, the Federal Circuit explained that "a trial court abuses its discretion by issuing a stay of indefinite duration in the absence of a pressing need." *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997). *Cherokee Nation* establishes a two-part test for determining whether an indefinite stay is within a district court's discretion. First, a district court must "identify a pressing need for the stay." *Id.* Second, the court "must then balance interests favoring a stay against interesting frustrated by the action." *Id.* The overarching principle in this analysis is a district court's "paramount obligation to exercise jurisdiction timely in cases before it." *Id.* In *Cherokee Nation*, the district court had found that a stay "would avoid duplicative litigation and conserve judicial resources." *Id.* The Federal Circuit reversed, holding that these concerns fell short of the "pressing need" required when a trial court seeks to stay a case indefinitely. *Id.*

## Argument

There is no pressing need for a stay of the *Fisher* and *Reid* actions. These cases have been pending for over six years, and they still await a decision on whether they survive the pleadings. As this Court observed in it scheduling order, "[t]he instant complaint[s] and the *Fairholme* complaint share significant commonalities in terms of allegations and claims. Indeed, defendant moved to dismiss [these] complaints with the same motion, and the plaintiffs in [these] case[s]

5

and the related cases collaborated in a joint oral argument." *Fisher*, ECF 59. The Government's motion to dismiss is fully briefed and ripe for decision.

Moreover, a continued stay of the derivative actions—while *Fairholme* is allowed to proceed with an interlocutory appeal on the same substantive legal questions at issue in these cases—would prejudice Derivative Plaintiffs. In their motions for certification of an interlocutory appeal, the parties in *Fairholme* identified two critical legal issues that would be dispositive in the *Fisher* and *Reid* actions.

First, Fairholme sought certification of "[w]hether Plaintiffs lack standing to litigate their 'nominally' direct claims because those claims are substantively derivative in nature." *Fairholme*, ECF 457 at 10. Whether the claims at issue in these cases are direct or derivative will obviously affect the rights of Derivative Plaintiffs and will likely be dispositive. As Fairholme explained, this question "consumed a significant portion of the parties' briefing and oral argument." *Id*. In fact, Derivative Plaintiffs submitted a supplemental brief squarely asserting that the claims were derivative and separately argued this issue on behalf of their cases at the court's joint hearing. *Fisher*, ECF 47. Importantly, Derivative Plaintiffs' position on this issue differed from the other plaintiffs. Whereas plaintiffs in the other cases argued that they could proceed on direct claims, Derivative Plaintiffs took the position that the takings, illegal exaction, and breach of fiduciary duty claims were exclusively derivative. *Cacciapalle*, ECF 91 at 5-6; *Fisher*, ECF 47. In its certification motion, however, Fairholme only seeks to appeal the Court's dismissal of its direct claims, further demonstrating that the interests of Derivative Plaintiffs would not be adequately represented in any appeal solely by the parties in that case. Derivative Plaintiffs should not "be compelled to stand aside while [Fairholme] settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 254.

Second, the Government sought certification of "[w]hether plaintiffs have standing to assert derivative claims notwithstanding the succession clause contained in the Housing and Economic Recovery Act of 2008." *Fairholme*, ECF 456. As the Government explains, "a Federal Circuit determination that plaintiffs may not pursue derivative claims under HERA's succession clause would require dismissal of the complaint in its entirety." *Id.* at 14. The same is true for the derivative claims asserted in the *Fisher* and *Reid* actions.

Indeed, the prejudice to Derivative Plaintiffs by an unfavorable Federal Circuit decision in *Fairholme* would be particularly acute because, unlike the related individual and class actions, Derivative Plaintiffs' claims face the risk of being barred by collateral estoppel. As the Court explained in its order on the motion to dismiss, "a shareholder's interests are fully represented by another shareholder litigating a derivative suit on behalf of the corporation because the corporation is the real party in interest." *Fairholme*, ECF 449 at 41. In its order, the Court found that plaintiff's claims were not precluded by collateral estoppel on the succession clause issue based on prior decisions in other cases, because plaintiffs in those prior decisions "lacked capacity to represent the Enterprises." *Id.* at 42-43. If the Federal Circuit were, however, to reverse this Court's decision on the succession clause, it may collaterally estop Derivative Plaintiffs from prevailing on their conflict-of-interest argument, effectively dooming their actions. It would therefore be fundamentally unfair to permit only Fairholme—and not Derivative Plaintiffs—to litigate whether Derivative Plaintiffs' claims are barred by HERA's succession clause.

