IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BRYNDON FISHER, *et al.*, | ) |
| Plaintiffs, | ) No. 13-608 C |
| | ) (Chief Judge Sweeney) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

## JOINT STATUS REPORT

Pursuant to the Court's order dated February 20, 2020 (ECF No. 59), the parties respectfully provide this status report addressing the Court's inquiry regarding the parties' willingness to discuss joint stipulations as to the effects of the Court's motion-to-dismiss ruling in *Fairholme Funds, Inc., et al. v. United States*, No. 13-465, on plaintiffs' claims.

Defendant's Position

After undertaking preliminary discussions with counsel for plaintiffs in the 11 Stayed Actions at issue,[1] defendant has concluded that it will be unable to enter into the stipulations suggested in the Court's Order.

Counsel for plaintiffs in 10 of the 11 Stayed Actions have communicated to us that they will ask the Court to (1) lift the stays currently in place; and (2) ultimately seek certification of separate interlocutory appeals in each of the actions.[2]  We cannot agree to such a process. The

---

[1] *Washington Federal v. United States*, No. 13-385C; *Cacciapalle v. United States*, No. 13-466C; *Fisher v. United States*, No. 13-608C; *Arrowood Indem. Co. v. United States*, No. 13-698C; *Reid v. United States*, No. 14-152C; *Rafter v. United States*, No. 14-740C; *Owl Creek Asia I, L.P. v. United States*, No. 18-281C; *Akanthos Opportunity Master Fund, L.P. v. United States*, No. 18-369C; *Appaloosa Inv. Ltd. P'ship I v. United States*, No. 18-370C; *CSS, LLC v. United States*, No. 18-371C; and *Mason Capital L.P. v. United States*, No. 18-529C.

[2]  Counsel for plaintiffs in *Arrowood Indem. Co. v. United States*, No. 13-698C, have not yet decided whether they will seek to lift the stay and pursue an appeal.

parties in *Fairholme* have filed motions to certify an interlocutory appeal; should the Court grant the motion, petitions for interlocutory appeal will be filed with the United States Court of Appeals for the Federal Circuit in the near future. One interlocutory appeal is the most efficient means for advancing the Third Amendment litigation in this Court, given that the *Fairholme* appeal will resolve all common legal questions in the Stayed Actions. Indeed, any effort to certify 10 or 11 interlocutory appeals is sure to place an undue burden on the Court, the Government, and the Federal Circuit. Multiple petitions for interlocutory appeal may jeopardize the success of a petition for interlocutory appeal in *Fairholme*. We will not, however, oppose requests by plaintiffs in the 11 Stayed Actions to participate in the interlocutory appeal through the filing of amicus briefs. Further, we have communicated to plaintiffs that we would not oppose motions to lift the current stays for purposes of dismissal of their complaints, so they make take appeals as of right to the Federal Circuit. None of the plaintiffs, however, has agreed to move forward on such terms.

  We note that there is precedent in the Court for staying a group of related cases while a decision in one case proceeds through the appeals process: the *Winstar* litigation. In *Winstar*, the Court stayed over 100 cases pending appeals in three test cases that proceeded to the Federal Circuit, and, ultimately, the Supreme Court. *See, e.g.*, *S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 52 Fed. Cl. 531, 537 (2001). Thus, there is no reason to lift the stays in the 11 Stayed Actions at issue here while the *Fairholme* decision is considered on interlocutory appeal, given that, with only one exception, each action challenges the same 2012 amendments to preferred stock purchase agreements executed by the Federal Housing Finance Agency, on behalf of Fannie Mae and Freddie Mac, and the Department of the Treasury. Resolution of the issues raised by the Government and Fairholme in their respective motions for interlocutory appeal will

inform the path forward for the Stayed Actions, as the Court acknowledged in its February 20 Order ("An interlocutory appeal in Fairholme is likely to address (if not resolve) issues that are germane to the parties in the instant case because of the similarities between the two complaints.").

Finally, given that motions to lift the stays currently in place have now been filed by plaintiffs in 9 of the 11 Stayed Actions, we plan to seek an extension of the deadlines for our responses to those motions. Such an extension will allow sufficient time for the Government to formulate and coordinate its responses to the motions.

Plaintiffs' Position

Counsel for plaintiffs Bryndon Fisher, Bruce Reid, and Erick Shipmon ("Derivative Plaintiffs") respectfully request that the Court schedule a telephonic status conference in this and the other related cases at its earliest convenience, so that the parties may discuss the pending motion to lift the stay in this case, the Government's refusal to discuss potential stipulations, and the prejudice that will be visited upon Derivative Plaintiffs if they are not permitted to participate as parties in the interlocutory appeal that is expected to be certified in the *Fairholme* action.

Following this Court's order, on February 20, 2020, Derivative Plaintiffs informed the Government that they were willing to consider a stipulation concerning the effects of the *Fairholme* decision on the Government's motion to dismiss in their cases. Derivative Plaintiffs further informed the Government that, based on this Court's reasoning and decision in *Fairholme*, the parties should stipulate, subject to the Government's right of appeal, that the Government's motion to dismiss the *Fisher* and *Reid* actions should be denied in its entirety. This is because each of the three derivative claims asserted in the *Fisher* and *Reid* actions survived the Government's motion to dismiss in *Fairholme*. However, on February 24, 2020, the

Government informed Derivative Plaintiffs that it would not enter into a stipulation and would oppose the pending motion to lift the stay in the *Fisher* and *Reid* cases.

