IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| BRYNDON FISHER, *et al.*, | ) ) ) |  |
| Plaintiffs, | ) ) | No. 13-608C (Chief Judge Sweeney) |
| v. | ) ) |  |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) ) |  |
| BRUCE REID, *et al*, | ) ) ) |  |
| Plaintiff, | ) ) | No. 14-152C (Chief Judge Sweeney) |
| v. | ) ) |  |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) ) |  |

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTIONS TO LIFT STAYS

Defendant, the United States, respectfully submits this response to the motions to lift the stays filed by plaintiffs Bryndon Fisher and Bruce Reid, et al. (collectively, Derivative Plaintiffs). For the reasons set forth below, Derivative Plaintiffs' motions should be denied.

INTRODUCTION

On March 9, 2020, the Court certified its decision in *Fairholme Funds, Inc. v. United States*, 146 Fed. Cl. 17 (2019), for interlocutory appeal. The parties' petitions to the Federal Circuit in that case will be filed tomorrow, March 19. Should the Federal Circuit grant those petitions, its decision should provide authoritative rulings in *Fairholme*, which could be applied to the other eighteen suits filed by shareholders of Fannie Mae and Freddie Mac (Enterprises) that are pending in this Court.

Although the Court previously stayed Derivative Plaintiffs' suits pending further proceedings in *Fairholme*, plaintiffs now request that the Court lift the stays and issue decisions on the pending motions to dismiss their complaints so that they may align themselves with the *Fairholme* interlocutory appeal.[1] Pl. Mot at 1, 9. But lifting the stays to allow further proceedings in this Court will not yield the relief plaintiffs seek. *Id*. As a preliminary matter, Derivative Plaintiffs ask the Court to "rule on the Government's motion to dismiss" and "allow Derivative Plaintiffs the opportunity to brief whether the Court's ruling should be certified for interlocutory appeal in coordination with *Fairholme*[.]" *Id*. at 1. However, given that the Court has already certified the *Fairholme* decision for interlocutory appeal and the *Fairholme* parties will file petitions with the Federal Circuit tomorrow, it will be impossible for motions to certify interlocutory appeals in these cases to match the schedule in *Fairholme*. This is so because even if the Court lifted the stays and issued decisions on the United States' motion to dismiss, the best-case scenario for Derivative Plaintiffs would be interlocutory decisions denying that motion. In that scenario, the Government is unlikely to seek certification of issues already on appeal in *Fairholme* and no basis exists for Derivative Plaintiffs to seek certification of favorable decisions on their own. Accordingly, the stays should continue and, should the Federal Circuit accept the parties' interlocutory appeal petitions in *Fairholme*, Derivative Plaintiffs may submit an *amicus* brief, which we would not oppose.

In any event, Derivative Plaintiffs' motions should be denied because a decision by the Federal Circuit on the *Fairholme* parties' petitions for interlocutory appeal (if granted) should provide the Court with authoritative rulings that could be applied to simplify proceedings here.

---

[1] *See, e.g.*, Order, *Fisher v. United States*, No. 13-608C (Fed. Cl. Jan. 28, 2020), ECF No. 58. The Court entered an identical order in the *Reid* case.

Indeed, Derivative Plaintiffs' requests to lift the stay for additional briefing and rulings in these cases before completion of the interlocutory appeal process in *Fairholme* would only impose needless burdens on the Court and the parties. Accordingly, Derivative Plaintiffs' motions should be denied.

## ARGUMENT

To conserve judicial and party resources, the Court properly stayed Derivative Plaintiffs' cases pending further proceedings in *Fairholme*. Those stays should not be lifted.

