1          IN THE UNITED STATES COURT OF FEDERAL CLAIMS

2

3    WASHINGTON FEDERAL, et al.,        )  Case No. 13-385C

4    FAIRHOLME FUNDS, et al.,           )  Case No. 13-465C

5    JOSEPH CACCIAPALLE, et al.,        )  Case No. 13-466C

6    BRYNDON FISHER, et al.,            )  Case No. 13-608C

7    ARROWOOD INDEMNITY COMPANY, et al., )  Case No. 13-698C

8    BRUCE REID, et al.,                )  Case No. 14-152C

9    LOUISE RAFTER, et al.,             )  Case No. 14-740C

10   APPALOOSA INVESTMENT LIMITED       )  Case No. 18-281C

11   PARTNERSHIP I, et al.,             )

12   CSS, LLC, et al.,                  )  Case No. 18-371C

13   MASON CAPITAL, LP, et al.          )  Case No. 18-529C

14           Plaintiffs,               )

15       vs.                           )

16   UNITED STATES OF AMERICA,          )

17           Defendant.                )

18

19                      Courtroom 5
               Howard T. Markey National Courts Building
20                   717 Madison Place, N.W.
                       Washington, D.C.
21                 Thursday, March 5, 2020
                         2:00 p.m.
22                 Telephonic Oral Argument

23       BEFORE:  THE HONORABLE MARGARET M. SWEENEY

24

25   Transcribed by:  Susanne Bergling, RMR-CRR

Washington Federal, et al. v. USA                    3/5/2020

```
 1    APPEARANCES:

 2    ON BEHALF OF THE FAIRHOLME PLAINTIFFS:

 3            DAVID H. THOMPSON, ESQ.

 4            VINCENT J. COLATRIANO, ESQ.

 5            BRIAN W. BARNES, ESQ.

 6            Cooper & Kirk PLLC

 7            1523 New Hampshire Avenue, N.W.

 8            Washington, D.C. 20036

 9            (202) 220-9600 / (202) 220-9601 (fax)

10            ccooper@cooperkirk.com

11

12    ON BEHALF OF THE CACCIAPALLE PLAINTIFFS:

13            HAMISH P.M. HUME, ESQ.

14            Boies Schiller Flexner, LLP

15            1401 New York Avenue, N.W.

16            Washington, D.C. 20005

17            (202) 237-2727 / (202) 237-6131 (fax)

18            hhume@bsfllp.com

19            AND

20            ERIC L. ZAGAR, ESQ.

21            Kessler Topaz Meltzer & Check LLP

22            280 King of Prussia Road

23            Radnor, Pennsylvania 19087

24            (610) 667-7706 / (610) 667-7056 (fax)

25            ezagar@ktmc.com
```

3

Washington Federal, et al. v. USA                                    3/5/2020

```
 1    ON BEHALF OF THE OWL CREEK, AKANTHOS, APPALOOSA, CSS
 2    AND MASON PLAINTIFFS:
 3              LAWRENCE D. ROSENBERG, ESQ.
 4              C. KEVIN MARSHALL, ESQ.
 5              Jones Day (DC)
 6              51 Louisiana Avenue, N.W.
 7              Washington, DC 20001-2113
 8              (202) 879-7622 / (202) 626-1700
 9              ldrosenberg@jonesday.com
10
11    ON BEHALF OF THE WASHINGTON FEDERAL PLAINTIFFS:
12              KEVIN K. GREEN, ESQ.
13              Hagens Berman Sobol Shapiro
14              533 F Street, Suite 207
15              San Diego, California 92101
16              (619) 929-3340
17              KevinG@hbsslaw.com
18              AND
19              ROBERT ROSEMAN, ESQ.
20              Spector Roseman & Kodroff
21              Two Commerce Square
22              2001 Market Street, Suite 3420
23              Philadelphia, Pennsylvania 19103
24              (215) 496-0300 / (215) 496-6611
25              rroseman@srkattorneys.com
```

Washington Federal, et al. v. USA                              3/5/2020

```
 1    ON BEHALF OF THE REID AND FISHER PLAINTIFFS:
 2              EDWARD F. HABER, ESQ.
 3              Shapiro Haber & Urmy, LLP
 4              53 State Street
 5              Boston, Massachusetts 02109
 6              (617) 439-3939 / (617) 439-0134 (fax)
 7              ehaber@shulaw.com
 8              AND
 9              NOAH M. SCHUBERT, ESQ.
10              Schubert Jonckheer & Kolbe LLP
11              Three Embarcadero Center, Suite 1650
12              San Francisco, California 94111-4018
13              (415) 788-4220 / (415) 788-0161 (fax)
14              nschubert@sjk.law
15
16    ON BEHALF OF THE RAFTER PLAINTIFFS:
17              GREGORY P. JOSEPH, ESQ.
18              CHRISTOPHER J. STANLEY, ESQ.
19              Joseph Hage Aaronson LLC
20              485 Lexington Avenue, 30th Floor
21              New York, New York 10017
22              (212) 407-1200 / (212) 407-1280 (fax)
23              gjoseph@jha.com
24
25
```

Washington Federal, et al. v. USA                                 3/5/2020

```
 1     ON BEHALF OF ARROWOOD PLAINTIFFS:
 2               RICHARD M. ZUCKERMAN, ESQ.
 3               Denton US, LLP
 4               1221 Avenue of the Americas
 5               New York, New York 10020
 6               (212) 768-6700 / (212) 768-6800 (fax)
 7               richard.zuckerman@dentons.com
 8
 9     ON BEHALF OF THE DEFENDANT:
10               KENNETH M. DINTZER, ESQ.
11               FRANKLIN WHITE, ESQ.
12               ERIC LAUFGRABEN, ESQ.
13               U. S. Department of Justice-Civil Division
14               Post Office Box 480
15               Ben Franklin Station
16               Washington, DC 20044
17               (202) 616-0385 / (202) 514-8624 (fax)
18               kenneth.dintzer@usdoj.gov
19
20
21
22
23
24
25
```

Washington Federal, et al. v. USA                    3/5/2020

```
 1                P R O C E E D I N G S
 2                -   -   -   -   -
 3          (Proceeding called to order, 1:59 p.m.)
 4          THE CLERK:  All rise.  The United States
 5   Court of Federal Claims is now in session, the
 6   Honorable Margaret M. Sweeney presiding, in
 7   Washington Federal vs. United States, 13-385;
 8   Fairholme Funds, Incorporated vs. United States,
 9   13-465; Cacciapalle vs. United States, 13-466;
10   Fisher vs. United States, 13-608; Arrowood Indemnity
11   Company vs. United States, 13-698; Reid vs. United
12   States, 14-152; Rafter vs. United States, 14-740;
13   CCS, LLC vs. United States, 18-371; Akanthos
14   Opportunity Fund LP, 18-369; Appaloosa Investment
15   Limited Partnership I vs. United States, 18-370; Owl
16   Creek Asia I LP vs. United States, 18-281; Mason
17   Capital LP vs. United States, 18-529.
18          THE COURT:  Thank you.  Please be seated.
19          Would counsel in the courtroom please
20   identify themselves for the record.
21          MR. THOMPSON:  Good afternoon, Your Honor,
22   and may it please the Court.  David Thompson, Cooper
23   & Kirk, for the Fairholme Plaintiffs.  I'm joined
24   today by my colleague Vince Colatriano.
25          THE COURT:  Very good.
```

Washington Federal, et al. v. USA                    3/5/2020

1          MR. HUME:  Good afternoon, Your Honor.
2    Hamish Hume from Boies Schiller Flexner for the
3    Cacciapalle class of Plaintiffs.  I think I'm joined
4    by counsel on the phone, but I assume we're not
5    introducing counsel on the phone right now.
6          THE COURT:  Yes.  I will ask them to identify
7    themselves.
8          MR. HUME:  Thank you.
9          MR. ROSENBERG:  Lawrence Rosenberg, Jones
10   Day, for the Owl Creek and other Jones Day
11   Plaintiffs, and with me is my partner Kevin
12   Marshall.
13         THE COURT:  Thank you very much.
14         And I will just ask for Plaintiffs on the --
15   counsel on the phone to identify themselves.
16         MR. SCHUBERT:  Yes, Your Honor.  Noah
17   Schubert on behalf of the Plaintiffs in the Fisher
18   and Reid cases from Schubert Jonckheer & Kolbe, and
19   I believe I'm also joined by my colleague, Ed Haber,
20   of Shapiro, Haber, and Urmy.
21         MR. HABER:  That's correct.
22         THE COURT:  Thank you.
23         MR. ZUCKERMAN:  Good afternoon, Your Honor.
24   This is Richard Zuckerman from Denton U.S., LLP,
25   representing the Arrowood Plaintiffs.

Washington Federal, et al. v. USA                          3/5/2020

```
 1              MR. ZAGAR:  Good afternoon, Your Honor.  Eric
 2     Zagar from Kessler Topaz Meltzer & Check for the
 3     Class Plaintiffs, with Mr. Hume.
 4              THE COURT:  Thank you.
 5              Is there --
 6              MR. BARR:  And Brian Barnes from Cooper &
 7     Kirk for the Fairholme Plaintiffs.
 8              THE COURT:  Thank you.
 9              MR. STANLEY:  Christopher J. Stanley of
10     Joseph Hage Aaronson for the Rafter Plaintiffs.
11              MR. GREEN:  Good afternoon, Your Honor.  This
12     is Kevin Green in the Washington Federal action,
13     Hagens Berman Sobol Shapiro, for the Washington
14     Federal Plaintiffs, and I should be joined on the
15     phone by my co-counsel, Robert Roseman.
16              MR. ROSEMAN:  Good afternoon, Your Honor.
17     This is Robert Roseman.
18              THE COURT:  Good afternoon to all of you.
19              And for the United States?
20              MR. DINTZER:  Good afternoon, Your Honor.
21     Kenneth Dintzer for the Department of Justice, and
22     with me at counsel table is Franklin White and Eric
23     Laufgraben.
24              THE COURT:  Thank you.
25              Well, good afternoon to all of you and
```

Washington Federal, et al. v. USA                    3/5/2020

1   welcome.  I have your motions for certification in
2   front of me, but let's hear from Fairholme first
3   with respect to the scope of the issues to be
4   certified, and I would also like to know -- of
5   course, I've read your motion to certify an
6   interlocutory appeal, which, of course, as you all
7   know, is the way that I think is the best route to
8   go in this case, but I also read that you -- you
9   indicated -- gave a signal that you thought perhaps
10  Washington Federal should also be joined as well?
11          MR. THOMPSON:  So let me address both of
12  those points, Your Honor.  We, I believe, are in
13  agreement with the Government that the entirety of
14  the Court's order will go to the Federal Circuit,
15  and then the Federal Circuit will pick and choose,
16  as it sees fit, as to what issues it wants to have
17  briefing on.
18          THE COURT:  I agree.
19          MR. THOMPSON:  So I think we're in agreement
20  on what this Court should do.  And with respect to
21  Washington Federal, that is the one case that really
22  does have distinct claims, but we think even there
23  there would be efficiencies for this Court to
24  continue to hold that case because the Federal
25  Circuit could provide guidance on the nature of the

Washington Federal, et al. v. USA                                    3/5/2020

1    property rights at issue here, on the succession

2    clause, the line between derivative and direct

3    takings.

