IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **Bryndon Fisher, Bruce Reid**, and **Erick Shipmon**, derivatively on behalf of **Federal National Mortgage Association**,<br><br>          Plaintiffs,<br>     v.<br><br>**The United States of America**,<br><br>          Defendant,<br><br>and **Federal National Mortgage Association**,<br><br>          Nominal Defendant. | No. 13-608C<br>(Judge Sweeney) |
| **Bruce Reid** and **Bryndon Fisher**, derivatively on behalf of **Federal Home Loan Mortgage Corporation**,<br><br>          Plaintiffs,<br>     v.<br><br>**The United States of America**,<br><br>          Defendant,<br><br>and **Federal Home Loan Mortgage Corporation**,<br><br>          Nominal Defendant. | No. 14-152C<br>(Judge Sweeney) |

### DERIVATIVE PLAINTIFFS' MOTION TO CERTIFY INTERLOCUTORY APPEAL

All parties and the Court agree that the Federal Circuit should decide important questions of law that are potentially dispositive in *Fairholme*. Indeed, this Court has already granted the *Fairholme* plaintiffs' and the Government's motions to certify for interlocutory review six issues (three proposed by the *Fairholme* Plaintiffs and three by the Government). Because two of those six certified issues would also dispose of the *Fisher* and *Reid* cases, this Court should also certify these issues for interlocutory appeal here. The two issues are:

(a) Whether plaintiffs have standing to assert derivative claims notwithstanding HERA's succession clause and

(b) Whether the FHFA-C's actions are attributable to the United States such that the court possesses subject-matter jurisdiction to entertain plaintiffs' derivative takings and illegal exaction claims.

See *Fairholme*, ECF 461 at 5 (Items 4, 5) ("*Fairholme III*"). The Court has already determined that these issues satisfy the standard for certification for interlocutory review. *Fairholme III*. The only remaining question is *which parties* will be afforded an opportunity to address these issues on appeal, including the critical subsidiary question of whether claims arising from the Net Worth Sweep are direct or derivative.

The plaintiffs in the *Fisher* and *Reid* actions ("Derivative Plaintiffs") are the only shareholders who have consistently and exclusively asserted derivative claims in this Court on behalf of Fannie Mae and Freddie Mac in connection with the harm caused by the Net Worth Sweep. The *Fairholme* plaintiffs, by contrast, added derivative claims only years later, after a series of decisions from other courts holding that the harms Fannie and Freddie experienced were derivative, not direct. Even after amending to add a derivative plaintiff, the *Fairholme*

plaintiffs have continued to focus primarily on their direct claims, which comprise the bulk of their amended complaint.

Given the divergence of interests between Derivative Plaintiffs and the *Fairholme* plaintiffs, Derivative Plaintiffs should be permitted to participate in an appeal in order to ensure zealous advocacy of competing positions. The divergence of their interests is most acute with respect to issue (a) above, which necessarily includes the subsidiary question of whether takings and illegal exaction claims relating to the Net Worth Sweep are derivative—a question that is truly dispositive for Derivative Plaintiffs but not the *Fairholme* plaintiffs.

Of course, it is ultimately the Federal Circuit's decision as to whether to accept these cases for appeal and which plaintiffs and counsel should participate. This Court, however, should allow for the Federal Circuit to make that decision by certifying these two cases for interlocutory appeal—based on two of the very same issues that it previously certified in *Fairholme*.

## Procedural History

Derivative Plaintiffs were the first shareholders to bring derivative claims in this Court, filing complaints on August 26, 2013 (on behalf of Fannie Mae) and February 26, 2014 (on behalf of Freddie Mac).[1] *Fisher*, ECF 1; *Reid*, ECF 1. Four years later, on March 8, 2018, following jurisdictional discovery and the decisions of multiple courts of appeals that shareholders' claims concerning the Net Worth Sweep were derivative, Fairholme amended its complaint to add a

---

[1] As required by Virginia law, plaintiffs' made a written demand on Freddie Mac on October 18, 2013, after which Freddie Mac had ninety days to respond. On January 15, 2014, the Federal Housing Finance Agency ("FHFA-C") responded to the demand purportedly in its capacity as conservator. FHFA-C stated that it did "not intend to authorize Freddie Mac or its directors or officers on behalf of Freddie Mac to take the actions that Shareholders demand." *Reid*, ECF 22.

