IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **Bryndon Fisher, Bruce Reid**, and **Erick Shipmon**, derivatively on behalf of **Federal National Mortgage Association**,<br><br>      Plaintiffs,<br> v.<br><br>**The United States of America**,<br><br>      Defendant,<br><br>and **Federal National Mortgage Association**,<br><br>      Nominal Defendant. | No. 13-608C<br>(Judge Sweeney) |
| **Bruce Reid** and **Bryndon Fisher**, derivatively on behalf of **Federal Home Loan Mortgage Corporation**,<br><br>      Plaintiffs,<br> v.<br><br>**The United States of America**,<br><br>      Defendant,<br><br>and **Federal Home Loan Mortgage Corporation**,<br><br>      Nominal Defendant. | No. 14-152C<br>(Judge Sweeney) |

### Derivative Plaintiffs' Reply in Support of Their Motion to Certify Interlocutory Appeal

The Government agrees that the first two requirements for interlocutory review are met: the Court's orders on the motion to dismiss the Derivative Plaintiffs' complaints involve controlling questions of law, and there is a substantial ground for difference of opinion on the two questions for which Derivative Plaintiffs seek certification. The Government's only opposition to certification is based on the third requirement—whether the appeal will "materially advance the ultimate termination of the litigation." *Starr Int'l Co. v. United States*, 122 Fed. Cl. 601, 603 (2013). Here, the Government fails to recognize that, for the same reasons as in *Fairholme*, the interlocutory appeal that this Court has already certified in *Fairholme III* will drive the ultimate termination of the *Fisher* and *Reid* cases. *See Fairholme III*, ECF 461 at 4. This is true whether or not Derivative Plaintiffs are permitted to participate as parties on appeal.

That reality requires, as a matter of fundamental fairness and to avoid irreversible prejudice, allowing Derivative Plaintiffs to advocate and participate fully, as parties, in the interlocutory appeal before the Federal Circuit. The Government entirely ignores the unfairness that would result if the central question in the appeal—whether claims arising from the Net Worth Sweep are direct or derivative—were only briefed and argued by the *Fairholme* plaintiffs, who face a substantial conflict of interest. The Federal Circuit's decision on that central question may have the effect of precluding Derivative Plaintiffs' claims. For these reasons, the Court should certify its decision denying the Government's motion to dismiss the *Fisher* and *Reid* actions for interlocutory review.

1

## I. Derivative Plaintiffs Have Standing for Certification of an Interlocutory Appeal.

The Government concedes that Derivative Plaintiffs satisfy the first two requirements for interlocutory review. Gov. Resp. (ECF 75) at 2. In contesting the third, it notes in passing that "[f]ew litigants seek appellate review of favorable rulings," suggesting, without arguing, that Derivative Plaintiffs lack standing to seek interlocutory review. *Id.* The *Fairholme* plaintiffs, in a proposed amicus brief in support of neither party, make a similar suggestion; they question whether parties who "prevailed" may seek interlocutory appeal. Fairholme *Amicus* Br. (ECF No. 76-1) at 5. These suggestions are without merit. That the Court denied the Government's motion to dismiss in its entirety, instead of in part, does not deprive Derivative Plaintiffs from seeking certification of that ruling for interlocutory appeal or prosecuting that appeal.

The touchstone for standing to appeal is that the "party retain[] a stake in the appeal," *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333-34 (1980). There is no bright-line rule precluding an appeal by a prevailing party. *Id.* Rather, appellate standing is a prudential doctrine under which courts can and should consider practical reasons why a party may have a real stake in an appeal even if they prevailed below. *Id.* Here, Derivative Plaintiffs plainly have a stake in the proposed appeal because a decision by the Federal Circuit that claims arising from the Net Worth Sweep are direct—and not derivative—may preclude Derivative Plaintiffs' claims and bind the real parties in interest they represent, Fannie Mae and Freddie Mac.

The Federal Circuit has made clear that, "[a]lthough typically a party cannot appeal a favorable ruling, there are exceptions," such as cases in which a party may "never have another opportunity to have [an order] reviewed" and where "parts of a generally favorable order … are unfavorable to you." *British Steel PLC v. United States*, 127 F.3d 1471, 1473 n.1 (Fed. Cir. 1997)

(quoting *Farmer v. McDaniel*, 98 F.3d 1548, 1553 (9th Cir. 1996); *LaBuhn v. Bulkmatic Transp. Co.*, 865 F.2d 119, 122 (7th Cir. 1988)). Both exceptions apply here.