Given that many of the critical issues that the parties in *Fairholme* propose to certify for appeal directly concern Derivative Plaintiffs' rights, Derivative Plaintiffs should be permitted to meaningfully participate in any appeal with the benefit of a decision on the Government's motion to dismiss. This is especially appropriate here because Derivative Plaintiffs are the only plaintiffs

in these cases who have consistently and exclusively asserted derivative claims from the outset. Although Fairholme was among the first to file, its complaint only asserted direct, not derivative, claims. *Fairholme*, ECF 1. In fact, it was not until 2018—five years after filing the case—that Fairholme added derivative claims to its complaint. *Fairholme*, ECF 401. Even then, Fairholme (and plaintiffs in the related cases) have primarily advocated for their direct claims, arguing that shareholders—as opposed to the Enterprises—are individually entitled to compensation for rights taken directly from them. ECF 428 at 21-25. Indeed, Fairholme's certification motion exclusively focuses on its direct claims. *Fairholme*, ECF 457. By contrast, Derivative Plaintiffs have zealously advocated that the claims are derivative from the outset. Derivative Plaintiffs authored the sections of the omnibus opposition to the Government's motion to dismiss concerning both the succession clause and issue preclusion—and argued these issues at the joint hearing. *See Fairholme*, ECF 428 at 25-34. Derivative Plaintiffs should therefore be permitted to fully participate, as parties, in the adjudication of these issues on appeal.

      Nor is the Government's proposed "solution" of allowing Derivative Plaintiffs to file amicus briefs in any appeal of *Fairholme* in the Federal Circuit sufficient to protect their due process rights. The Federal Circuit is under no obligation to accept amicus briefs from the parties in another case, let alone to consider the substantive issues raised in those briefs that may not be raised in the briefs of the parties. *See Christian v. U.S.*, 337 F.3d 1338, 1345 (Fed. Cir. 2003) ("Since none of the parties has made or adopted either argument [by amici] we decline to consider them."). It is not even clear that the Federal Circuit would necessarily have jurisdiction to entertain arguments from plaintiffs in other cases. *See In re Alappat*, 33 F.3d 1526, 1536 (Fed. Cir. 1994), *abrogated on other grounds by In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008). And even if it

did, Derivative Plaintiffs would likely be precluded from responding to the Government's appellate briefs or participating in the oral argument.

Finally, lifting the stay will not prejudice any party. In opposing the Government's motion to dismiss, plaintiffs in each of the cases worked collaboratively on an omnibus opposition and divided oral argument. Instead of duplicating work, this process allowed counsel for each of the plaintiffs to meaningfully participate in the issues that most affected their cases, leading to greater efficiency and more effective argument. Derivative Plaintiffs are committed to continuing this collaborative process and expect that any appeal would be consolidated for briefing and argument, resulting in similar efficiencies. Instead of litigating piecemeal appeals, this process will allow the Government to address each of the dispositive issues in a single, streamlined proceeding.

## Conclusion

For the foregoing reasons, Derivative Plaintiffs request that this Court (1) lift its stay of consideration of the Government's omnibus motion to dismiss in the *Fisher* and *Reid* actions; (2) rule on the Government's motion to dismiss in these actions; and (3) allow Derivative Plaintiffs the opportunity to brief whether this Court's ruling in *Fisher* and *Reid* should be certified for interlocutory appeal in coordination with *Fairholme*.

| | |
|---|---|
| DATED: February 24, 2020 | **SCHUBERT JONCKHEER & KOLBE LLP** |
| | BY:    /s/ Robert C. Schubert |
| | Robert C. Schubert<br>Attorney of Record<br>*rschubert@sjk.law* |
| | Three Embarcadero Ctr Ste 1650<br>San Francisco, CA 94111-4018<br>Ph: 415.788.4220<br>Fx: 415.788.0161 |
| OF COUNSEL: | **SCHUBERT JONCKHEER & KOLBE LLP** |
| | Noah M. Schubert<br>*nschubert@sjk.law* |
| | Miranda P. Kolbe<br>*mkolbe@sjk.law* |
| | Three Embarcadero Ctr Ste 1650<br>San Francisco, CA 94111-4018<br>Ph: 415.788.4220<br>Fx: 415.788.0161 |
| | **SHAPIRO HABER & URMY LLP** |
| | Edward F. Haber<br>*ehaber@shulaw.com* |
| | 53 State Street<br>Boston, MA 02109<br>Ph: 617.439.3939<br>Fx: 617.439.0134 |
| | *Attorneys for Plaintiffs* |