In light of the Government's refusal to consider a stipulation concerning the effects of the *Fairholme* decision on the Government's motion to dismiss in *Fisher* and *Reid*, Derivative Plaintiffs therefore request this status conference among counsel for each of the related cases to address the arguments in their motion to lift the stay (and the similar motions to lift the stays in the related cases). As explained in Derivative Plaintiffs' motions, there is no pressing need for a continued stay of the *Fisher* and *Reid* actions. These cases have been pending for over six years, and they still await a decision on whether they survive the pleadings.

Moreover, a continued stay of these derivative actions—while *Fairholme* is allowed to proceed with an interlocutory appeal on the same substantive legal questions at issue in these cases—would prejudice Derivative Plaintiffs. As evidenced by the parties' certification motions in *Fairholme*, one of the central questions in any such interlocutory appeal will be whether the claims are direct or derivative. Fairholme seeks reversal of this Court's ruling that their "nominally" direct claims are substantively derivative, and the Government seeks reversal of this Court's ruling that plaintiffs have standing to bring those derivative claims notwithstanding the succession clause. *Fairholme*, ECF 457 at 10; ECF 456. It would be fundamentally unfair to permit only Fairholme—and not Derivative Plaintiffs—to litigate these critical questions concerning the derivative claims. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.").

Indeed, the prejudice to Derivative Plaintiffs by an unfavorable Federal Circuit decision in *Fairholme* would be particularly acute because, unlike the related individual and class actions,

4

Derivative Plaintiffs' claims face the risk of being barred by collateral estoppel. As the Court explained in its order on the motion to dismiss, "a shareholder's interests are fully represented by another shareholder litigating a derivative suit on behalf of the corporation because the corporation is the real party in interest." *Fairholme*, ECF 449 at 41. If the Federal Circuit were, however, to reverse this Court's decision on the succession clause, it may collaterally estop Derivative Plaintiffs from prevailing based on standing, effectively ending their actions.

Given that many of the issues in any *Fairholme* appeal directly affect Derivative Plaintiffs' rights, Derivative Plaintiffs should be permitted to meaningfully participate in any appeal with the benefit of a decision on the Government's motion to dismiss. This is especially appropriate here because Derivative Plaintiffs are the only plaintiffs in these cases who have consistently and exclusively asserted derivative claims from the outset. Although Fairholme was among the first to file, it did not assert any derivative claims until 2018—five years after filing its initial complaint—and it (and the plaintiffs in the related cases) have primarily advocated for their direct claims. By contrast, Derivative Plaintiffs have zealously advocated that the claims are derivative from the outset, authoring the sections of the omnibus opposition to the Government's motion to dismiss concerning the succession clause and issue preclusion and arguing these issues at the joint hearing. *See Fairholme*, ECF 428 at 25-34. Derivative Plaintiffs should therefore be permitted to fully participate, as parties, in the adjudication of these issues on appeal.

Nor is the Government's proposed "solution" of allowing Derivative Plaintiffs to file amicus briefs in any *Fairholme* appeal sufficient to protect their due process rights. The Federal Circuit is under no obligation to consider the substantive issues raised in those briefs that may not be raised in the briefs of the parties. *See Christian v. U.S.*, 337 F.3d 1338, 1345 (Fed. Cir. 2003) ("Since none of the parties has made or adopted either argument [by amici] we decline to

consider them."). And even if it did, Derivative Plaintiffs would likely be precluded from responding to the Government's appellate briefs or participating in the oral argument. Given that the *Fairholme* appeal may dispose of Derivative Plaintiffs' claims, this is plainly insufficient.

Derivative Plaintiffs therefore request that the Court set a telephonic status conference in this and the other related cases at its earliest convenience.

|  |  |
|---|---|
|  | Respectfully submitted, |
| JOSEPH H. HUNT<br>Assistant Attorney General | /s/ Robert C. Schubert<br>ROBERT C. SCHUBERT<br>*Counsel of Record for Plaintiffs* |
| s/ Robert E. Kirschman, Jr.<br>ROBERT E. KIRSCHMAN, JR.<br>Director | SCHUBERT JONCKHEER & KOLBE LLP<br>Three Embarcadero Ctr Ste 1650<br>San Francisco, CA 94111-4018<br>(415) 788-4220 |
| s/ Kenneth M. Dintzer<br>KENNETH M. DINTZER<br>Deputy Director<br>Commercial Litigation Branch<br>U.S. Department of Justice<br>P.O. Box 480 Ben Franklin Station<br>Washington, D.C. 20044<br>(202) 616-0385<br>(202) 307-0972 (fax)<br>Kenneth.Dintzer@usdoj.gov | (415) 788-0161 (fax)<br>rschubert@sjk.com<br><br>*Of Counsel*:<br>Noah M. Schubert<br>Miranda P. Kolbe<br>SCHUBERT JONCKHEER & KOLBE LLP<br><br>Edward F. Haber<br>SHAPIRO HABER & URMY LLP |
| *Attorneys for Defendant* | *Counsel for Plaintiffs* |

Date:  February 25, 2020