I.  The Court Should Maintain The Stays Pending Completion Of The Interlocutory Appeal Process In *Fairholme*

A trial court possesses inherent power to stay one action pending the resolution of another which, "even if it should not dispose of all the questions involved, would certainly narrow the issues in the pending cas[e] and assist in the determination of the questions of law involved." *Landis v. N. Am. Co.*, 299 U.S. 248, 253-54 (1936). Although the Court may weigh a variety of factors when considering whether to grant a stay, the basis for a stay is especially strong when it would "simplif[y] the 'issues, proof, and questions of law, which could be expected to result from a stay.'" *Unionbancal Corp. & Subsidiaries v. United States*, 93 Fed. Cl. 166, 167 (2010) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

In particular, when an appellate ruling in a closely-related matter is likely to affect another pending case, the reason for a stay is "at least a good one, if not an excellent one." *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist*, 559 F.3d 1191, 1196 (11th Cir. 2009). For instance, in *Unionbancal Corp.*, this Court stayed the plaintiff's case pending an appeal involving a related tax transaction. *Unionbancal Corp.*, 93 Fed. Cl. at 168. The Court reasoned that "it only makes sense to obtain the guidance from the Federal Circuit" before the parties and the Court expend additional resources in the plaintiff's case given that the "Federal

3

Circuit's decision will most likely help clarify and simplify" the legal issues, thus "conserv[ing] judicial resources." *Id.*; *see also Farmer v. United States*, 145 Fed. Cl. 475, 484 (2019) (when overlapping legal issues are already on appeal, moving forward with litigation is "not a judicious use of either the parties' or the court's resources"). This rationale is especially strong in cases involving "novel issues of far reaching importance to the parties and the public." *Landis*, 299 U.S. at 256. Indeed, in complex litigation of public significance, this Court routinely stays cases pending related appeals to conserve judicial and party resources. *See S. Cal. Fed. Sav. & Loan v. United States*, 52 Fed. Cl. 531, 537 (2002) (noting that the Court stayed several cases pending appellate resolution of three exemplar *Winstar* cases); *Farmer*, 145 Fed. Cl. at 483 (staying risk-corridors case brought under the Affordable Care Act pending resolution of related appeal in the Supreme Court); *Blue Cross Blue Shield of N. Dakota v. United States*, No. 18-1983, slip op. at 2 (Fed. Cl. July 9, 2019), ECF No. 33 (staying cost-sharing reduction case brought under the Affordable Care Act pending resolution of related appeals in the Federal Circuit).

Here, the Court recognized a need to obtain guidance from the Federal Circuit before entertaining further proceedings in Derivative Plaintiffs' cases, along with the numerous other Enterprise-shareholder suits pending before the Court. *See Fairholme Funds, Inc. v. United States*, No. 13-465, 2020 WL 1128820, *3 (Fed. Cl. Mar. 13, 2020). Because the *Fairholme* interlocutory appeal will encompass all legal issues raised in Derivative Plaintiffs' suits (assuming the Federal Circuit grants the parties' interlocutory appeal petitions) the Federal Circuit's decision will clarify which, if any, claims may proceed. For instance, if the Federal Circuit rules that the Housing and Economic Recovery Act of 2008 (HERA) bars shareholder derivative suits, such a ruling would require dismissal of Derivative Plaintiffs' complaints. Moreover, if the Federal Circuit rules that, when it acts as conservator, the Federal Housing

Finance Agency (FHFA) is not the United States, that ruling would also require dismissal of Derivative Plaintiffs' complaints. Thus, however the Federal Circuit resolves the legal issues in *Fairholme*, those rulings will simplify proceedings here.

Lifting the stay for further proceedings would consume substantial judicial and party resources, beginning with additional briefing and rulings by the Court. Pl. Mot. at 1. In any event, those additional proceedings would not achieve Derivative Plaintiffs' desired result—a briefing schedule on motions to certify aligned with the schedule in *Fairholme*—because the Court already certified the *Fairholme* decision and the parties' petitions to the Federal Circuit will be filed tomorrow. In other words, lifting the stay would impose burdens with no benefit.

II.  The Court's Need For Federal Circuit Guidance In These Extraordinary Cases Outweighs Derivative Plaintiffs' Interest In Litigating Legal Issues Raised In *Fairholme*

As the Supreme Court explained in *Landis*, in considering whether to grant a stay, a court weighs a variety of case-specific factors, including the nature of the case, its public importance, conservation of the court's resources, and the relative benefits and burdens on the court and the parties. *Landis*, 299 U.S. at 255-56. One factor that a court may consider is a party's interest in litigating a legal issue that its case shares with another case; however, that consideration is context-specific. *Id.* at 255. As an example, the Supreme Court explained that a stay may be more appropriate in a case presenting "novel problems of far-reaching importance to the parties in the public," than in a suit seeking relief "upon a bill of goods." *Id.* Thus, although a litigant typically should not be "compelled to stand aside while a litigant in another [case] settles the rule of law that will define the rights," the Supreme Court recognized that "[e]specially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 255-56.