4         But one thing we know is that there's not

5    going to be a double recovery against the United

6    States Government.  There is not going to be a

7    judgment in Fairholme Funds and then the other cases

8    that focus on the sweep and have the Government have

9    to pay the same damages or overlapping damages for

10   the Washington Federal.

11        And so it strikes us that it makes sense to

12   hold that case back, get guidance from the Federal

13   Circuit on the legal issues I identified and whether

14   there's validity to our takings case, and then have

15   Washington Federal resolved.  So that's our position

16   on Washington Federal.

17        THE COURT:  Oh, very good.  And, of course, I

18   will wait to hear from Washington Federal, but with

19   regard to their Count One, with the illegal exaction

20   and takings claims, the repeated facts are all

21   actions of the Government were illegal, and that

22   does not bode well for a takings claim.

23        I mean, takings claims, the only aspect of

24   government conduct is failure to pay.  It's not what

25   the Government did -- and I realize I'm speaking --

Washington Federal, et al. v. USA

1    I'm preaching to the choir, as the expression

2    goes -- but in order to successfully or in order to

3    win a takings claim, you have to concede that the

4    government action was, in fact, allowed or

5    authorized, and the only illegal aspect of a takings

6    claim is that the Plaintiff has not received just

7    compensation.

8         Plaintiffs -- any Plaintiff who argues that

9    all the Government's actions were illegal shoots

10   themselves in the foot and sinks their takings

11   claims boat.  So I just wanted to understand your

12   world view on that aspect.  Thank you so much.

13        MR. THOMPSON:  And just one other point, Your

14   Honor, that with respect to a stay, our friends from

15   the Government have suggested that there should be a

16   stay in this Court pending the certification to the

17   Federal Circuit, and we don't -- we agree with that

18   with respect to discovery, but we would ask this

19   Court make clear that if there are purely legal

20   questions that the parties want to -- for example,

21   we might want to move for summary judgment, partial

22   summary judgment on liability in the aftermath of

23   the Seila Law case.  That case was argued --

24        THE COURT:  Argued yesterday.

25        MR. THOMPSON:  Exactly.  And so if that comes

Washington Federal, et al. v. USA                          3/5/2020

```
 1    out in the end of June and there's some dispositive
 2    legal issues that go our way, we might want to file
 3    a summary judgment motion on that.  Nothing the
 4    Federal Circuit's going to say is going to impact
 5    the validity of that motion.  And so we would just
 6    ask that any stay be limited to discovery and not be
 7    sweeping and preclude the parties from bringing
 8    purely legal questions to the Court's attention.
 9         THE COURT:  Well, what I would -- well,
10    frankly, once we see what happens with Seila Law,
11    then we will also see if Collins is put back on the
12    Court's conference, because that is the one decision
13    out of Texas, both the district court and the
14    appellate court, that is certainly very favorable
15    for the Plaintiff.  I mean, it's a win right down
16    the line for the Plaintiff.  So hopefully -- well,
17    from where I sit, it would be wonderful if the
18    Supreme Court took up Collins and then gave us a
19    ruling, because that would provide a roadmap for me.
20         Any stay that I would enter would be a
21    duration of months as opposed to years.  I believe
22    it was Washington Federal made the point that the
23    case has been pending for years, and all of that may
24    be true, but I have entered 478, I think, entries on
25    the docket.  There have been not only multiple --
```

Washington Federal, et al. v. USA                                    3/5/2020

```
 1    obviously multiple plaintiffs in this case, but
 2    multiple orders, years of discovery going between
 3    this Court and the Federal Circuit.
 4         It has been -- this case has received all of
 5    my attention, and I will point out that in the years
 6    that this case has been in front of me, the Bench of
 7    this Court has been five active judges, not the 16
 8    authorized by Congress.  So this case has not
 9    languished.
10         If there has been any delay, it's because of
11    discovery, and I don't think there is a Plaintiff
12    among you that would say it didn't want discovery,
13    because certainly, in certain parallel cases in
14    district court, they didn't get discovery.
15         MR. THOMPSON:  We agree 100 percent, Your
16    Honor.
17         THE COURT:  Thank you.
18         MR. THOMPSON:  Thank you.
19         THE COURT:  All right.  Let's hear from --
20    well, I'm looking at Mr. Hume, so why don't we hear
21    from you on behalf of your clients, Cacciapalle.
22         MR. HUME:  Thank you, Chief Judge Sweeney,
23    and for the record, Hamish Hume on behalf of the
24    Cacciapalle Class Plaintiffs.
25         Your Honor, we have moved to lift the stay,
```

1    and we did explore, in response to your order,

2    whether we could stipulate to what the result of the

3    case would be, and we actually have a copy of what

4    we proposed, but the Government was not willing to

5    agree.  We are, therefore, asking the Court to lift

6    the stay and enter a decision in our case that would

7    allow us, to the extent appropriate, also to appeal.

8            If I could just -- I'll be very brief, but I

9    would like to acknowledge and address what I believe

10   are likely two of the Court's concerns that would

11   perhaps lead the Court not to want to grant that

12   motion and then just briefly say what our reasons

13   are for granting the motion.

14           THE COURT:  Let me tell you what one is, and

15   I'm not trying to cut you off --

16           MR. HUME:  Sure.

17           THE COURT:  -- but I just want -- you may be

18   able to address one of my concerns.

19           MR. HUME:  Better to be told than to guess,

20   yes.

21           THE COURT:  Thank you.

22           But one of my -- one, in addition to

23   conserving everyone's resources, which is paramount,

24   one thing that I was concerned with is in the

25   Government's omnibus motion -- and I am not in any

Washington Federal, et al. v. USA                                    3/5/2020

1    way being critical of Mr. Dintzer and his team, they
2    are superb lawyers, they did a great job -- but as I
3    was reviewing the omnibus motions and everyone's --
4    all the plaintiffs' oppositions, what struck me was
5    that not all of the allegations are identical.
6    There are various permutations of the facts, and,
7    therefore, I don't want to preclude a plaintiff from
8    making an argument, once we get a decision in
9    Fairholme, because the facts are nuanced.
10          As we all know, facts will drive what the
11   outcome of the law is.  I'm not suggesting that I
12   want plaintiffs to play with any facts, but they --
13   it's -- this is not cookie-cutter by any stretch,
14   and I'm very concerned that -- now, I was hoping
15   that if you or the various other situated Plaintiffs
16   could stipulate with the Government, then I would
17   have no concern that my ruling did not actually take
18   into consideration all of the particular facts of
19   your case, because they -- again, it's not
20   cookie-cutter, and that concerns me.
21          I don't want to have something go up on
22   appeal and then have a plaintiff argue, well, you
23   know, my paragraph 59 deviates significantly from
24   the Fairholme paragraphs 61 through 67, which forms
25   the basis for a particular claim, and, therefore,

Washington Federal, et al. v. USA                    3/5/2020

1    it's -- circuit judges, you're comparing apples and

2    oranges, because the factual underpinnings are

3    different.  I don't want to confront that problem.

4         MR. HUME:  Well, if I understand that

5    concern, Your Honor, I believe the best way to avoid

6    it is to lift the stay and enter the decisions and

7    allow everyone to appeal together, because I think

8    you are going to face exactly that problem, except

9    worse, if only Fairholme appeals, because then

10   whatever the Federal Circuit decides will be based

11   only on the Fairholme complaint, and then that

12   decision is going to come back down, and the other

13   Plaintiffs are going to say, well, we're different

14   because of this and we're different because of that.

15   So the way to avoid it is to enter a decision in all

16   of the cases and allow all the cases to appeal.

17        Now, that does create for a multiparty appeal

18   at the Federal Circuit, and I --

19        THE COURT:  It's not as clean -- from my

20   perspective, it's not as clean.  If you have one

21   case that goes up and the Federal Circuit rules, and

22   perhaps the parties will request expedited briefing

23   and it will be granted, then I can get guidance,

24   significant guidance, from the Federal Circuit on

25   how various issues would shake out.  And I will

Washington Federal, et al. v. USA                          3/5/2020

1    give, of course, the Plaintiffs the opportunity to

2    say one size doesn't fit all, our facts are

3    different in this scenario, and obviously you will

4    have the opportunity to file an amicus brief in the

5    Circuit.  But I'm concerned about the Federal

6    Circuit being deluged with multiple parties --

7              MR. HUME:  And that I understand, and that

8    was going to be one of my intuited concerns that I

9    was going to address --

10             THE COURT:  Okay.

11             MR. HUME:  -- and to which my only real

12   response -- but I think it is a complete response --

13   is the Federal Circuit can decide how it wants to

14   handle the multiparty appeal, and there's not so

15   many parties -- and certainly if you only let the

16   class go forward it's not so many parties -- that

17   they can't handle that.  They handle that all the

18   time in other cases.  They can handle it in this

19   case.  This is not Winstar with 200 cases.  We're

20   talking about four or five additional cases.  We're

21   just asking for one.