2

new plaintiff, Andrew T. Barrett, so that it could assert derivative claims in addition to its direct claims. *Fairholme*, ECF 401. The other twelve *Fairholme* plaintiffs continued to exclusively assert direct claims. *Fairholme*, ECF. 422 ¶¶ 19-31, 166-287. Those twelve plaintiffs are each investment funds and insurance companies with substantial holdings in the Enterprises. These large investor plaintiffs would likely benefit more from a direct recovery (which would directly provide them with individual damages or settlement payments) than a derivative recovery (which would be paid to the Enterprises and benefit shareholders only indirectly and equally).

Even after adding a derivative plaintiff, the *Fairholme* plaintiffs have continued to steadfastly maintain that their claims are direct, not derivative. *See Fairholme,* ECF 428 at 21-25. Their positions were made clear at argument on the motion to dismiss. Counsel for *Cacciapalle*, who argued the question of whether the claims were direct or derivative on behalf of all the direct plaintiffs, including Fairholme, stated: "[T]he claims we've pled as direct, are, in fact, direct." 11/25/19 Tr. at 180:14:17. The direct plaintiffs then argued, at length, why they believed the core claims in all the related cases—the same claims in Derivative Plaintiffs' cases—are direct rather than derivative. *Id.* at 180:9-189:4; *see also id.* at 189:1–189:4 ("I think it's crystal clear they are direct claims."); *id.* at 314:5-315:6 ("The central property right at issue here … are the rights of both the junior preferred and the common shareholders to receive dividends or distributions. … I want to emphasize that's the centerpiece.").

By contrast, in both their supplemental brief opposing the Government's motion to dismiss and at oral argument, Derivative Plaintiffs advocated fully, without conflict, that claims arising from the Net Worth Sweep are derivative. *Fisher*, ECF No. 47; *Reid*, ECF No. 33. Counsel for Mr. Barrett—the sole *Fairholme* plaintiff asserting derivative claims—chose not to

3

defend those claims either in his supplemental brief or at oral argument. It was Derivative Plaintiffs alone who argued that all of the claims—including Mr. Barrett's—are derivative.

On December 6, 2019, this Court granted the Government's omnibus motion to dismiss in *Fairholme* as to the direct claims but denied it as to the derivative claims. *Fairholme*, ECF 447. At the Court's invitation (*Fairholme*, ECF 455), the parties in *Fairholme* each filed motions to certify certain questions for interlocutory review. *Fairholme*, ECF 456, 457. The focus of the *Fairholme* plaintiffs' motion was their dismissed direct claims, seeking review of "whether Plaintiffs lack standing to pursue the claims that have been pled as direct claims because those claims are in substance derivative in nature." *Fairholme*, ECF 457.

On February 24, 2020, the Derivative Plaintiffs filed a motion to lift the Court's *sua sponte* stay in *Fisher* and *Reid*, rule on the Government's motion to dismiss these cases, and allow the parties to brief whether the order should be certified for interlocutory appeal. *Fisher*, ECF 60; *Reid*, ECF 46. The Government opposed that motion. *Fisher*, ECF 65; *Reid*, ECF 51. During briefing, the Court ordered the Government to confirm whether its motion to dismiss *Fisher* and *Reid* should be denied based on the same reasoning as in *Fairholme*. *Fisher*, ECF 66; *Reid*, ECF 52. The Government confirmed that the *Fisher* and *Reid* claims and factual allegations were "substantially identical" to the derivative claims asserted in *Fairholme*, and there were "no differences … that would warrant a different outcome." *Fisher*, ECF 68; *Reid*, ECF 54.

On May 8, 2020, relying on its reasoning in *Fairholme*, the Court denied the Government's motions to dismiss the *Fisher* and *Reid* actions. *Fisher*, ECF 71; *Reid*, ECF 57. In that order, the Court also stated that it would consider any motion to certify questions in its opinion for interlocutory review. *Id.* at 27.