First, if Derivative Plaintiffs are not permitted to participate in the appeal, and the Federal Circuit decides the certified questions adversely to Derivative Plaintiffs, they may be precluded by collateral estoppel from challenging those rulings. In these circumstances, a prevailing party may appeal where, absent that appeal, the party may be subject to collateral estoppel on particular issues decided against it. *See Ruvalcaba v. City of L.A.*, 167 F.3d 514, 520 (9th Cir. 1999) ("If the adverse ruling can serve as the basis for collateral estoppel in subsequent litigation, the prevailing party has standing to appeal."). Although *Ruvalcaba* concerned the risk of collateral estoppel from a district court's interlocutory findings that were adverse to the party that ultimately prevailed, the same prudential concerns apply here.

In the unique circumstances of a shareholder derivative action—where the real parties in interest are Fannie Mae and Freddie Mac—an adverse decision in the *Fairholme* appeal could preclude Derivative Plaintiffs' claims. *See Fisher* Order (ECF 71) at 21 ("a shareholder's interests are fully represented by another shareholder litigating a derivative suit on behalf of the corporation because the corporation is the real party in interest"); *see also In re Sonus Networks, Inc. S'holder Deriv. Litig.*, 499 F.3d 47, 64 (1st Cir. 2007). In fact, this is exactly what the Government expects to happen. *See* Gov. Resp. at 3 (explaining the "Court contemplated that the Federal Circuit's rulings would apply in all the Fannie Mae and Freddie Mac … shareholder litigation pending in the Court—not just *Fairholme*"). The potential preclusive effect of an appellate decision in *Fairholme* confirms that Derivative Plaintiffs have a "stake" in the appeal.

3

Second, the subsidiary rulings that the Court made against Derivative Plaintiffs in resolving the Government's motion to dismiss provide Derivative Plaintiffs with an additional, independent basis for appellate standing. When a party obtains a favorable outcome on a claim, that party may nonetheless appeal subsidiary rulings entered against it. *Roper*, 445 U.S. at 333-34 ("In an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits ….").

Here, although the Court denied the Government's motion to dismiss, it made multiple subsidiary rulings adverse to Derivative Plaintiffs on each of the questions for which Derivative Plaintiffs seek interlocutory appeal. On proposed question (a), although the Court ultimately concluded that Derivative Plaintiffs had standing notwithstanding HERA's succession clause and that collateral estoppel did not bar the claims, it rejected Derivative Plaintiffs' arguments on each of the first three elements of issue preclusion, including that the issue was different because Derivative Plaintiffs brought constitutional claims and that the prior decision conflicted with binding circuit precedent. *Fisher* Order at 21-22.

On question (b), although the Court ultimately concluded that Derivative Plaintiffs' claims were against the United States because FHFA-C retained FHFA's government character, the Court also ruled for the Government's on numerous questions, finding that (1) it could not exercise jurisdiction based on Treasury's involvement; (2) FHFA-C exercised its statutory conservatorship powers when it approved the PSPA Amendment; (3) FHFA-C was not coerced into approving the PSPA Amendment; and (4) FHFA-C was not Treasury's agent. *Fisher* Order at 10–16. Derivative Plaintiffs have standing to appeal each of these adverse rulings.

4

In short, because of both the Court's adverse rulings and the potential of Derivative Plaintiffs' claims being precluded as a result of an adverse ruling in the *Fairholme* appeal, Derivative Plaintiffs have a stake in any interlocutory appeal. Standing therefore presents no barrier to certifying the two questions on which Derivative Plaintiffs seek to appeal.

II. **The Conflicts Faced by the *Fairholme* Plaintiffs and Their Counsel Support Certification of this Court's Decisions in *Fisher* and *Reid* for Appeal.**

The Government does not meaningfully respond to Derivative Plaintiffs' argument that the *Fairholme* plaintiffs face a conflict of interest on appeal. Gov. Resp. at 4. (noting only that "Derivative Plaintiffs and the *Fairholme* plaintiffs have made the same substantive arguments with respect to the derivative claims.").

The *Fairholme* plaintiffs assert in their proposed amicus brief that Derivative Plaintiffs' claim that the *Fairholme* plaintiffs have a conflict of interest is "reckless and unfounded." Fairholme *Amicus* Br. at 5. But they do not meaningfully dispute or even address the specific facts and circumstances in these related cases that give rise to the conflict. See *Fisher* Opening Br. (ECF 73) at 7-8. Rather, they only argue that there is no "inherent conflict" that *generally* prohibits litigants from alleging both direct and derivative claims in a single action. Fairholme *Amicus* at 1-2. Fair enough. But that is not Derivative Plaintiffs' argument here.