Although Derivative Plaintiffs contend that they should not be required to "stand aside" while the *Fairholme* plaintiffs litigate legal issues that will affect their cases, Pl. Mot. at 5-6, no other option exists.  Even if the Court lifted the stays and issued favorable decisions for Derivative Plaintiffs, the Government is unlikely to seek certification of issues already on appeal in *Fairholme* and no basis exists for Derivative Plaintiffs to seek certification of favorable decisions on their own.  In any event, the nineteen Enterprise-shareholder suits pending before the Court exemplify the type of publicly-significant cases described in *Landis* involving "novel problems of far-reaching importance to the parties and the public."  *See id.* at 255.  Given the importance of these suits, the Court's need to obtain the Federal Circuit's guidance outweighs Derivative Plaintiffs' interest in litigating those any particular legal issue themselves.

Finally, Derivative Plaintiffs need not "stand aside"—they may advance their own arguments to the Federal Circuit in an *amicus* brief.  Although they presume that an *amicus* brief would receive little attention from the Federal Circuit, or could be rejected outright, Derivative Plaintiffs underestimate the utility of such briefs when they are genuinely helpful.  Pl. Mot. at 8.  As a circuit judge on the United States Court of Appeals for the Third Circuit, Justice Alito explained:

> Even when a party is very well represented, an amicus may
> provide important assistance to the court.  "Some amicus briefs
> collect background or factual references that merit judicial notice.
> Some friends of the court are entities with particular expertise not
> possessed by any party to the case.  Others argue points deemed
> too far-reaching for emphasis by a party intent on winning a
> particular case.  Still others explain the impact a potential holding
> might have on an industry or other group."

*Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, C.J.) (quoting Luther T. Munford, *When Does the Curiae Need An Amicus?*, 1 J. App. Prac. & Process 279, 281 (1999)); *see also* Status Conf. Tr. 63:25-64:9 (noting that in *John R. Sand & Gravel Co. v.*

6

*United States*, 457 F.3d 1345 (Fed. Cir. 2006), the Federal Circuit determined that a complaint should be dismissed for lack of subject-matter jurisdiction based on an argument raised by an *amicus*, even though neither party to the appeal raised that issue itself).  Simply put, the Federal Circuit gives an *amicus* brief as much weight as it merits in a given case.

III.   Derivative Plaintiffs Fail To Show A "Fair Possibility" Of Harm Should The Stays Continue

In *Landis*, the Supreme Court noted that a stay may be unwarranted if there is a "fair possibility" that the stay will harm another party.  *Landis*, 299 U.S. at 255.  In their motion, Derivative Plaintiffs cite this language, but identify no "fair possibility" of harm to them if the stays were to continue pending completion of the *Fairholme* interlocutory appeal process.  Pl. Mot. at 5-6.

Instead, Derivative Plaintiffs merely speculate that the *Fairholme* plaintiffs might inadequately represent their legal interests.  This speculation is based on the *Fairholme* plaintiffs' assertion of both direct and derivative claims, but Derivative Plaintiffs pled only derivative claims.  Derivative Plaintiffs illogically assume that *Fairholme* counsel will prioritize their direct claims at the expense of their derivative claims—an assumption about which the Court expressed serious doubt.  Status Conf. Tr. at 21:9-24.  Moreover, in support of their argument that continuation of the stay will cause them harm, Derivative Plaintiffs point out that "*Fairholme* only seeks to appeal the Court's dismissal of its direct claims, further demonstrating that the interests of Derivative Plaintiffs would not be adequately represented in any appeal solely by the parties in that case."  Pl. Mot. at 6.  But the *Fairholme* plaintiffs only seek to appeal dismissal of their direct claims because those are the only claims that the Court dismissed.  Indeed, the Court permitted the *Fairholme* plaintiffs to pursue their derivative claims.  By contrast, the United States seeks review of the Court's decision to permit shareholder-derivative

claims and Derivative Plaintiffs do not argue that the *Fairholme* plaintiffs would not sufficiently advocate for those claims on appeal.