22             But going back to your concern, I do think

23   not only will you face the distinguishing different

24   plaintiffs on remand problem, but there is an issue

25   of prejudice, and the Supreme Court in the Landis

```
 1    case says that before entering -- that it is a rare
 2    thing -- first of all, in Landis, they say it is a
 3    very rare thing to let somebody else go forward and
 4    litigate the legal issue that is going to govern my
 5    case.  That's a very rare thing that we should do in
 6    our system.
 7           And in Cherokee Nation, the Federal Circuit
 8    said before you enter a stay that might do something
 9    like that or be indefinite, you need to make sure
10    you're not prejudicing the stayed party.  And I
11    just -- if there's one thing I hope to be able to
12    convey, here is the issue of prejudice, and it
13    certainly has nothing to do with the quality of the
14    lawyers representing Fairholme.  I used to be a
15    partner at that firm.  I love those people.  They
16    are great lawyers, but they have clients, and their
17    clients are differently situated than our clients.
18           THE COURT:  Doesn't that answer your
19    question, though --
20           MR. HUME:  No.
21           THE COURT:  -- if they are differently
22    situated?
23           MR. HUME:  No.  It might.  For the record, it
24    might.  For when we're back here in a year, it
25    might.
```

Washington Federal, et al. v. USA                          3/5/2020

```
 1          THE COURT:  That was a good catch.  I was
 2    waiting on your response.
 3          MR. HUME:  But it's not just a good catch.
 4    It's a preview for the problem you are going to have
 5    a year from now, but -- here's how to avoid the
 6    problem and also protect against prejudice, but let
 7    me directly say why it might not.  It might not
 8    protect me at all because we all know that courts --
 9    you just said it, and you're absolutely right --
10    facts drive outcomes.  The Court sees the litigant
11    in front of it, and it decides the case based on
12    that litigant, but it writes the rules, it writes
13    the opinion broader than that normally.
14          What they are going to decide on appeal is,
15    do shareholders have a direct claim?  I don't think
16    they're going to say this one shareholder,
17    Fairholme, doesn't, but the class might.  Maybe if
18    we put our amicus brief in, like, 28-point font and
19    they really read it, but I'm not that confident they
20    are going to do that.  Amicus briefs are looked at
21    for legal issues, not because a different plaintiff
22    has different facts.  They are not going to look to
23    an amicus brief to see what a different plaintiff
24    pled.
25          Here's the key thing:  You held that even if
```

Washington Federal, et al. v. USA                          3/5/2020

```
 1    there were direct claims, the only shareholders who
 2    could ever potentially bring those direct claims are
 3    people who owned before the net worth sweep was
 4    enacted.  If they bought for the first time after
 5    the net worth sweep, that's on them.
 6              THE COURT:  Correct.
 7              MR. HUME:  You held that.
 8              Their clients, the Fairholme parties, bought
 9    after the net worth sweep.
10              THE COURT:  Not all.
11              MR. HUME:  Okay, all but one.
12              THE COURT:  Yep, Mr. Barnett (phonetic).
13              MR. HUME:  All but one little plaintiff.
14              THE COURT:  You only need one.
15              MR. HUME:  Well, I think when you have
16    multiple Plaintiffs -- and I am not going to get
17    into whether there are differential, divergent
18    interests -- but many of their clients may be very
19    happy to just make sure they win the derivative
20    claim, okay, and they are differently situated.
21    They are going to present this case to the Federal
22    Circuit as a group of hedge funds who bought the
23    stock after the net worth sweep, okay?
24              We are not.  We bought -- our class bought
25    before the net worth sweep, okay --
```

Washington Federal, et al. v. USA                    3/5/2020

```
 1          THE COURT:  Well, I don't think they're going
 2    to do anything to hurt Mr. Barnett.  I don't think
 3    they are going to do anything to sink Mr. Barnett's
 4    ship --
 5          MR. HUME:  Well, they will be skillful enough
 6    not to do anything that explicitly hurts him, but --
 7          THE COURT:  -- or -- or --
 8          MR. HUME:  -- they are differently situated.
 9          THE COURT:  Well, I don't think they want to.
10    He's -- he has a -- Mr. Barnett has not completely
11    prevailed as yet.  I haven't entered a judgment
12    saying he is entitled to X number of dollars, but it
13    would be -- Heaven forbid I should utter the word
14    "malpractice" -- for whether -- I don't know which
15    counsel will be arguing before the Federal Circuit,
16    whether it's Mr. Thompson or Mr. Cooper or
17    Mr. Colatriano, but they are not going to say -- I
18    mean, I'm presuming -- "Well, forget Mr. Barnett,
19    you know, he wasn't really entitled to prevail on or
20    survive the Government's motion to dismiss.  The
21    Judge got it wrong.  All the entities should be able
22    to bring claims."  I don't think that's going to
23    happen.  I think you're going to be protected on
24    appeal.
25          MR. HUME:  Well, Chief Judge Sweeney, let me
```

1    just say a few factual things.  They're friends of

2    mine, and I respect them.  I hope you will take that

3    on faith.

4          THE COURT:  Absolutely.  They're smiling too

5    broadly for me not to think anything else.

6          MR. HUME:  In this case, when our interests

7    have been aligned, I've been happy to sit down and

8    let them argue.  So you should have to ask yourself,

9    why in the heck am I here?  No one's paying me.  I'm

10   working on a contingency fee for the class.  Why on

11   earth am I stating awkward things about my good

12   friends, expending my time and energy so that I can

13   get up there in front of the Federal Circuit?

14   Because I'm very, very concerned what would happen

15   if I don't.

16          They are not going to commit malpractice, but

17   you get a defined number of words and you get a

18   defined number of minutes.  What are you going to

19   focus on, defending the victory on the derivative

20   claim or trying to resurrect a direct claim that is

21   completely and utterly worthless for 99 percent of

22   your clients who are probably the ones paying your

23   bills?  I'm concerned, okay?

24          I don't want the Federal Circuit to see the

25   case as the Fairholme case.  I want them to see the

1    class case, too, side by side.  I want them to see

2    how we pled it.  I want them to see our class

3    shareholders who bought before the net worth sweep,

4    and that's who we represent.  And I want them to

5    understand the case through that lens, not through,

6    well, some bought before or some bought after.

7    After what?  That's confusing.

8            I want, to the extent possible, for our

9    complaint to be at the Federal Circuit, and it will

10   prejudice the class if we're not up there, and

11   you'll get a ruling -- we will risk a ruling that

12   will be broad because the Federal Circuit will only

13   see that case and won't see ours.

14           So that's why we're here and that's why we're

15   bothering you, which we don't like to do, or

16   spending time and effort, which I don't like to do

17   if I don't have to, saying awkward things about my

18   good friends, which I don't like to do.  That's why,

19   because I am genuinely concerned, and I think the

20   Federal Circuit can handle a multiparty appeal.

21           Your Honor, the final point is, I agree that

22   this Court has worked very hard for the last 6 1/2

23   years --

24           THE COURT:  Oh, and I'm not looking for a pat

25   on the back.  I just --

Washington Federal, et al. v. USA                          3/5/2020

1              MR. HUME:  I know, and I'm not making a

2       pat -- that's a preface.

3              THE COURT:  -- but I just found it was very

4       offensive when I was reading Washington Federal's

5       status report.  I thought, "Hmm."

6              MR. HUME:  But my point, Your Honor, is I

7       agree there's been a lot of activity and a lot of

8       work, and it also put a strain on the system

9       generally of the four judges, but to the extent I'm

10      intuiting another concern from your order, that the

11      fast track you would like to put the 1292(b) appeal

12      on will be delayed if you have to now take the time,

13      without -- because you don't have stipulations, to

14      go through what I think are quite modest

15      differences -- and my stipulation would show it --

16      and it may take you a little bit of time to give a

17      decision, but in the grand scheme of a 6 1/2-year

18      litigation, to me, it's worth it.  It's worth it to

19      the parties.

20             And we have the Collins case coming also,

21      which could add guidance.  It's worth it to -- I

22      know we'd all like to get there faster.  We want to

23      get to the finish line as fast as anyone, believe

24      me, but it's worth taking a little bit of time to

25      get these decisions in.

Washington Federal, et al. v. USA                          3/5/2020

1          THE COURT:  I'm happy to take the time.  I'm
2     not going to delay entering an order ensuring to
3     send this up to the Circuit.  I'm not going to delay
4     on that.  I understand what you're saying.
5          Let me ask you that -- ask you this question:
6     Can I compel the Federal Government to enter into
7     stipulations with you so we can get your -- no?
8          MR. HUME:  No.  No, that's why I'm saying --
9          THE COURT:  But I am not going to hold up --
10         MR. HUME:  -- what I think we -- but what I
11    think we could do -- and I think you will hear more
12    of this from the Owl Creek counsel -- is we can,
13    with or without a stipulation, say, look, on these
14    counts, it's clear that unless you see, you know, a
15    difference, that the result is dismissal.
16         There are two counts we have that Fairholme
17    did not have, Counts -- if you will just give me one
18    second here -- Counts Four and Five.  Our last two
19    counts in the Cacciapalle complaint are the only two
20    that are really substantially different from
21    Fairholme.  We didn't plead the other ones
22    differently, and we think there's some basis for
23    distinction.
24         Actually, let me come -- there's three
25    differences.  Counts Four and Five in the

Washington Federal, et al. v. USA                    3/5/2020

1    Cacciapalle complaint were for breach of our
2    shareholder contracts.  It's a --
3            THE COURT:  Well, let's see, Four is the
4    breach of contract direct.  It's that the --
5            MR. HUME:  And Five is the breach of the
6    implied covenant.
7            THE COURT:  Implied contract, good faith, and
8    fair dealing.  And which was the third?  Is it going
9    to be Count Six, fiduciary duty?
10           MR. HUME:  No, they have that.
11           THE COURT:  Right, okay.
12           MR. HUME:  The third one that is really
13   different from anything they had is Count Two, where
14   we said --
15           THE COURT:  Okay, to take --
16           MR. HUME:  -- that to the extent HERA is
17   interpreted as blocking or removing our ability to
18   bring a derivative claim, that's a taking.
19           THE COURT:  Right.
20           MR. HUME:  I would say that that -- even
21   though you held directly that there's a derivative
22   claim, the -- Judge Lamberth on the D.C. Circuit
23   held there was not, and that would have been a
24   different type of common law derivative claim, not a
25   derivative takings claim.  So we think that's a

Washington Federal, et al. v. USA                    3/5/2020

```
 1    taking.  We think, effectively, the interpretation
 2    of HERA adopted by Judge Lamberth in the D.C.
 3    Circuit is a taking, and that's Count Two --
 4              THE COURT:  Right.
 5              MR. HUME:  -- that hasn't been addressed by
 6    your order.  So that's something new.
 7              THE COURT:  And that's why I'm hoping that
 8    the Supreme Court takes Collins, because I think
 9    that will be very helpful, because I thought they --
10    even though in district court they shouldn't have --
11    you know, in theory, they shouldn't be handling
12    takings cases, I mean, Judge Lamberth made a takings
13    ruling, I agree with that, but the jurisdiction in
14    district court is under 10,000 or 10,000 and under.
15              MR. HUME:  And that wasn't appealed.  The
16    little Tucker Act takings decision --
17              THE COURT:  Right.
18              MR. HUME:  -- in the DDC wasn't appealed;
19    otherwise, the whole appeal would have come to the
20    Federal Circuit.
21              THE COURT:  Exactly.
22              MR. HUME:  In any event, Count Two is new,
23    not in the Fairholme complaint, so that would
24    require a decision.
25              And then Counts Four and Five, which are
```

Washington Federal, et al. v. USA                               3/5/2020

```
 1    based on the shareholder contracts, Fairholme had a
 2    contract plan that was based on the -- I believe the
 3    notion of a contract between the enterprises and the
 4    Government.  This is different, and we do believe
 5    this is a direct claim.
 6           We have breach of contract claims before
 7    Judge Lamberth pursued against the enterprises and
 8    the FHFA.  That is their successor.  This would
 9    bring the same claims against the United States
10    Government under the theory that, as this Court
11    held, the FHFA, when it took over Fannie and Freddie
12    and assumed the contracts, was acting as the
13    Government.
14           So the narrow question -- or we could point
15    you to the pages in the briefs, ours and the
16    Government's -- is does that mean that we have a
17    breach of contract case against the United States
18    Government or should it be only against the
19    enterprises?  So that is different and not in
20    Fairholme.  So those are the three counts that are
21    different, and, you know, I think in terms of our
22    direct takings and legal exaction claims, there may
23    be differences in pleadings, but the scope of Your
24    Honor's ruling on their not being direct would
25    likely govern, as would the same be on the
```