#### ARGUMENT

Although "[i]nterlocutory appeals are reserved for exceptional or rare cases," *Starr Int'l Co. v. United States*, 122 Fed. Cl. 601, 603 (2013), certification for interlocutory review may be warranted based on the following factors: (1) whether there is a controlling question of law; (2) whether there is a substantial ground for difference of opinion with respect to that question; and (3) whether an immediate appeal may materially advance the ultimate termination of the litigation. *Id.* In *Fairholme III*, this Court held that all three factors supported interlocutory review of the same two issues on which Derivative Plaintiffs here seek review.

As to the first factor, the issues proposed for certification involve controlling questions of law for the same reasons the Court found in *Fairholme*. Both proposed issues present questions of justiciability that would end the Derivative Plaintiffs' lawsuit if the Federal Circuit disagrees with either of this Court's holdings. *See Fairholme III* at 3-4; *see also Voda v. Cordis Corp.*, 476 F.3d 887, 889–90 (questions of subject matter jurisdiction constitute "controlling question of law"); *Lummi Tribe of the Lummi Reservation v. United States*, 870 F.3d 1313, 1315 (Fed. Cir. 2017) (interlocutory appeal to resolve threshold jurisdictional issue); 19 Moore's Fed. Prac. – Civil § 203.31 ("Of course, if resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling. Controlling questions of law… include … questions as to subject-matter jurisdiction … and standing ….").

As to the second factor—whether there is substantial ground for difference of opinion on the two questions—the Court's analysis in *Fairholme III* again applies here. Although the Court ruled in favor of Derivative Plaintiffs' on the two issues proposed for certification, Derivative Plaintiffs recognize that other courts have reached contrary conclusions. *Fairholme III*, at 4 (citing

5

*Fairholme Funds, Inc. v. United States*, 146 Fed. Cl. 17, 48-50 (2019)). Indeed, although most federal courts have found that plaintiffs lacked standing to bring derivative claims under the Housing and Economic Recovery Act of 2008's ("HERA's") succession clause, this Court, relying on binding Federal Circuit precedent, reached the opposite conclusion. *Fisher*, ECF 71 at 23-25; *Reid*, ECF 57 at 22-25. This conflict among the federal courts concerning the critical interpretation of an important federal statute warrants interlocutory review.

As to the third factor—whether an interlocutory appeal will advance the termination of the litigation—again, the Court's analysis in certifying the same issues in *Fairholme* applies here. The Federal Circuit's resolution of the two issues, if decided in the Government's favor, would result in the dismissal of the *Fisher* and *Reid* cases. If anything, the HERA succession clause issue has greater litigation-terminating potential here than in *Fairholme* because the *Fairholme* plaintiffs also assert direct claims that the parties there agree are not barred by HERA's succession clause. Of course, Derivative Plaintiffs will argue that the Federal Circuit should affirm this Court's decision, in which case *Fisher* and *Reid* would not be dismissed. Nonetheless, Derivative Plaintiffs face substantial risk. If the Federal Circuit decides that the claims in *Fairholme* are exclusively direct or that they are barred by the succession clause, Derivative Plaintiffs' claims may be barred by collateral estoppel. That risk is precisely why the Derivative Plaintiffs seek to participate in an appeal—to ensure that the voices of the plaintiffs that assert derivative claims are fully heard—rather than relying upon the *Fairholme* plaintiffs and their counsel (who may be subject to a conflict of interest) to make that case.