Derivative Plaintiffs do not argue that parties may *never* assert both direct and derivative claims. Rather, as explained in their opening brief, Derivative Plaintiffs assert that the specific facts and circumstances in these actions give rise to a conflict of interest. See *Fisher* Opening Br. (ECF 73) at 7-8. Fairholme does not dispute that, for five years, it advocated that the constitutional claims at issue in these cases were direct, not derivative. And it does not dispute

5

that these claims were filed by, and continue to be prosecuted by, major institutional investors—who may achieve a greater pecuniary benefit by recovering their losses through direct claims, as opposed to derivative claims through which any recovery would flow to the Enterprises.

Now, even after numerous courts—including this one—have rejected their argument that the claims are direct, "the *Fairholme* Plaintiffs' position is that *both* their direct and their derivative claims are meritorious, and there is no reason why the direct claims must fail at the pleading stage for the derivative claims to go forward." Fairholme *Amicus* at 3 (emphasis added). But this Court has already explained the many reasons why this is wrong. *See Fairholme* Order (ECF 449) at 38-41. As this Court explained, the *Fairholme* plaintiffs "have not established that they have standing to litigate the claims they label as direct because they do not, and cannot, demonstrate that those claims are substantively direct claims." *Id.* at 41. "Regardless of [the *Fairholme*] plaintiffs' label (direct or derivative) or theory (taking, illegal exaction, breach of fiduciary duty, or breach of implied contract) for their claims, the claims are substantively derivative in nature because they are premised on allegations of overpayment." *Id.* at 40. Because *Fairholme* and *Fisher* and *Reid* concern the same claims arising from the same overpayment, they cannot be both direct and derivative.

Based on the history of the litigation in this Court, it is readily apparent that the *Fairholme* plaintiffs' top priority is—and always has been—prevailing on their direct claims. If they succeed in convincing the Federal Circuit that takings, illegal exaction, and breach of fiduciary duty claims for overpayment arising out of the Net Worth Sweep are direct—thereby reversing this Court's decision—then by implication, the very same claims that Derivative Plaintiffs' bring as derivative are unlikely to survive the aftermath of the *Fairholme* appeal.

Moreover, the cases the *Fairholme* plaintiffs cite do not hold that parties asserting both direct and derivative claims face no conflict of interest. Rather, those cases hold only that any conflict inherent in the simultaneous assertion of direct and derivative claims is not sufficient, on its own, to require that counsel or the party be disqualified from serving in either role.[1] Derivative Plaintiffs, of course, do not argue that the *Fairholme* plaintiffs or their counsel should be disqualified from participating in this case or in any appeal. Nor do Derivative Plaintiffs ask this Court to conclusively determine whether or not the *Fairholme* plaintiffs face a conflict of interest. Rather, Derivative Plaintiffs simply ask that, in light of the potential conflict between the direct and derivative claims on appeal, that this Court certify its decisions in the *Fisher* and *Reid* cases so that Derivative Plaintiffs may fully participate, as parties, in any appeal. Derivative Plaintiffs have zealously advocated that their derivative claims are exclusively derivative throughout this litigation, and their participation in the Federal Circuit will ensure that the derivative claims are zealously defended on appeal. Accordingly, certifying this Court's decisions in *Fisher* and *Reid* for interlocutory appeal will materially advance the ultimate termination of these long-running, related cases.

---

[1] *See In re Dayco Corp. Derivative Sec. Litig.,* 102 F.R.D. 624, 626–31 (S.D. Ohio 1984) (motion to disqualify counsel for derivative plaintiff due to prior representation of direct plaintiffs); *Srebnik v. Dean,* No. 05-cv-01086-WYD-MJW, 2006 U.S. Dist. LEXIS 59232, at * (D. Colo. Aug. 22, 2006) (seeking holding that derivative plaintiffs are inadequate derivative parties under Fed. R. Civ. P. 23.1(a) because they also assert direct claims); *Meritage Homeowners' Ass'n v. Bank of N.Y. Mellon,* No. 6:16-cv-00300-AA, 2018 U.S. Dist. LEXIS 63107, at *32–34 (D. Or. Apr. 13, 2018) (same); *In re Corinthian Colls. S'holder Derivative Litig.*, No. SA CV 10-1597-GHK (PJWx), 2012 U.S. Dist. LEXIS 188623, at *45–49 (C.D. Cal. Jan. 30, 2012) (same); *Natomas Gardens Inv. Grp. Ltd. Liab. Co. v. Sinadinos*, 2009 U.S. Dist. LEXIS 39907, at *44–50 (E.D. Cal. May 12, 2009) (same); *Dollens v. Zionts*, Case No. 01 C 5931, No. 01-C-2826, 2001 U.S. Dist. LEXIS 19966, at *7–12 (N.D. Ill. Dec. 4, 2001) (same); *First Am. Bank & Tr. v. Frogel*, 726 F. Supp. 1292, 1297–98 (S.D. Fla. 1989) (same); *Keyser v. Commonwealth Nat'l Fin. Corp.*, 120 F.R.D. 489, 491–92 (M.D. Pa. 1988) (challenge to adequacy of class representative under Fed. R. Civ. P. 23).