More importantly, Derivative Plaintiffs cannot show any divergence of interests between themselves and the *Fairholme* plaintiffs because, as shareholders asserting derivative claims on behalf of the Enterprises as the real plaintiffs-in-interest, Derivative Plaintiffs and the *Fairholme* plaintiffs share the same interests. Thus, Derivative Plaintiffs' concern about the preclusive effect of rulings does not reflect any potential harm unique to them given that any rulings about shareholder derivative-suit standing should apply uniformly to all shareholders. *Id.* at 7. And although Derivative Plaintiffs would prefer to argue the derivative-standing issue in the Federal Circuit themselves given that they asserted derivative claims before the *Fairholme* plaintiffs, Derivative Plaintiffs do not show how the *Fairholme* plaintiffs' litigation of this issue on interlocutory appeal could harm the *Enterprises* as the real plaintiffs-in-interest. *Id.* at 8. Indeed, Derivative Plaintiffs and the *Fairholme* plaintiffs coordinated their briefing on this point in their response to the United States' omnibus motion to dismiss.

IV.     The Court Would Not Abuse Its Discretion By Maintaining The Stay

Derivative Plaintiffs also contend that the stays should be lifted because "a trial court abuses its discretion by issuing a stay of *indefinite* duration in the absence of a pressing need." Pl. Mot. at 5 (quoting *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (emphasis added)).

But the stays issued here are not "indefinite." *See id.* Rather, the stays run until completion of the interlocutory appeal process in *Fairholme*, which is likely to conclude within a year. By contrast, in *Cherokee Nation*, the court stayed two suits alleging mismanagement of tribal lands pending the resolution of the Government's actions against third parties to quiet title

to those lands—none of which had been filed.  Indeed, in *Cherokee Nation*, the Government acknowledged that judgments in those actions could be "decades" away.  *Id.* at 1415-16.  Under those circumstances, the Federal Circuit determined that the trial court's stay was an abuse of discretion.  *Id.* at 1416-18.

The stay in *Cherokee Nation* bears no resemblance to the stays issued here.  Because the stays in these cases only run until completion of the interlocutory appeal process in *Fairholme,* the Court's discretion to stay is at its broadest.[2]  *See In re Sacramento Util. Dist.*, 395 F. App'x 684, 866 (Fed. Cir. 2010) (denying mandamus relief because the trial court's stay of a related proceeding is well within the bounds of the trial court's discretion); *Taunton Gardens Co. v. Hills*, 587 F.2d 877, 879 (1st Cir. 1977) (stay pending related appeal was "adequately circumscribed").  Accordingly, continuing the stays would reflect a judicious exercise of the Court's discretion—not an abuse of it.

---

[2] To address Derivative Plaintiffs' allegation that the stay is "indefinite," the Court may frame its order to specify that the cases will be stayed pending completion of the interlocutory appeal process in *Fairholme*.  5A Charles A. Wright, *Fed. Practice & Procedure* § 1360 (3d ed. Dec. 2019 update) (noting that courts possess broad discretion to frame the parameters of a stay order to protect the parties from a stay's potentially prejudicial effects).

CONCLUSION

For these reasons, Derivative Plaintiffs' motions should be denied.

                                        Respectfully submitted,

                                        JOSEPH H. HUNT
                                        Assistant Attorney General

                                        s/Robert E. Kirschman, Jr.
                                        ROBERT E. KIRSCHMAN, JR.
                                        Director

| | |
|---|---|
| | s/Kenneth M. Dintzer |
| ELIZABETH M. HOSFORD | KENNETH M. DINTZER |
| FRANKLIN E. WHITE, JR. | Deputy Director |
| Assistant Directors | Commercial Litigation Branch |
| | Civil Division |
| ERIC E. LAUFGRABEN | U.S. Department of Justice |
| Senior Trial Counsel | P.O. Box 480 |
| | Ben Franklin Station |
| MARIANA T. ACEVEDO | Washington, DC 20044 |
| RETA E. BEZAK | Telephone: (202) 616-0385 |
| Trial Attorneys | Facsimile:  (202) 307-0973 |
| | Email:      Kenneth.Dintzer@usdoj.gov |
| | |
| March 18, 2020 | Attorneys for Defendant |