Washington Federal, et al. v. USA                           3/5/2020

```
 1   fiduciary duty claim.  So that's...
 2              THE COURT:  Thank you.
 3              MR. HUME:  Thank you very much, Your Honor.
 4              THE COURT:  I appreciate it.
 5        Mr. Rosenberg?
 6              MR. ROSENBERG:  Yes.
 7              THE COURT:  Thank you.
 8              MR. ROSENBERG:  Thank you, Your Honor.
 9              THE COURT:  And you represent Owl Creek.
10              MR. ROSENBERG:  Yes, I represent Owl Creek
11   and the other Jones Day Plaintiffs.
12              I want to reiterate and agree with what
13   Mr. Hume has said.  We very much appreciate the
14   tremendous effort the Court has undertaken, and we
15   also were able to appreciate the legal acumen and
16   skill of Fairholme's counsel.  Those are beyond
17   dispute.
18              Our concern, like Mr. Hume's, is the
19   prejudice, because, again, like the class, our
20   Plaintiffs bought before the sweep, and we believe
21   that puts them in a different posture, as this Court
22   already held for standing, and will be looked at
23   somewhat differently, we believe, by the Federal
24   Circuit.
25              While the option of an amicus brief certainly
```

Washington Federal, et al. v. USA                          3/5/2020

```
 1    exists and we would avail ourselves of that
 2    opportunity, we are likewise concerned that it will
 3    be difficult to make our points clearly and
 4    compellingly or as clearly and compellingly if we're
 5    only in an amicus capacity, and that's just the
 6    reality of life.
 7            We do have a genuine concern that our case is
 8    a little bit different factually and pled
 9    differently factually from the way Fairholme pled
10    the case, and we also believe that we really would
11    like to have our voice, with our particular standing
12    situation and our clients, heard in the Federal
13    Circuit.
14            Now, in response to the Court's concern about
15    the difficulty of addressing our case, and obviously
16    each of these cases is a little different, but we've
17    prepared -- it's actually a one-page sort of roadmap
18    to how the Court could potentially address our case,
19    and our claims mirror Fairholme's even more than the
20    class claims do.
21            If the Court would like, I could hand this up
22    to the Court.
23            THE COURT:  Oh, sure.  Was it not -- it's not
24    in what you filed in Document 48 on --
25            MR. ROSENBERG:  No.  We just prepared it this
```

Washington Federal, et al. v. USA                                    3/5/2020

```
 1    morning.
 2             THE COURT:  Oh, okay.  Have you -- has the
 3    Government seen it?
 4             MR. ROSENBERG:  I will --
 5             THE COURT:  Well, I want the Government to
 6    see it first, and you can show it to the other
 7    attorneys in the courtroom who represent counsel --
 8    excuse me, who represent parties and make a
 9    determination if anyone has an objection.
10             Oh, I'll tell you what, before you hand it to
11    my Law Clerk and to me, let's give counsel an
12    opportunity to review this.
13             MR. ROSENBERG:  Sure.
14             THE COURT:  If I look at it and someone has
15    an objection, it's too late, so...
16             (Pause in the proceedings.)
17             MR. DINTZER:  Your Honor --
18             THE COURT:  Mr. Dintzer?
19             MR. DINTZER:  -- this would take us a bit to
20    get through.  We don't have any objection to the
21    Court seeing it just for the convenience of -- and
22    so that counsel can make his argument.  We may -- it
23    would take -- and we don't want to waste the Court's
24    time while --
25             THE COURT:  You may disagree with the
```

Washington Federal, et al. v. USA                                    3/5/2020

1  content?

2            MR. DINTZER:  Yes, and I would be shocked if

3  we didn't.  So we want counsel to be able to make

4  his argument, so we would just reserve our

5  arguments, and if -- and respond either in a filing

6  or whatever if we need to be --

7            THE COURT:  And that's fine.  You can file

8  something if you need to, if you don't have the

9  opportunity to address it in toto today, you can

10  file a response to it.  Thank you.

11            MR. DINTZER:  Thank you, Your Honor.

12            MR. ROSENBERG:  If I may approach?

13            THE COURT:  Sorry to delay things.

14            MR. ROSENBERG:  (Document tendered.)

15            THE COURT:  Thank you so much.

16            MR. ROSENBERG:  So, Your Honor, what this

17  sheet frames is that -- and we do on the back have a

18  sort of footnote reserving our rights, saying that

19  these aren't the only things that we could ever

20  argue, but for purposes of coming up with a decision

21  in the near term by the Court, I think the only

22  thing the Court would need to focus on is on Count

23  One, the takings claim, and Count Two, the illegal

24  exaction claim, really the difference in determining

25  whether those claims are direct or derivative.

Washington Federal, et al. v. USA                    3/5/2020

1          And we obviously, for reasons we've discussed
2     at length, believe the claims are properly pled as
3     direct.  We have, again, some allegations in our
4     complaint that we think emphasize that, and I hate
5     to go through this process again, but if it would
6     assist the Court, I do have a one-page sheet with
7     some particular allegations from the complaint that
8     I think emphasize the direct nature of our case, and
9     the point is that I think the Court, in fairly short
10    order, could look at these allegations in the
11    complaint and decide do they, in the Court's view,
12    compel a different conclusion than the conclusion in
13    Fairholme.
14          And if the answer is yes, I think the Court
15    could state that -- I don't think the Court would
16    need to write another very lengthy opinion to do
17    that.  I think the Court could distinguish that
18    fairly quickly.  And if the Court decides no, that
19    could be an even more -- a shorter decision, just
20    explaining in a few paragraphs why the Court doesn't
21    think those differences matter.
22          So I do think it would -- while it certainly
23    would be more work for the Court and we understand
24    the burdens of that, I don't think it would be a
25    huge amount of work for the Court to be able to

Washington Federal, et al. v. USA                    3/5/2020

    1    address those, because it really is just that one
    2    issue where the Court I think would need to address
    3    something before it would be able to be sent up on
    4    appeal.
    5          And if I may, I do have this one sheet.
    6    Maybe I could hand that out as well?
    7          THE COURT:  Certainly.  And what I would ask
    8    you to do, please, by no later than close of
    9    business tomorrow, is if you would file these
   10    submissions as part of the docket just so that
   11    counsel who are not here in the courtroom today know
   12    what we're discussing.
   13          MR. ROSENBERG:  Yes.  We will certainly do
   14    that, Your Honor.
   15          THE COURT:  Thank you.
   16          MR. ROSENBERG:  And could I approach with
   17    this one page?
   18          THE COURT:  Oh, please.
   19          MR. ROSENBERG:  (Document tendered.)
   20          THE COURT:  Thank you so much.
   21          MR. ROSENBERG:  Thank you.
   22          THE COURT:  Thank you.
   23          MR. ROSENBERG:  And, again, while I'm not
   24    reporting that this is comprehensive, I think this
   25    is a good selection of the allegations in the

Washington Federal, et al. v. USA                    3/5/2020

1    complaint that emphasize why we believe our claims
2    are, in fact, properly pled as direct and emphasize
3    it in ways that are perhaps a little bit different
4    from the ways that the Fairholme Plaintiffs
5    emphasized it.
6            So that's really our position, and we believe
7    that by adjudicating this case and the class case
8    and the others, it will give the parties the
9    appropriate opportunity to present their cases to
10   the Federal Circuit, to have the Federal Circuit
11   look at it through the lenses of the different
12   Plaintiffs' groups, and make a comprehensive
13   decision that I think protects the interests of the
14   Plaintiffs' groups more than the amicus route would
15   protect them.
16           And to echo again what Mr. Hume said, I have
17   done a number of patent appeals in the Federal
18   Circuit, many of which have multiple parties,
19   multiple briefs, and the Federal Circuit is I think
20   used to that, and I do think they are able to manage
21   that pretty well.
22           THE COURT:  Oh, sure.  Just the -- you know,
23   the Affordable Care Act cases, each judge has 19 of
24   those, and they're all before the Circuit,
25   certainly.

Washington Federal, et al. v. USA                                    3/5/2020

```
 1              MR. ROSENBERG:  Okay, I agree.
 2              All right.  Thank you very much, Your Honor.
 3              THE COURT:  Thank you.
 4              MR. GREEN:  Your Honor, this is Kevin Green
 5    for the Washington Federal Plaintiffs.  At whatever
 6    time I would appreciate the opportunity to be heard
 7    on our motion to lift the stay.
 8              THE COURT:  Certainly.  I was going to get to
 9    you.  I was going to go with -- I think it was
10    Arrowood next, but you go right ahead.
11              MR. GREEN:  Oh, thank you.  Well, thank you
12    for letting me cut in line.
13              First, no offense was intended by our status
14    report regarding the length of the case.  It was
15    simply that the case has been pending for the time
16    that it has, and there would be more passage of time
17    if Fairholme alone went up on appeal without a
18    ruling in our case, in particular.  We did not
19    intend to suggest or imply that the Court had been
20    lax in any way, and we think the discovery that
21    occurred that you referred to was appropriate.
22              And moving on from that, I think it was
23    Mr. Dintzer from the Government opened referring to
24    Washington -- the Washington Federal action, and the
25    Government acknowledges again today, consistent with
```

```
 1    the status conference statement --
 2             THE COURT:  Excuse me.  I'm sorry to
 3    interrupt you.  Mr. Dintzer hasn't spoken yet today.
 4    Are you referencing something that he said in the
 5    Defendant's -- in a joint status report?
 6             MR. GREEN:  No, I'm not.  I'm referring to a
 7    government attorney.  It must have been someone else
 8    who didn't give his name.
 9             THE COURT:  I think it was Mr. David
10    Thompson, I believe.
11             Mr. Thompson, do you think it was you?
12             MR. THOMPSON:  Yes, I believe it was myself.
13    I was the only one, I think, who's mentioned
14    Washington Federal today.
15             THE COURT:  Very good.  Thank you.
16             MR. GREEN:  Okay, understood.
17             Well, the Government has acknowledged in the
18    joint status statement that we filed with them that
19    the Washington Federal case is -- they refer to it
20    as the one exception, and as the Court has observed
21    today, all the cases have factual nuances here.  I
22    mean, they broadly involve the conservatorships but
23    have distinct facts, and the Washington Federal case
24    is the most factually distinct in that our action
25    focuses on imposition of the conservatorships in
```