To be clear, if the Federal Circuit grants the petition for interlocutory review in *Fairholme*, that appeal will not render unnecessary or redundant interlocutory review in *Fisher*

and *Reid*. As an initial matter, it is entirely proper to certify the same issues in multiple related cases where those issues may be dispositive in each related case, thus preserving the ability of the parties in each case to present argument on such dispositive issues. *See*, *e.g.*, *Winstar Corp. v. United States*, 64 F.3d 1531, 1534 (Fed. Cir. 1995) (hearing consolidated appeal after "[t]he Court of Federal Claims certified its decisions in these three related cases for interlocutory appeal pursuant to 28 U.S.C. § 1292(b)"); *Laturner v. United States*, 933 F.3d 1354, 1360 (Fed. Cir. 2019) (consolidating related cases for interlocutory appeal where questions posed in each case were the same); *Allegheny Teledyne v. United States*, 316 F.3d 1366, 1369 (Fed. Cir. 2003) (same); *McGillick v. World Trade Ctr. Props., LLC*, 2004 U.S. Dist. LEXIS 18361 (S.D.N.Y. Sep. 9, 2004) (certifying related action for interlocutory appeal based on same previously certified issues).

Moreover, the importance of permitting Derivative Plaintiffs to participate in any interlocutory appeal is heightened here because the *Fairholme* plaintiffs and their counsel may face a significant conflict of interest. Derivative Plaintiffs are the only parties in the related actions who have consistently asserted that claims arising out of the Government's Net Worth Sweep are derivative, not direct. By contrast, for approximately five years, the *Fairholme* plaintiffs advocated that the Government only owes them compensation for the direct damages they sustained as the Enterprises' shareholders. It was not until March 8, 2018, after multiple courts of appeals had ruled that these claims were derivative, that the *Fairholme* plaintiffs added an individual plaintiff in an amended complaint who asserted derivative claims in the alternative.

Since amending their complaints to add derivative claims, the *Fairholme* plaintiffs have nonetheless continued to advocate primarily for their direct claims, which are brought by major institutional investors, in their briefs and argument to this Court. Because their large institutional

7

investors may achieve a greater benefit through their direct claims—rather than derivative claims through which any recovery would be returned to the Enterprises—they may be incentivized to prioritize these claims on appeal. *Fairholme* counsel's simultaneous representation of both an individual plaintiff suing derivatively on behalf of the Enterprises and large institutional investors suing directly for their own damages creates an inherent conflict. *See*, *e.g.*, *St. Clair Shores Gen. Emples. Ret. Sys. v. Eibeler*, No. 06-cv-088, 2006 U.S. Dist. LEXIS 72316,*23 (S.D.N.Y. Oct. 4, 2006) ("[P]laintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest …."); *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 135–37 (S.D.N.Y. 1991) (party is "subject to a conflict of interest in pursuing both direct and derivative claims," given inconsistent proof required for each claim).

Although the Court has not expressly certified the question of whether claims relating to the Net Worth Sweep are direct or derivative, that issue will necessarily be critical on appeal. As this Court recognized in its order certifying questions for interlocutory review in *Fairhome*, if an appeal proceeds, the Federal Circuit "may consider any question reasonably bound up with the certified order….." *Fairholme III* at 2 n.2 (quoting *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1150 (Fed. Cir. 2014)) (cleaned up). Indeed, the most prominent issue bound up in the six certified questions is whether claims arising from the New Worth Sweep are direct or derivative. The *Fairholme* plaintiffs engage that issue head-on by presenting the question, certified by this Court, of "[w]hether plaintiffs lack standing to pursue their self-styled direct claims because those claims are substantively derivative in nature." *Fairholme III* at 5. Although framed as whether the *Fairholme* plaintiffs have standing to assert direct claims, rather than whether they have standing for derivative claims, the implication of the certified issue is clear. The Federal

8

Circuit will be asked to decide whether the claims are direct or derivative, and the *Fairholme* plaintiffs may focus their advocacy on reviving their direct claims. The direct vs. derivative issue is also "bound up" in "[w]hether plaintiffs have standing to assert derivative claims notwithstanding HERA's succession clause"—a clause the Government argues bars only derivative, not direct, claims.