### III. Only Allowing Derivative Plaintiffs to Participate as *Amici* Would Be Insufficient to Protect Their Rights on Appeal.

Finally, the Government argues that Derivative Plaintiffs would likely be able to participate as *amicus curiae* in the *Fairholme* appeal—and thus certification of the questions for interlocutory appeal in the *Fisher* and *Reid* actions is unnecessary. Gov. Resp. at 4. But the Government's proposed "solution" is insufficient to protect Derivative Plaintiffs' rights on appeal.[2]

The Federal Circuit is under no obligation to accept *amicus* briefs from the parties in another case, let alone to consider the substantive issues raised in those briefs that may not be raised in the briefs of the parties. *See Christian v. U.S.*, 337 F.3d 1338, 1345 (Fed. Cir. 2003) ("Since none of the parties has made or adopted either argument [by amici] we decline to consider them."). Even if Derivative Plaintiffs were allowed to participate as *amici*, they would likely be precluded from responding to the Government's appellate briefs or participating in oral argument while the *Fairholme* plaintiffs "settle[] the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).[3]

---

[2] In their opening brief, Derivative Plaintiffs also note that "the Government has not indicated whether it would oppose Derivative Plaintiffs seeking leave to intervene in the Federal Circuit." *Fisher* Opening Br. at 9 n.2. In its response, the Government again refuses to say whether it would oppose that relief.

[3] *See* Fed. R. App. P. 29(a)(6) (stating that, absent leave of court, an *amicus* brief in support of neither party is due 7 days after petitioner's principal brief); Fed. R. App. P. 29(a)(7) (stating that, absent leave of court, an *amicus curiae* may not file a reply brief); Fed. R. App. P. 29(a)(8) (stating that, absent leave of court, an *amicus curiae* may not participate in oral argument).

As the Supreme Court recently explained, in our adversarial system, courts follow the rule of "party presentation" and "normally decide only questions presented by the parties." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). The *Sineneng-Smith* Court therefore vacated an appellate decision because it primarily based its ruling on the arguments of *amici*, not the parties, in violation of the party presentation rule. *Id.* Consequently, Derivative Plaintiffs are by no means assured that participating as *amici* would protect their rights. And unlike certification for interlocutory appeal, such a circumscribed role would not materially advance the ultimate resolution of these cases.

## Conclusion

For the foregoing reasons and those presented in the Derivative Plaintiffs' motion, the Court should certify its May 8, 2020 opinion for immediate appeal of the following two issues:

(a) Whether plaintiffs have standing to assert derivative claims notwithstanding HERA's succession clause and

(b) Whether the FHFA-C's actions are attributable to the United States such that the court possesses subject-matter jurisdiction to entertain plaintiffs' derivative takings and illegal exaction claims.

Accordingly, Derivative Plaintiffs respectfully request that the Court reissue its May 8, 2020 opinion and order to include a statement finding that the Court's decision denying the Government's motion to dismiss involves controlling questions of law for which there are substantial grounds for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of this litigation.

| | |
|---|---|
| DATED: June 9, 2020 | **SCHUBERT JONCKHEER & KOLBE LLP** |
| | BY: /s/ Robert C. Schubert |
| | Robert C. Schubert<br>Attorney of Record<br>*rschubert@sjk.law* |
| | Three Embarcadero Ctr Ste 1650<br>San Francisco, CA 94111-4018<br>Ph: 415.788.4220<br>Fx: 415.788.0161 |
| OF COUNSEL: | **SCHUBERT JONCKHEER & KOLBE LLP** |
| | Noah M. Schubert<br>*nschubert@sjk.law* |
| | Miranda P. Kolbe<br>*mkolbe@sjk.law* |
| | Three Embarcadero Ctr Ste 1650<br>San Francisco, CA 94111-4018<br>Ph: 415.788.4220<br>Fx: 415.788.0161 |
| | **SHAPIRO HABER & URMY LLP** |
| | Edward F. Haber<br>*ehaber@shulaw.com* |
| | 2 Seaport Lane<br>Boston, MA 02210<br>Ph: 617.439.3939<br>Fx: 617.439.0134 |
| | *Attorneys for Plaintiffs* |