Washington Federal, et al. v. USA                              3/5/2020

```
 1    2008, and --
 2            THE COURT:  Correct.
 3            MR. GREEN:  -- not the third amendment --
 4            THE COURT:  Correct.
 5            MR. GREEN:  -- from 2012.  And to go a bit --
 6            THE COURT:  Yes.  Everyone else was focused
 7    on, I believe -- I believe on the -- well, among
 8    other things, on the net worth sweep itself.
 9            MR. GREEN:  Correct.  And just to go back to
10    the November motion hearing, I think the Court
11    commented at the time that 2008 -- September 2008,
12    the time that the conservatorships were imposed, was
13    the critical time when the boards were -- and this
14    is alleged, we're at the pleading stage -- but the
15    boards were essentially strong-armed to consent to
16    it in some fashion.
17            In that respect, our case is just factually,
18    fundamentally different from all the other cases,
19    and we represent different classes.  So I think the
20    different facts here and what to do about it -- the
21    problem with Fairholme just going up, I think as
22    Mr. Hume observed, it's just the Fairholme
23    complaint.  It's not the other complaints that
24    present these differences.
25            So it's hard to see how the Federal Circuit
```

 1   could address, even by way of amicus, which is --
 2   you know, amici are not parties, they have a
 3   different and more limited role -- could address
 4   allegations in the other cases, even the matter of
 5   Article III jurisdiction.  I'm just not sure it
 6   would work.
 7          And there is a potential for prejudice aside
 8   from timing, I mean, in the direct derivative issue,
 9   which for the reasons we briefed is analyzed
10   differently from how it is in the other cases and in
11   the Fairholme order, and this Court has not -- has
12   not addressed that yet.
13          Now, one thing that's gelling for me in
14   talking about this and hearing the comments of the
15   other counsel moving to lift the stay is that the
16   Court has these sole cases and will need to grapple
17   with the factual nuances at one time or another, and
18   later, I think I have to agree, would be worse.  It
19   is better to do it now and enter rulings in each
20   case and, if necessary -- this is the next step, but
21   one that we will just get to later -- but enter
22   rulings in each case that then might be subject to
23   interlocutory appeal, going up with Fairholme,
24   because I think otherwise you'd have Fairholme come
25   back down just on that complaint, and as Mr. Hume

1    observed, the decision could sweep more broadly in

2    some way that this Court could perceive as binding

3    in other cases without an opportunity for the other

4    cases and the counsel in those cases to be heard.

5           So it's better to enter rulings in each case,

6    and I don't think we have quite so many here, and at

7    jump they had a number of actions that couldn't be

8    managed in an efficient way, because otherwise the

9    case will come back, possibly with prejudicial

10   outcome for other Plaintiffs, with the Court then

11   grappling with the nuances at that time.

12          So I think the nuances actually are reason to

13   rule in each case and certify it, if necessary,

14   given that these cases were argued together or are

15   still being considered together, and there isn't a

16   reason not to do so.  Thank you.

17          THE COURT:  Thank you.

18          Let me hear from -- hello?

19          MR. SCHUBERT:  This is Noah Schubert for the

20   Fisher and Reid Plaintiffs.  At the appropriate

21   time, we would like to address some of the

22   derivative issues.

23          THE COURT:  I'll tell you what, I'd like to

24   go in the order that I had made some notes for

25   myself, so if you don't mind, I'm going to turn to

1    Arrowood's counsel.

2           MR. SCHUBERT:  I'll keep that in mind, Your

3    Honor.

4           MR. ZUCKERMAN:  Good afternoon, Your Honor.

5    This is Richard Zuckerman on behalf of Arrowood.

6    Arrowood is in a position that is similar but not

7    identical to the Cacciapalle class and to Owl Creek

8    and the other Jones Day Plaintiffs.  The Arrowood

9    Plaintiffs purchased their stock before the net

10   worth sweep -- in fact, before the 2008

11   conservatorship -- but the only claims made by

12   Arrowood are about the net worth sweep, and the

13   Arrowood Plaintiffs plead only direct claims, no

14   derivative claims.  The four direct claims that are

15   asserted by the Arrowood Plaintiffs are the same as

16   the four direct claims that were asserted in the

17   Fairholme complaint, all of which were dismissed by

18   this Court.

19           I will, frankly, acknowledge that if the

20   Court were to apply the same reasoning as it did in

21   the Fairholme decision, that would likely result in

22   the dismissal of the Arrowood complaint on the basis

23   that only derivative claims may be brought.  That

24   aspect of the decision Arrowood disagrees with, but

25   we understand that the Court has rendered that

Washington Federal, et al. v. USA                                3/5/2020

       1    decision.

       2           If I may, Your Honor, I would like to suggest

       3    an approach going forward which I think is similar

       4    to what Owl Creek has suggested.  I think if the

       5    Court gave each Plaintiff a limited period of time

       6    to make a submission -- and I would suggest a

       7    page-limited submission with a limit set by the

       8    Court -- identifying those factual or legal issues

       9    that are different from those the Court addressed in

      10    the Fairholme decision -- and I will state that in

      11    Arrowood, that submission may well state that there

      12    are no differences -- the Government could then make

      13    a short, page-limited response, and the Court would

      14    then have before it, in a very concrete way, a way

      15    to make the determination as to whether the Court

      16    can issue decisions in the other cases without

      17    unduly burdening the enormous resources that the

      18    Court has already expended in this case.

      19           That would result in -- if the Court was able

      20    to do that based upon the issue identification, the

      21    factual and legal issue identification done by the

      22    parties, that would have the enormous benefit of

      23    having more cases, if not all of the cases, able to

      24    go up to the Federal Circuit at the same time.

      25           I will also note, as I think is implicit in

1    many of the arguments but should be explicitly

2    stated, some of the appeals would be interlocutory

3    appeals.  It's likely that some of the appeals would

4    not be interlocutory appeals but would be appeals as

5    if ripe from final judgment.  That presents an

6    interesting timing issue because if cases were -- if

7    complaints were dismissed now in some cases and --

8    which obviously there would be appeals as of right,

9    and they could go up immediately, one wouldn't want

10   those cases to get on a faster schedule than the

11   cases that go up on interlocutory appeals where the

12   petition process has to proceed first in the Federal

13   Circuit.

14          That's a problem that I can identify but that

15   I don't particularly have a great solution for,

16   except to state that I think that the best result

17   overall is that if all or as many as possible of the

18   cases go up to the Federal Circuit at the same time.

19          Thank you, Your Honor.

20          THE COURT:  Thank you.

21          Next I'd like to hear from Mr. Stanley.

22          MR. STANLEY:  Good afternoon, Your Honor.

23   This is Mr. Stanley for the Rafter Plaintiff.

24          We are similarly situated to the Fairholme

25   Plaintiffs in that our complaint asserts both direct

1   and derivative claims.  Our position is that if the
2   Fairholme case is going to go up on interlocutory
3   appeal, we would like to be on the same schedule as
4   Fairholme in the Court of Federal Claims, which
5   would mean that if this Court enters a stay for
6   several months in Fairholme, then we would expect
7   the same stay to apply in our case.
8          Our complaint also asserts a number of
9   different claims which were not asserted in
10  Fairholme.  Claims Four through Seven assert various
11  derivative and direct breach of contract claims, and
12  we believe that the Court is at some point going to
13  have to address the differences between our
14  complaint and the Fairholme complaint, and we
15  believe the Court can make its determination of that
16  schedule depending on what the Federal Circuit does
17  with respect to Fairholme's petition for an
18  interlocutory appeal.
19         THE COURT:  Thank you.
20         Was there anything else?
21         MR. STANLEY:  No, Your Honor.
22         THE COURT:  Thank you, kindly.  I appreciate
23  it.
24         Fisher, Mr. Schubert or Mr. Haber?
25         MR. SCHUBERT:  Thank you, Your Honor.  I'd

1    like to -- first, we share in the comments that most

2    of the other Plaintiffs' groups have made broadly,

3    that we think these cases should go up together so

4    that these issues can be adjudicated together, and I

5    won't repeat what the counsel from the other cases

6    have said, but I would like to explain, we think our

7    cases are somewhat simpler than the other cases

8    because we've only alleged derivative claims.

9           We have only three claims that we alleged in

10   our complaint, a takings claim, an illegal exaction

11   claim, which is essentially a claim in the

12   alternative --

13          THE COURT:  And the breach of --

14          MR. SCHUBERT:  -- and the breach of

15   fiduciary --

16          THE COURT:  Sorry, breach of fiduciary

17   duty --

18          MR. SCHUBERT:  -- breach of fiduciary duty

19   claim.

20          THE COURT:  Right.

21          MR. SCHUBERT:  And, Your Honor, those claims

22   survived on a derivative basis in Fairholme, so we

23   think -- you know, we're cognizant of this Court

24   wanting to conserve its resources and the resources

25   of the parties, but we think it would be fairly

Washington Federal, et al. v. USA                    3/5/2020

```
 1   simple for Your Honor to, applying the decision in
 2   Fairholme, to simply issue a short order saying that
 3   for the reasons explained in the Fairholme decision,
 4   that the Government's motion to dismiss will be
 5   denied here.
 6          I know you raised some issues about potential
 7   factual differences, and while it's true that, you
 8   know, we have a slightly different gloss on the
 9   facts, I think the operative facts, based on the net
10   worth sweep and the third amendment, are essentially
11   identical, and we don't believe there are any
12   factual differences in our case that would lead to a
13   different outcome.
14          And, you know, from our perspective, I think,
15   you know, one question would be, you know, the
16   Government has not informed us of any differences in
17   our case that would lead to a different outcome, so
18   one question would be for the Government, you know,
19   are there any differences that they can identify,
20   either here today or I think hopefully, as the
21   Arrowood counsel explained, in a short written
22   submission, identifying any reasons why our case
23   would be different.
24          You know, we don't believe that there are
25   any, and I think it would be very simple to
```

Washington Federal, et al. v. USA                    3/5/2020

1    adjudicate that issue, and we do think it's
2    important that these cases, from our perspective, go
3    up together.  We only alleged derivative claims.  We
4    have alleged, as we said in our status report, that
5    these claims were derivative from the very
6    beginning.  I know the Fairholme Plaintiffs took a
7    slightly different view and alleged direct claims
8    and only recently amended to also add derivative
9    claims.
10          We think since many of those issues, you
11    know, they identified in the motion for
12    interlocutory appeal were primarily the question of
13    are these claims direct or derivative, and if they
14    are derivative, do Plaintiffs have standing
15    notwithstanding the succession clause, those are
16    issues that are front and center in our cases and
17    will very likely dispose of our cases.
18          So we think it's important that we
19    participate in any appeal that will resolve those
20    issues, especially since any decision is likely to
21    have a collateral estoppel effect in our cases.  So
22    that's essentially our position.  We think this
23    would be very simple to do in our cases, unlike some
24    of the other cases here which have other claims and
25    are somewhat more complicated.