In short, it would be practically impossible for the Federal Circuit to resolve the certified questions without first addressing whether claims relating to the Net Worth Sweep are direct or derivative. If the Federal Circuit decides that the claims are derivative, then plaintiffs asserting only direct claims will likely be out of court. More critically, if the Federal Circuit decides the claims are direct, then plaintiffs asserting only derivative claims, including Derivative Plaintiffs, will likewise be out of court. In other words, the dispute over whether the claims are direct or derivative is a discrete, dispositive issue that could very well result in dismissal of Derivative Plaintiffs' claims. It would be unjust and prejudicial to allow only *Fairholme*—and not Derivative Plaintiffs—to litigate that dispositive issue.[2]

Finally, permitting an interlocutory appeal in *Fisher* and *Reid* presents no insurmountable obstacles in organizing and presenting that appeal in coordination with *Fairholme*.[3] As discussed above, the Federal Circuit routinely considers simultaneous interlocutory appeals where the

---

[2] Derivative Plaintiffs' participation only as *amici* in *Fairholme* would be inadequate to protect their rights on appeal. Such a role would not allow Derivative Plaintiffs to frame the issues, fully brief them as parties, or participate in oral argument. Additionally, the Government has not indicated whether it would oppose Derivative Plaintiffs seeking leave to intervene in the Federal Circuit, which would allow Derivative Plaintiffs to fully participate as parties on appeal.

[3] Ultimately, it would be the Federal Circuit's decision as to how to manage *Fairholme* and the related cases on appeal, including whether the appeals are coordinated or consolidated.

same dispositive issue arises in related cases. *See Winstar*, 64 F.3d at 1534; *Laturner v. United States*, 933 F.3d at 1360; *Allegheny Teledyne v. United States*, 316 F.3d at 1369.

In fact, this Court's handling of the Government's omnibus motion to dismiss in these cases presents a roadmap of how an appeal could proceed both efficiency and fairly. The plaintiffs' arguments in this and the related actions were the product of close coordination among counsel in each case. Counsel for each of the related cases participated in and contributed to the briefing on the motion to dismiss, ensuring that the omnibus opposition brief did not favor the positions of some plaintiffs over others and affording counsel for each case the opportunity to present supplemental arguments and briefs. Derivative Plaintiffs, in particular, were key participants in this collaborative process, ensuring a vigorous defense of the derivative claims, including the critical issue of whether these claims were barred by HERA's succession clause. That argument will likewise likely be the linchpin of the derivative claims on appeal, and Derivative Plaintiffs are best-suited to argue and brief it on appeal (just as they did in this Court).

## Conclusion

For the foregoing reasons the Court should certify its May 8, 2020 opinion for immediate appeal of the following two issues:

(a) Whether plaintiffs have standing to assert derivative claims notwithstanding HERA's succession clause and

(b) Whether the FHFA-C's actions are attributable to the United States such that the court possesses subject-matter jurisdiction to entertain plaintiffs' derivative takings and illegal exaction claims.

Accordingly, Derivative Plaintiffs' respectfully request that the Court reissue its May 8, 2020 opinion to include a statement finding that its decision denying the Government's motion to dismiss involves controlling questions of law for which there are substantial grounds for

difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of this litigation.

| | |
|---|---|
| DATED: May 18, 2020 | **SCHUBERT JONCKHEER & KOLBE LLP** |
| | BY: /s/ Robert C. Schubert |
| | Robert C. Schubert<br>Attorney of Record<br>*rschubert@sjk.law* |
| | Three Embarcadero Ctr Ste 1650<br>San Francisco, CA 94111-4018<br>Ph: 415.788.4220<br>Fx: 415.788.0161 |
| OF COUNSEL: | **SCHUBERT JONCKHEER & KOLBE LLP** |
| | Noah M. Schubert<br>*nschubert@sjk.law* |
| | Miranda P. Kolbe<br>*mkolbe@sjk.law* |
| | Three Embarcadero Ctr Ste 1650<br>San Francisco, CA 94111-4018<br>Ph: 415.788.4220<br>Fx: 415.788.0161 |
| | **SHAPIRO HABER & URMY LLP** |
| | Edward F. Haber<br>*ehaber@shulaw.com* |
| | 2 Seaport Lane<br>Boston, MA 02210<br>Ph: 617.439.3939<br>Fx: 617.439.0134 |
| | *Attorneys for Plaintiffs* |