Washington Federal, et al. v. USA                    3/5/2020

```
 1            THE COURT:  Thank you.  Would you like to
 2     pivot to -- I believe you also represent Reid.
 3            MR. SCHUBERT:  Yes, Your Honor.  So the
 4     Fisher and Reid cases are essentially identical.
 5     The Fisher case is on behalf of Plaintiffs who owned
 6     shares in Fannie Mae, and the Reid case is on behalf
 7     of Plaintiffs who owned shares in Freddie Mac.
 8     Otherwise, the factual allegations and the claims
 9     are identical in those two cases.
10            THE COURT:  I just wanted to let you have the
11     opportunity to be heard since you do represent those
12     Plaintiffs.  So thank you very much.  I knew what
13     you were going to say, but just for the record,
14     thank you.
15            Now, Mr. Rosenberg, I realize you represent
16     Appaloosa, Akanthos, Mason Capital, and CSS, but I
17     assume your remarks would be the same?
18            MR. ROSENBERG:  Yes, the same for all of
19     those cases.
20            THE COURT:  Okay, very good.  Well -- and we
21     have heard from Mr. Green, and Mr. Hume began --
22     followed Mr. Thompson, excuse me.  Now it's time for
23     Mr. Dintzer.
24            MR. DINTZER:  Thank you, Your Honor.
25            THE COURT:  Certainly.
```

Washington Federal, et al. v. USA                          3/5/2020

```
 1              MR. DINTZER:  May it please the Court.
 2              I'm going to address sort of an overview, and
 3    then my colleague Mr. Laufgraben is going to address
 4    some of the legal arguments that the Plaintiffs have
 5    made.
 6              With that, if I may approach, Your Honor, I'd
 7    like to hand out something that will just help us
 8    keep track of what we're talking about as we go
 9    through it.
10              THE COURT:  That's fine.  Do you have a copy
11    for Plaintiffs' counsels as well?
12              MR. DINTZER:  Of course.  It's just, as the
13    Court will see, if I could put this up here, it's
14    just going to be a blank sheet with sort of a
15    scoresheet.
16              THE COURT:  Oh, that's fine.
17              MR. DINTZER:  We can't track all the players
18    without a scorecard.
19              THE COURT:  You do not have to file that on
20    the docket.  Thank you very much.
21              MR. THOMPSON:  Is there only one copy for
22    Plaintiffs?
23              MR. DINTZER:  There may be more, but it is --
24              THE COURT:  Would you like me to take -- I
25    can have copies made.  Would you like me to --
```

1          MR. DINTZER:  I do have extra copies for
2     them.
3          THE COURT:  Okay.
4          MR. DINTZER:  Let's see here.
5          MR. THOMPSON:  I wanted to see what place we
6     were coming in, if we were tenth --
7          MR. DINTZER:  You know, this could have been
8     alphabetical, but this just happened to be how we
9     had them, so...
10          So, Your Honor, I'm going to make some
11     general comments first.  We agree with the position
12     that the Court took initially, and we believe it's
13     the right -- that going up with one case, the
14     Fairholme case, will allow the cleanest result, and
15     we don't need -- I mean, we understand that all
16     counsel -- that all these counsel will have
17     something to say, but if one just looks at the fact
18     that all we're doing is talking about the lifting of
19     a stay, and with the number of different opinions
20     and everybody describing their own thing, just I
21     think putting all of this in front of the Federal
22     Circuit with all these ranges of fine gradations and
23     arguments would -- we believe would come -- would
24     produce a less useful product for the Court
25     afterwards.

Washington Federal, et al. v. USA                         3/5/2020

```
 1            So we believe that the path that is being
 2    taken right now is the correct path, and in part
 3    that is because the Fairholme result was mixed in
 4    that some was dismissed, we won some, we lost some,
 5    and so they will be able to address both the
 6    derivative and the direct issues, and so they are
 7    going hopefully with us up with -- on interlocutory
 8    appeal, and hopefully we'll get those resolved.  So
 9    we believe it's the cleanest with one party going
10    up.
11            We are opposed to multiple interlocutory
12    appeals beyond us and the Fairholme Plaintiffs --
13            THE COURT:  What about more of a sample?  I
14    apologize for interrupting, but what about having
15    more of a sample go up, say including the -- either
16    Washington Federal -- because even though I
17    dismissed takings direct, they also have the illegal
18    exaction claims.  I mean, obviously, I didn't
19    dismiss Counts Five and Six that were the illegal
20    exaction derivatives, but do you think there's value
21    added?
22            MR. DINTZER:  We don't.  They are, to some
23    extent, a different creature than the others, simply
24    because of the time period that they're -- there is
25    nothing that we could stipulate with them that could
```

Washington Federal, et al. v. USA                                3/5/2020

1    provide them a platform to go forward.

2           THE COURT:  So that the date -- their date of

3    take is -- precedes the -- it's the creation of the

4    conservatorships.

5           MR. DINTZER:  It is, Your Honor.

6           THE COURT:  Yeah.

7           MR. DINTZER:  And so they -- so they have --

8    they have one claim, a solo claim, that quite

9    honestly would require a decision by this Court to

10   resolve that solo claim.  We believe -- as I

11   understood the Fairholme counsel saying, we believe

12   that this Court's time would be better spent waiting

13   for a resolution in Fairholme on a variety of

14   different approaches before tackling the Wash-Fed,

15   because while it is different, some of the -- some

16   of the things that we'll be looking at -- direct,

17   derivative, all of those issues -- at least we will

18   have some guidance on that and perhaps we'll have

19   enough guidance that it will make it easier.

20          We don't believe that there's anything to be

21   gained by having -- if someday we have to litigate

22   Wash-Fed on its own, sending it up now as opposed to

23   sending it up after Fairholme is resolved -- the

24   Court has some guidance, the Court resolves

25   Wash-Fed, we have to take that up, we don't see any

```
 1    efficiencies in sending it up now.  We do see
 2    potential efficiencies if it waits.  So that would
 3    require a new opinion by the Court which we don't
 4    think is efficient right now.
 5          There are a number of Plaintiffs which -- let
 6    me make sure I get these right so I don't offend
 7    anybody here --
 8          THE COURT:  I have to say, you know, next to
 9    Fairholme, saying "mixed up," you're sending someone
10    a signal.  That's all right.  No, no, no, no, I just
11    thought, "Dr. Freud, come to your office."
12          MR. DINTZER:  There is no -- we are not
13    trying to message the Court.
14          THE COURT:  Well you didn't say "messed up,"
15    so I didn't take any offense, so --
16          MR. DINTZER:  No, just that there were mixed
17    results and we believe it's going up.
18          We believe that -- and I think there was some
19    flavor of this in the Arrowood comments, but we
20    believe that based on what the Court did that there
21    should be a complete dismissal of Arrowood, Owl
22    Creek, Akanthos, Appaloosa, CSS, and Mason.  And the
23    only stipulation that we need -- that is needed is
24    from those Plaintiffs to say, yes, we are completely
25    covered by the Court's -- we want the dismissal
```

54

1    based on the decision in Fairholme.

2         If they had sent us a one-sentence

3    stipulation like that, we would have signed it,

4    because then they would -- they don't need an

5    interlocutory appeal.  They don't need our

6    permission or the Court's permission.  They would be

7    dismissed.  They would have an appeal as of right,

8    because they've been kicked out of the case.

9         The fact that they want to -- and I don't

10   fault them for this, it may be good lawyering -- but

11   they want to hedge and they want to -- well, maybe

12   this and maybe that, and that's where we -- when we

13   started hearing that from opposing counsel, that's

14   when we threw up our hands and said, "We can't do

15   these stipulations," because we think these cases

16   are done, and if they're -- if they agree that

17   they're done, it should be one sentence, stipulation

18   of dismissal based on Fairholme, and they're out of

19   here.  That's what we -- and then they can choose --

20   and so then they can -- they don't need us, and so

21   they should be dismissed.

22        And like they -- you know, I did just a

23   little bit of Grand Jury work in my early career,

24   and, you know, somebody got sent to prison because

25   they didn't want to testify.  The saying that they

1    had was they "held the key to the prison door,"
2    because they could testify and then they could open
3    up the door and they could go.  And the Plaintiffs
4    hold the keys to the courtroom door.  The second
5    that they want dismissal, they can walk out, they
6    can go on appeal.  All they have to do is ask for
7    that.
8            If they can't -- if it's too complex because
9    they can't do that right now because there are
10   issues that they need to -- then they should be
11   stayed, because they should wait for Fairholme to be
12   resolved, but that's not on us.  Those are decisions
13   that they are going to make themselves.
14           We heard from the Fisher/Reid Plaintiffs.
15   They have asserted -- and they have asserted to the
16   Court -- that they continue -- that as far as their
17   take on what happened, they -- they survived our
18   motion to dismiss and that they get to continue.  So
19   it challenges us that they're asking for an appeal
20   because they can't appeal.  They weren't dismissed.
21   Their own take is they're sitting pretty, they get
22   to go forward.
23           We will not take an interlocutory appeal on
24   them.  That is not our intent.  We want them stayed
25   so that -- we only want one interlocutory appeal.

Washington Federal, et al. v. USA                                    3/5/2020

1    We don't believe that the Court -- we think there's
2    a real question about whether the Federal Circuit
3    would grant more than one, but regardless, they
4    can't -- we're not going to stipulate to taking one,
5    and they don't have an appeal based on their own
6    position because they get to go forward.
7            The Cacciapalle and Rafter Plaintiffs, they
8    got extra.  So they do have some overlap with what
9    has already been resolved.  Rafter has what we would
10   think of as mixed.  The Cacciapalle would have three
11   that we believe are going to be dismissed, but both
12   of them have extra.  They have additional claims
13   that have not been addressed by the Court.
14           So the only thing -- way that they could go
15   up is if the Court invested its time -- which we do
16   not believe is worthy at this point -- and to give
17   them a new opinion.  So if, for example, the
18   Cacciapalle Plaintiffs, if they were to forgo those
19   other counts, they can forgo them now.  They could
20   then seek dismissal, and they would have an appeal
21   of right.
22           We believe that each of the three Plaintiffs,
23   the Cacciapalle, Rafter, and Wash-Fed, who
24   basically -- they need resolutions of counts that
25   have not been resolved, we believe they definitely

Washington Federal, et al. v. USA                           3/5/2020

1    should be stayed, waiting for Fairholme, because, I
2    mean, quite honestly, it's not on us as far as the
3    Court's writing opinions, but we believe that the
4    Court will be in a better position to write those
5    opinions after we hear the resolution of the
6    Fairholme decision from the Federal Circuit.
7           Now, of course, if the Federal Circuit says
8    we're not going to take interlocutory appeal, then
9    we're going to be back here and we're going to have
10   to sort through all of this, but if the Court takes
11   the interlocutory appeal, then they will have the
12   opportunity to get some real guidance about some of
13   these issues.
14          And for the Cacciapalle Plaintiffs, I would
15   make the point that the stayed claims are the same
16   as the ones that they're pursuing -- at least some
17   of them are the same as the ones that they're
18   pursuing in the district court.  So in that sense
19   they are not being put aside and being made to wait.
20   They are actually affirmatively pursuing those
21   claims in the district court, and so they're not
22   being asked to wait.
23          The Owl Creek Plaintiffs provided some
24   demonstratives, and I think that they're important,
25   because the point that we're making is basically the

1    point that they're making here, which is that

2    this -- I mean, and basically why we threw up our

3    hands ultimately in not agreeing to something

4    because we think that Owl Creek is one of the simple

5    cases.  All they have to do is say we want

6    dismissal, and they can -- and as the Court can see,

7    it -- and it may be a lot more complicated than we

8    believe it is.  That is why we could not stipulate

9    to what some of these -- the Plaintiffs are asking.

10          Plaintiffs can be amicus.  So Fairholme goes

11   up.  The rest of the Plaintiffs can -- I would

12   expect would ask for -- to be amici.  They can file

13   briefs, assuming that the Federal Circuit allows

14   them to, and we would not oppose.  They can file

15   briefs.  They can even, under the Federal Circuit's

16   rules, ask for time at oral argument.  That's up to

17   the Federal Circuit.

18          They keep saying, well, the Federal Circuit

19   can sort this out.  The Federal Circuit can sort out

20   the amicus issue, too.  They can give them what --

21   they can ask for basically everything that they

22   hoped to get on a normal appeal.  They can ask for

23   those things from the Federal Circuit, and they can

24   allow -- we can put the Federal Circuit in a

25   position where it can sort out who it wants to hear

1    from, who it thinks is important, and without the

2    time of a lot of this Court's resources in giving

3    opinions and decisions for Plaintiffs that either

4    duplicate or allow -- or force us all to sort

5    through, is this paragraph more like this paragraph

6    or more like that paragraph.

7           Because basically what the Owl Creek

8    Plaintiffs have -- it looks like, from a cursory

9    look at their -- that's what they want us to start

10   doing, and we have -- as you know, we have 12

11   Plaintiffs -- 11 Plaintiffs that we would have to do

12   that for.  So, let's see, what else?

13          The Fairholme Plaintiffs have mentioned

14   something about filing summary judgment motions.  I

15   don't think we need to get into that now.  They

16   are -- as of now, at least, I believe we're on the

17   same page, that we think everything else should be

18   stayed, and so the -- if the time comes where

19   somebody wants to file a motion for summary

20   judgment, we would oppose it, but we don't need to

21   really get into -- I don't think that that's an

22   issue that we really need to argue about at this

23   point.

24          Let's see.  Unless the Court has any

25   questions for me, then I'm going to be handing it

Washington Federal, et al. v. USA                    3/5/2020

1    over to Mr. Laufgraben to go into some of the legal

2    issues that the Plaintiffs are raising.

3           THE COURT:  That's fine.  Thank you very

4    much, Mr. Dintzer.

5           MR. DINTZER:  Thank you, Your Honor.

6           MR. LAUFGRABEN:  Good afternoon, Your Honor.

7           THE COURT:  Good afternoon.

8           MR. LAUFGRABEN:  I just wanted to respond

9    briefly to some of the points that Plaintiffs made

10   as to why the stay should be lifted.

11          As an initial matter, as Your Honor

12   recognized before, there's nothing unusual about --

13   when there are a group of cases that are related and

14   challenge the same general transaction or scenario,

15   there's nothing unusual about one of those cases

16   going up while other ones are stayed, and as cases

17   that I've been involved with, cost-sharing reduction

18   cases, those cases continue to come in, and they're

19   stayed pending the resolution in the Federal

20   Circuit.

21          So there's nothing -- that also happens with

22   risk corridor cases, and that happened with the

23   Winstar cases, where you have an exemplar case that

24   goes up, the Federal Circuit issues guidance, and

25   that guidance helps inform the disposition of the

```
 1    related cases.
 2            THE COURT:  In fact, I think Chief Judge
 3    Smith sent up three sample cases or three test
 4    cases.
 5            MR. LAUFGRABEN:  Right.
 6            THE COURT:  Yeah.
 7            MR. LAUFGRABEN:  And --
 8            THE COURT:  Or he selected three test cases
 9    for trial, and they were all -- the decisions were
10    all certified.
11            MR. LAUFGRABEN:  Another case, thinking to
12    Judge Smith, is the Union Bancal case -- or is
13    that -- Union Bancal, where there was a tax
14    transaction case that was on appeal to the Federal
15    Circuit and a related case that was pending before
16    Judge Smith, and Judge Smith said, "These cases are
17    very similar.  Let's wait and see what happens in
18    the first transaction -- tax transaction case before
19    we proceed here, because it only makes good sense to
20    do that, to wait for the decision of the Federal
21    Circuit."
22            So there's -- the scenario that Your Honor
23    had set up where these other cases are stayed
24    pending the disposition of Fairholme by the Federal
25    Circuit is -- you know, is routine, especially in
```

1      cases of great complexity like these.

2              THE COURT:  In fact, former Chief Judge Smith

3      is doing that now in the Houston flooding cases.

4              MR. LAUFGRABEN:  Exactly.  So that's

5      actually, I guess, consistent with this Court's

6      practice.

7              The second issue -- and Your Honor I believe

8      referenced this before -- of how Your Honor would

9      frame the stay as it -- you know, in terms of

10     specific durations, we think that makes sense, to

11     say, well, why don't we stay this case pending

12     the -- whether the Federal Circuit accepts petitions

13     for interlocutory appeal and then see, you know,

14     should we continue the stay.  It does not -- this is

15     not an indefinite stay or a stay of a moderate

16     decision.

17             THE COURT:  Oh, no.

18             MR. LAUFGRABEN:  It's a stay pending a

19     specific proceeding.

20             THE COURT:  You're correct.

21             MR. LAUFGRABEN:  One of the points that the

22     Cacciapalle Plaintiffs made is that the Fairholme

23     Plaintiffs may not be an adequate representative to

24     advocate for their interests because many of them

25     purchased stock after the third amendment.  While we

1    disagree that Fairholme counsel would be an

2    inadequate or insufficient representative or make

3    decisions that would, you know, somehow prejudice

4    pre-third amendment purchasers, you know, as

5    Mr. Dintzer noted, several cases that could be

6    dismissed based on the rulings in Your Honor's

7    December 6th opinion, like the Jones Day cases and

8    Arrowood, were pre-third amendment purchasers.  So

9    to the extent that they went up on appeal, you know,

10   those interests would be represented in those cases.

11          Plaintiffs also kind of dismissed the value

12   of participation as amicus to the Court, to the

13   Federal Circuit.  You know, to the extent -- there

14   are no questions -- sorry.  Any of the issues in

15   Fairholme, any of the questions that would be

16   presented on appeal to Fairholme would be the same

17   questions presented in these other cases.  So to the

18   extent that they could have, you know, some sort of

19   insight or unique argument with respect to those

20   questions presented, you know, that's the type of

21   participation that would be meaningful and probably

22   helpful -- or possibly -- to the Federal Circuit.

23   So their participation as amicus, you know, has more

24   value than they seem to suggest.

25          THE COURT:  In fact, I think it was in John

```
 1    R. Sand & Gravel, it was an amici that pointed out
 2    that the Court -- that this Court didn't have
 3    jurisdiction.  There was a 1500 issue, and the case
 4    was then, from the Plaintiff's perspective, lost.
 5    So, yeah, it -- the Court -- the Federal Circuit
 6    doesn't use those briefs just as --
 7            MR. LAUFGRABEN:  -- as fans.
 8            THE COURT:  -- s paperweight or fans, exactly
 9    right.  No origami classes at the Federal Circuit.
10            MR. LAUFGRABEN:  Right.
11            Finally, we have spoken to prejudice, and in
12    the scenarios that many of the Plaintiffs have set
13    up where there is going to be additional briefing
14    and so forth and finding these, you know, factual
15    differences, you know, will effectively undo what
16    Your Honor did when she coordinated these cases.
17            The whole point was that, you know, whatever
18    gloss or characterization, you know, that one
19    Plaintiff puts on the facts that the other Plaintiff
20    does not or, you know, whatever they want to
21    highlight, I mean, this is all based -- the
22    transaction is the third amendment, and the losses
23    are the -- at least for the direct -- the Plaintiffs
24    who pled direct claims are the loss of their alleged
25    shareholder rights.
```

1          So, you know, their claims are, you know,
2     factually the same.  So to wait for them all to come
3     up with these, you know, differences, why their
4     claim should be decided maybe a little differently
5     or should have the -- you know, this fact should be
6     highlighted or that fact should be highlighted will
7     only, you know, delay the -- what we're actually
8     seeking to -- you know, the milestone we're seeking
9     to achieve, which is, you know, authoritative
10     guidance from the Federal Circuit.
11          So to push this out for these additional
12     filings, you know, after the parties presented if
13     not hundreds, but thousands of pages of briefing,
14     you know, really would undo the judicial economy
15     rationale of having these cases coordinated in the
16     first place.
17          Essentially, you know, the cleanest
18     resolution is the one that Your Honor identified
19     from the beginning, and that is to -- you know,
20     to -- to issue the Fairholme decision, you know,
21     have both parties move to certify it.  We both agree
22     that that's the appropriate decision -- you said it
23     during the oral argument, we agreed -- and then to
24     let the Federal Circuit then tell us, you know, how
25     they -- you know, what survives, what -- you know,

1    what should be dismissed, and how we go forward from

2    there.

3            So we see no reason -- there's no -- you

4    know, there's no, you know, practical reason, let

5    alone any sort of legal or factual reason, why these

6    cases should -- why the stays in these cases should

7    be lifted.

8            If I may just take a minute to confer with my

9    colleague?

10           THE COURT:  Sure.

11           (Counsel conferring.)

12           MR. LAUFGRABEN:  So with that, thank you,

13   Your Honor.

14           THE COURT:  Thank you very much.

15           I'm going to let the Plaintiffs have one last

16   say or one final say, but I only want to hear what

17   you have not yet said.  I heard everything you said

18   before the first time.  I don't need to hear it

19   again.

20           So if anyone has had an epiphany or if the

21   Court has said something that you disagree with and

22   you didn't frontload it in your original remarks,

23   then I'm willing to hear it.

24           And we'll start with Mr. Thompson.

25           MR. THOMPSON:  Yes, Your Honor.  We don't

1    really have a dog in this fight.  I did not address

2    whether, you know, these other cases should go up,

3    and I would just say, there was discussion about the

4    Winstar case, and Mr. Hume said there were a couple

5    of hundred -- and it felt like that because he and I

6    litigated those for many years together -- but at

7    the time that the test cases went up, there were

8    only 18 of them at that time.

9          And so I think that is an apt historical

10    analogy that the Government has on its side.  On

11    their side, I think the Plaintiffs make a good

12    point.  You always want to have your advocate at the

13    podium, and so we defer to the Court on how to

14    resolve this.

15          THE COURT:  Thank you very much.

16          Mr. Hume?

17          MR. HUME:  Thank you, Your Honor.  I can be

18    very brief.

19          Number one, I would like to endorse the

20    suggestion of counsel for Arrowood.  I think it's

21    extremely productive, and we could be incredibly

22    brief in -- and I think the Government's chart is

23    helpful in showing how brief it could be.  I think

24    for the class, two or three pages, we could tell you

25    which counts are governed, or if they're not

1    governed, you know, read these paragraphs of our

2    complaint and see if you think they make a

3    difference; if not, they're governed.

4         Then which counts are not governed by your

5    opinion and which pages you need to read from the

6    existing briefs to decide.  And then you know, for

7    each case, is it governed?  If not, why not?  It's

8    very -- and there aren't these marginal -- and it

9    will not be difficult -- I think the one thing I'm

10   hearing agreement on from the Government to the

11   Jones Day Plaintiffs to the Arrowood Plaintiffs and

12   from us -- and I don't think anyone disagrees -- is

13   it's actually very easy to get from where we are now

14   to a decision that deals with all the other cases.

15        I think it would be productive for the

16   Plaintiffs to make a very short submission with a

17   roadmap, and it could be five pages per group, it

18   could be three pages, it could be one submission,

19   whatever is easiest for you, and I think it would be

20   less than 20 pages total for you to read, probably

21   15.  And when you look at this chart, keep in mind

22   that groups three through seven is all Jones Day.

23   That, to me, is like one case.  Eight and nine is

24   one case.  So there's really just five groups here.

25        And then the final point, Your Honor, is,

```
 1    yes, Mr. Laufgraben is right, the whole point of all
 2    this judicial economy is we briefed it all together,
 3    we argued it all together, and I can guarantee you
 4    we all expected to get a decision in our case.  We
 5    didn't brief it and argue it so that they could get
 6    a decision and we could go on vacation for a year.
 7            We thought we were going to get a decision,
 8    and we want a decision, and some of us are going to
 9    get a decision that gives them an automatic right to
10    appeal while these guys are briefing up 1292(b).  So
11    it seems -- we made the point -- and I don't think
12    the Government responded -- that there is not a
13    single case that stays a plaintiff who's about to
14    get a final decision or that appeal as of right so
15    that someone else can go up on a 1292(b), on a
16    different complaint, to set the governing law that
17    will govern the plaintiff who had a final judgment
18    that was stayed.  It doesn't make any sense.  So,
19    yeah, judicial economy, briefed it together, argued
20    it together, and we'd like a decision.  I think we
21    could do it easily.
22            I think we could give you a roadmap that
23    shows very clearly what claims are governed or
24    almost certainly governed -- unless you see a
25    different case on things like the Owl Creek few
```

 1    paragraphs of pleadings that are different -- almost

 2    certainly governed these counts, and, yes, we -- for

 3    example, the class -- have three counts not

 4    addressed, extra, not analogous to what's in the

 5    Fairholme complaint, but pretty discrete and a

 6    pretty short amount of briefing on them wouldn't be,

 7    I think, that difficult for the Court to resolve.

 8    Thank you.

 9            THE COURT:  Thank you.

10            Mr. Rosenberg?

11            MR. ROSENBERG:  We've already -- well, I also

12    agree again with everything Mr. Hume said.  We tried

13    in these two pages to sort of condense what our view

14    is, and it's two pages.  I think that the idea of

15    having something from the parties that's very short

16    is perfectly reasonable and could be done in short

17    order and could assist the Court.

18            I would just note that my worthy opponents

19    didn't mention the Landis case or the Cherokee

20    Nation case, which sets the standard here, and we

21    believe that because these cases are in the posture

22    they're in as opposed to, say, the Winstar cases,

23    for example, which are in a different posture, the

24    stay risks a greater degree of prejudice here than

25    it may have in some of the other cases, and

Washington Federal, et al. v. USA                          3/5/2020

```
 1    particularly because, as we noted, you have some
 2    Plaintiffs, unlike most of the Fairholme Plaintiffs,
 3    that bought presweeps, versus most of the Fairholme
 4    Plaintiffs who bought postsweeps.  That's a big
 5    concern here, but we think ultimately this could be
 6    done very simply, and we believe that's the
 7    appropriate path to go forward.
 8            THE COURT:  Thank you.
 9            MR. ROSENBERG:  Thank you.
10            THE COURT:  For Rafter, Mr. Stanley.
11            MR. STANLEY:  Thank you, Your Honor.
12            We respect the Court's time and believe that
13    there is a great judicial efficiency to allowing the
14    Fairholme case go on interlocutory appeal.  If the
15    Court is expecting submissions from the Plaintiff
16    about the differences between the complaints and the
17    claims addressed in the Fairholme decision, we would
18    like to submit on that issue as well.
19            THE COURT:  Thank you.
20            For the Fisher and Reid Plaintiffs,
21    Mr. Schubert?
22            MR. SCHUBERT:  Thank you, Your Honor.
23            I won't repeat any of the points that I've
24    previously made.  I would simply note that in
25    listening to the Government, I did not hear any
```

Washington Federal, et al. v. USA                    3/5/2020

1    disagreement that, based on this Court's ruling in
2    Fairholme, that the Government's motion to dismiss
3    should be denied for the three derivative claims,
4    which are the only claims in our complaint.  So we
5    think that decision would be very simple for this
6    Court to issue, and it could simply say that for the
7    reasons stated in Fairholme, the Government's motion
8    to dismiss is denied, and could certify the issue
9    for interlocutory appeal, and then it would be up to
10   the Federal Circuit to decide how it best wants to
11   address these cases.
12              Thank you, Your Honor.
13              THE COURT:  Thank you.
14              And last, but not least, Mr. Green for
15   Washington Federal.
16              MR. GREEN:  Thank you, Your Honor.
17              The hearing began with the Court's
18   observation that these cases are factually distinct
19   in some ways and in some a more significant way
20   than, in particular, the Washington Federal action
21   and the focus of the allegations.  What I heard from
22   the Government I think was essentially a papering
23   over of those factual distinctions, and there are
24   two different points that are imploding in the air
25   that need to be reconciled.

Washington Federal, et al. v. USA                                    3/5/2020

1              One is that there would be efficiencies from

2      going up in Fairholme due to the commonalities, but

3      on the other hand, it would be a burden on the Court

4      to write decisions in each case.  And to echo what

5      the other counsel have said, I think it would be,

6      now that the Court has done a lot of work in

7      Fairholme already on legal aspects especially, not

8      nearly as burdensome as the Government has

9      suggested.

10             So when the other cases are distinct, in

11     which case they maybe aren't that impacted by

12     Fairholme, or if they are impacted, then the

13     Plaintiffs in the other cases should have a chance

14     to be heard while those issues are on appeal for the

15     reasons stated previously by other counsel.  I think

16     it just would be messier to grapple with those

17     distinctions in the scope of a Federal Circuit

18     opinion, not addressing the other complaints when

19     those complaints aren't before them, and the case

20     comes back.

21             Thank you, Your Honor.

22             THE COURT:  Thank you very much.

23             Is there anything that any -- oh, just from

24     Mr. Dintzer or his co-counsel, was anything raised

25     by the Plaintiffs that you did not have the ability

Washington Federal, et al. v. USA                                3/5/2020

1    to address this afternoon?

2         MR. DINTZER:  If I could just address what

3    Mr. Hume just suggested, just briefly, Your Honor?

4         THE COURT:  Certainly.

5         MR. DINTZER:  So Mr. Hume suggested, you

6    know, five pages for five groups, 25 pages, and to

7    make it clear, Your Honor, we believe that Numbers

8    Two through Seven, they need to be dismissed.  The

9    only way forward for them is through dismissal.

10        So we don't believe that the Government --

11   that there's anything for us to stipulate to with

12   the Plaintiffs.  Either they're willing to take a

13   dismissal, in which case, of course, we -- the stay

14   could be lifted and they could take their dismissal

15   and go.

16        If they want to -- whatever else they are

17   going to put -- I don't know how they are going to

18   fill up five pages, but anything other than that we

19   would oppose because that means they want to go back

20   and they want to fight it, which is fine, but

21   that -- we don't believe that -- whether it's five

22   pages or -- that it's a good use of anybody's time.

23        We don't believe that -- to the second -- to

24   the point that they want to deviate from Fairholme

25   and take their dismissal, then we don't believe it's

1    worth it.  So we don't see the proposed five pages

2    per -- we don't see any benefit to that.

3           Additionally, again, we won't take an

4    interlocutory appeal, so I don't know how they're

5    asking you to certify something that they believe

6    they may have won.  And for the others, even if the

7    stay was lifted, all that would be -- the next thing

8    that would have to happen, Your Honor, would be that

9    the Court would have to write opinions for these

10   cases, and respectfully, we don't believe that that

11   is a good use of the Court's time.  We believe that

12   the Court will have -- will write better opinions

13   after Fairholme is resolved.

14          So that's the -- you know, addressing all of

15   them kind of as a group, but that's all that we have

16   left.

17          THE COURT:  Very good.  Thank you.

18          MR. DINTZER:  And then just as an aside, we

19   wanted to ask if you want responses on the motions

20   to lift the stays.  They have filed them, and we

21   have not provided written responses, but we wanted

22   to see if the Court still wanted those.

23          THE COURT:  How soon could you get a response

24   in?

25          MR. DINTZER:  They're due the 18th.

Washington Federal, et al. v. USA                           3/5/2020

```
 1              THE COURT:  That's fine.  Let's see if you
 2      can file something by the 18th.
 3              I want to thank counsel for their
 4      participation this afternoon, whether it's been in
 5      the courtroom or by phone.  Your remarks have been
 6      very helpful.  I appreciate it.  It's always good to
 7      see all of you and hear from all of you.  So thank
 8      you very much, and you'll see my ruling when it
 9      comes out in a few days.  Thank you.
10              ALL COUNSEL:  Thank you, Your Honor.
11              (Whereupon, at 3:24 p.m., the telephonic
12      proceedings were adjourned.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Washington Federal, et al. v. USA                               3/5/2020

```
 1                 CERTIFICATE OF TRANSCRIBER

 2

 3

 4          I, Susanne Bergling, court-approved

 5   transcriber, certify that the foregoing is a correct

 6   transcription from the official digital sound

 7   recording of the proceedings in the above-titled

 8   matter.

 9

10

11

12   DATED:  03/10/2020    s/Susanne Bergling

13                         SUSANNE BERGLING, RMR-CRR-CLR

14

15

16

17

18

19

20

21

22

23

24

25
```