Nos. 13-608C & 13-672C
(Senior Judge Margaret M. Sweeney)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BRYNDON FISHER, *et al.,*

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S SUR-REPLY REGARDING
PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE

<table>
<tr><td></td><td>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General</td></tr>
<tr><td>OF COUNSEL:</td><td>PATRICIA M. McCARTHY<br>Director</td></tr>
<tr><td>FRANKLIN E. WHITE, JR.<br>Assistant Director</td><td>ELIZABETH M. HOSFORD<br>Assistant Director</td></tr>
<tr><td>RETA E. BEZAK<br>Senior Trial Counsel</td><td>s/ Anthony F. Schiavetti<br>ANTHONY F. SCHIAVETTI<br>Senior Trial Counsel</td></tr>
<tr><td>MARIANA T. ACEVEDO<br>Trial Attorney</td><td>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>PO Box 480, Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 305-7572<br>anthony.f.schiavetti@usdoj.gov</td></tr>
<tr><td>August 25, 2023</td><td>Attorneys For Defendant</td></tr>
</table>

## <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

ARGUMENT ................................................................................................................................ 2

I.  *Fairholme Funds* Is Unaffected By *Tyler*; It Binds This Court And Precludes
    Plaintiffs' Claims ................................................................................................... 3

II. The Derivative Plaintiff In *Fairholme Funds* Adequately Represented The
    Interests Of The Derivative Plaintiffs In This Case................................................ 9

CONCLUSION ........................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                       **PAGE(S)**

*Arduini v. Hart*,
    774 F.3d 622 (9th Cir. 2014) ................................................................ 10

*Barrett v. United States*,
    No. 22-99, 2023 WL 124022 (U.S. Jan. 9, 2023) .................................... 11

*Board of Regents of State Colleges v. Roth*,
    408 U.S. 564 (1972) ................................................................................. 5

*Cacciapalle v. United States*,
    143 S. Ct. 563 (2023) .......................................................................... 1, 10

*Cal. Hous. Sec., Inc. v. United States*,
    959 F.2d 955 (Fed. Cir. 1992) ............................................................. 6, 7

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) ........................................................................... 14

*Conti v. United States*,
    291 F.3d 1334 (Fed. Cir. 2002) ............................................................... 8

*Fairholme Funds, Inc. v. United States*,
    26 F.4th 1274 (Fed. Cir. 2022) ...................................................... passim

*Fairholme Funds, Inc. v. United States*,
    147 Fed. Cl. 1 (2019), *aff'd in part, rev'd in part,* 26 F.4th 1274 (Fed. Cir. 2022) .......... 10, 11

*G.A. Enterprises, Inc. v. Leisure Living Communities, Inc.*,
    517 F.2d 24 (1st Cir.1975) ..................................................................... 12

*In re Corinthian Colleges, Inc. S'holder Derivative Litig.*,
    No. SA CV 10-1597-GHK, 2012 WL 8502955 (C.D. Cal. Jan. 30, 2012) .............. 12

*In re Met-L-Wood Corp.*,
    861 F.2d 1012 (7th Cir. 1988) ............................................................... 12

*In re Sonus Networks, Inc, S'holder Derivative Litig.*,
    499 F.3d 47 (1st Cir. 2007) .................................................................... 10

*Loretto v. Teleprompter Manhattan CATV Corp.*,
  458 U.S. 419 (1982) ........................................................................................ 6

*Marbury v. Madison*,
  5 U.S. 137 (1803) ............................................................................................ 5

*Members of Peanut Quota Holders Ass'n, Inc. v. United States*,
  421 F.3d 1323 (Fed. Cir. 2005) ...................................................................... 8

*Monongahela Navigation Co. v. U.S.*,
  148 U.S. 312 (1893) ........................................................................................ 5

*Ohio-Sealy Mattress Mfg. Co. v. Kaplan*,
  90 F.R.D. 21 (N.D. Ill. 1980) ................................................................... 14, 15

*Owl Creek Asia I, L.P. v. United States*,
  143 S. Ct. 563 (2023) ...................................................................................... 1

*Perry Cap. LLC v. Lew (Perry I)*,
  70 F. Supp. 3d 208 (D.D.C. 2014) .................................................................. 6

*Perry Cap. LLC v. Mnuchin (Perry II)*,
  848 F.3d 1072 (D.C. Cir. 2017) ...................................................................... 6

*Perry Cap. LLC v. Mnuchin*,
  864 F.3d 591 (D.C. Cir. 2017) ..................................................................... 6, 7

*Perry Cap. LLC v. Mnuchin*,
  688 F. App'x 2 (D.C. Cir. 2017) ..................................................................... 6

*Phillips v. Washington Legal Foundation*,
  524 U.S. 156 (1998) .................................................................................... 4, 5

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984) .................................................................................... 4, 5

*Seaboard Air Line Ry. Co. v. United States*,
  261 U.S. 299 (1923) ........................................................................................ 5

*Seidel v. Pub. Serv. Co. of New Hampshire*,
  616 F. Supp. 1342 (D.N.H. 1985) ................................................................ 12

*St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*,
  No. 06CIV688SWK, 2006 WL 2849783 (S.D.N.Y. Oct. 4, 2006) ............ 13

*Stockton E. Water Dist. v. United States,*
    583 F.3d 1344 (Fed. Cir. 2009), *on reh'g in part,* 638 F.3d 781 (Fed. Cir. 2011) .................. 14

*Tyler v. Hennepin County, Minnesota,*
    598 U.S. 631, 143 S. Ct. 1369 (2023) .............................................................................. passim

*United States v. Causby,*
    328 U.S. 256 (1946) .......................................................................................................... 4

*Washington Fed. v. United States,*
    26 F.4th 1253 (Fed. Cir. 2022) ...................................................................................... 6, 7

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,*
    449 U.S. 155 (1980) .......................................................................................................... 5

## **OTHER AUTHORITIES**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure
    § 1833 (3d ed. 2019) ......................................................................................................... 12

Restatement (Second) of Judgments § 42 (1982) ...................................................................... 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BRYNDON FISHER et al.,                              )
                                                    )
                  Plaintiffs,                       )
                                                    )
                  v.                                )        Nos. 13-608C & 13-672C
                                                    )        (Senior Judge Margaret M. Sweeney)
THE UNITED STATES,                                  )
                                                    )
                  Defendant.                        )

DEFENDANT'S SUR-REPLY REGARDING
PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE

Pursuant to the Court's Order dated July 26, 2023, ECF No. 101, defendant, the United States, respectfully responds to the July 21, 2023 filing by plaintiffs, Bryndon Fisher *et al.*, replying to the United States' response to plaintiffs' response to the Court's order to show cause, ECF No. 100.  In their latest filing, plaintiffs state that they no longer believe that the decision of the United States Court of Appeals for the Federal Circuit in *Fairholme Funds, Inc. v. United States*, 26 F.4th 1274 (Fed. Cir. 2022), *cert. denied sub nom. Barrett v. United States*, 143 S. Ct. 562 (2023), and *cert. denied sub nom. Owl Creek Asia I, L.P. v. United States*, 143 S. Ct. 563 (2023), and *cert. denied sub nom. Cacciapalle v. United States*, 143 S. Ct. 563 (2023), and *cert. denied,* 143 S. Ct. 563 (2023), binds this Court and requires dismissal of these cases.  Plaintiffs base their position on the decision of the Supreme Court in *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631, 143 S. Ct. 1369 (2023), which they wrongly allege "effected a sea change in regulatory takings law."  Pl. Reply, ECF No. 100, at 1.  *Tyler* did no such thing; the case did not even involve regulatory takings, and the principles on which the decision is based are not novel but longstanding and well-established.  The Supreme Court's decision in *Tyler* has no bearing on the Federal Circuit's decision in *Fairholme Funds*; the Federal Circuit's decision remains both binding precedent in this case and preclusive of plaintiffs' claims.

Separate from whether the substance of their claims fails under *Fairholme Funds*, plaintiffs additionally argue that their claims are not subject to claim or issue preclusion because they allege that the derivative plaintiff in *Fairholme Funds* did not adequately represent them in asserting his substantively identical derivative claims. But plaintiffs do not come close to demonstrating the gross deficiency in representation that would be required to meet the applicable standard. Nor do they establish that the derivative plaintiff in *Fairholme Funds* suffered from a conflict of interest or that any such conflict, even if one existed, would establish adequate representation per se. Finally, even if plaintiffs could establish inadequate representation—and they cannot—the Court would still be bound by the Federal Circuit's decision in *Fairholme Funds* to dismiss each of plaintiffs' claims, even if those claims were not barred by claim and/or issue preclusion.

Accordingly, the United States respectfully requests that the Court dismiss plaintiffs' complaints in their entirety, both because dismissal is required by binding precedent and also because preclusion principles bar plaintiffs' claims.

<u>ARGUMENT</u>

Plaintiffs structure their reply in three sections. In the first, plaintiffs incorrectly argue that the Supreme Court's decision in *Tyler* abrogates the Federal Circuit's holding on the merits in *Fairholme Funds*. *See* Pl. Reply at 2-6. In the second section, plaintiffs argue that this supposed change in the law nullifies the preclusive effect of *Fairholme Funds* on their claims. *Id*. at 6. In our first section below, we demonstrate that *Tyler* did not change the law in any way relevant to *Fairholme Funds* and, thus, it remains binding on this Court and preclusive of plaintiffs' claims.

Plaintiffs' third section argues that the derivative plaintiff in *Fairholme Funds* did not adequately represent the interests of the Enterprises and, thus, the Federal Circuit's holding dismissing those derivative claims does not bind plaintiffs in these cases. *Id*. at 6-10. We refute this argument in our second section below.

I.      *Fairholme Funds* Is Unaffected By *Tyler*; It Binds This Court And Precludes Plaintiffs' Claims

Plaintiffs' latest filing is primarily grounded in the false premise that the Supreme Court's decision in *Tyler* "effected a sea change in regulatory takings law," Pl. Reply at 1, abrogating the Federal Circuit's takings holdings in *Fairholme Funds* and defeating their preclusive effect on plaintiffs' claims. *Id*. at 1-2. But *Tyler*, which is not even a regulatory takings case, has no impact on *Fairholme Funds* or on preclusion. The Supreme Court in *Tyler* did not "announce[] an entirely new legal test courts must apply in defining property," *id*. at 6, or in any way state or imply that its holding was transformative or broadly applicable outside the narrow context of the physical taking of excess value of real property above a tax debt owed. Its analysis on the definition of a property right is consistent with the longstanding principles that the Federal Circuit applied in *Fairholme Funds*.

In *Tyler*, officials in Hennepin County, Minnesota, had sold a 94-year-old woman's home for $40,000 to satisfy a delinquent tax bill of $15,000, keeping the excess $25,000 for the county rather than returning it to her. 143 S. Ct. at 1373-74. A Minnesota statute provided that if real property tax is not paid, a county may obtain a judgment against the property. *Id*. at 1373. Pursuant to the statute, if the judgment is not paid within three years, absolute title vests in the State and the debt is extinguished. *Id*. The State could then sell the property, in which case, in contrast to the outcome under tax sale statutes of nearly every other state, the State would keep all of the proceeds, including any in excess of the tax debt and costs of the sale. *Id*. at 1373,

3

1378.  The statutory scheme provided no mechanism for the former owner to recover the surplus.
*Id.* at 1373.  Ms. Tyler filed a putative class action, bringing claims both for takings under the
Fifth Amendment and excessive fines under the Eighth Amendment.  *Id.* at 1374.

The Supreme Court held that Ms. Tyler had stated a "classic" claim for a taking of
private property.  *Id.* at 1376.  The Court explained that "[t]he Takings Clause does not itself
define property"; instead, courts "draw[] on 'existing rules or understandings' about property
rights," for the definition.  *Id.* at 1375 (quoting *Phillips v. Washington Legal Foundation*, 524
U.S. 156, 164 (1998)).  The Court acknowledged that "State law is one important source" of
those rules and understandings, but stated that it cannot be the only source, or a State could
"'sidestep the Takings Clause by disavowing traditional property interests' in assets it wishes to
appropriate."  *Id.* (quoting *Phillips*, 524 U.S. at 167) (additional citations omitted).  The Supreme
Court, therefore, "also look[s] to 'traditional property law principles,' plus historical practice and
[the Supreme] Court's precedents."  *Id.* (quoting *Phillips*, 524 U.S., at 165–168) (also citing
*United States v. Causby*, 328 U.S. 256, 260–267 (1946); *Ruckelshaus v. Monsanto Co.*, 467 U.S.
986, 1001–1004 (1984)).  The Supreme Court performed this analysis in *Tyler*, finding that
"[t]he principle that a government may not take more from a taxpayer than she owes can trace its
origins at least as far back as Runnymeade in 1215." *id.* at 1376.  Applying that principle, the
Court held that Ms. Tyler possessed a property interest cognizable under the Fifth Amendment.
*Id.*

None of the principles on which the Supreme Court premised its analysis of whether
Ms. Tyler possessed a property right is remotely new.  This is evidenced by the Supreme Court's
extensive citation to long-established authority.  *Id.* at 1375.  The Supreme Court repeatedly
cited *Phillips*, a 1998 case in which it had concluded that "[b]ecause the Constitution protects

rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'"  524 U.S. at 164 (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972)); *see also Ruckelshaus*, 467 U.S. at 1001 (applying the same analysis to commercial data rights).

The rule that a state, or in this case the United States, cannot by statute unilaterally eliminate a property interest is even older.  The Supreme Court in *Tyler* cited *Phillips* and *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980), in which it held that "a State, by *ipse dixit*, may not transform private property into public property without compensation."  *Id*. at 164.  The rule's foundations go back much earlier than that, at least as far as the Supreme Court's decision in *Marbury v. Madison*, 5 U.S. 137 (1803), in which it held that "an act of the legislature, repugnant to the constitution, is void."  *Id*. at 177.  The Supreme Court has applied that general principle more specifically to the context of a statute potentially eliminating a property right protected by the Fifth Amendment at least for well over a century. *See*, *e.g.*, *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 304 (1923) ("Just compensation is provided for by the Constitution and the right to it cannot be taken away by statute.") (citing *Monongahela Navigation Co. v. U.S.*, 148 U.S. 312, 327 (1893)).

Contrary to plaintiffs' assertion, Pl. Reply at 4, the Federal Circuit applied these same principles to determine whether the derivative takings claim in *Fairholme Funds* was grounded in a cognizable property interest.  The Federal Circuit properly looked to established precedent and property law principles to determine whether the Enterprises, as the real parties in interest, had a cognizable property interest on which to base a takings claim.  26 F.4th at 1302-03.  The Court explained that "Supreme Court case law has long held that the right to exclude is an

essential element of property ownership." *Id*. at 1303 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982)).  The Federal Circuit, therefore, examined its established precedent and the existing rules and understandings regarding the alleged property interest – the same analysis undertaken by the Supreme Court in *Tyler*.  *Fairholme Funds*, 26 F.4th at 1303.

In performing this historical analysis, the Federal Circuit correctly held that its "case law is clear that regulated financial entities lack the fundamental right to exclude the government from their property when the government could place the entities into conservatorship or receivership."  *Id*. (citing *Cal. Hous. Sec., Inc. v. United States*, 959 F.2d 955, 958 (Fed. Cir. 1992); *Golden Pac. Bancorp. v. United States*, 15 F.3d 1066, 1074 (Fed. Cir. 1994).  The Federal Circuit then examined established law permitting the Enterprises to be placed into conservatorships, finding that, at least as of the passage of HERA in 2008, the Enterprises "lost their right to exclude the government from their property, including their net worth," and "also lost the right to complain if and when the [Federal Housing Finance Agency (FHFA)] chose to elevate its interests, and the interests of the public, above the interests of the Enterprises." *Fairholme Funds*, 26 F.4th at 1303; *see also Washington Fed. v. United States*, 26 F.4th 1253, 1266 n.9 (Fed. Cir. 2022) ("The highly regulated nature of the Enterprises always limited the investment-backed expectations of their shareholders. To the extent there existed any expectations at all, the shareholders lacked them after the passage of HERA and certainly after the FHFA imposed the conservatorships."); *Perry Cap. LLC v. Lew (Perry I)*, 70 F. Supp. 3d 208, 240 (D.D.C. 2014), *aff'd in part, rev'd in part and remanded sub nom. Perry Cap. LLC v. Mnuchin (Perry II)*, 848 F.3d 1072 (D.C. Cir. 2017), *amended and superseded on reh'g,* 864 F.3d 591 (D.C. Cir. 2017), and *judgment entered,* 688 F. App'x 2 (D.C. Cir. 2017), and *aff'd in part, rev'd in part and remanded sub nom. Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir.

2017) ("Since 1992, when Congress established FHFA's predecessor, the Office of Federal Housing Enterprise Oversight ('OFHEO'), the GSEs have been subject to regulatory oversight, including the specter of conservatorship or receivership under which the regulatory agency succeeds to 'all rights' of the GSEs and shareholders.") (citations omitted).

In a holding that binds this Court and precludes plaintiffs' takings claims, the Federal Circuit therefore held that "[w]ithout this right to exclude, the Enterprises lack any cognizable property interest on which Barrett may base a derivative Fifth Amendment takings claim." *Fairholme Funds*, 26 F.4th at 1303 (citing *Golden Pac.*, 15 F.3d at 1074); *see also Washington Fed.*, 26 F.4th at 1266 (citing *Golden Pac.*, 15 F.3d at 1073-75 for its "holding that Golden Pacific lacked a historically rooted expectation of compensation necessary to establish a Fifth Amendment taking because it chose to invest in a highly regulated entity"); *California Hous. Sec.*, 959 F.2d at 958 (holding that financial institutions could not have developed a historically rooted expectation of compensation because they lacked right to exclude government when it could legally impose a conservatorship or receivership). In contrast to the outlier Minnesota tax sale statute, this feature of Federal conservatorship and receivership statutes is a longstanding mainstay of Federal financial regulatory law. For example, in *Golden Pacific* and *California Housing*, on which the Federal Circuit relied in *Fairholme Funds*, the Court likewise looked to these same "traditional property law principles," *Tyler* at 1375, as well as practice and precedent, in determining that an entity that could legally be placed into conservatorship or receivership lacks the right to exclude the Government and, thus, lacks a cognizable property interest. *See Golden Pac.*, 15 F.3d at 1073-75; *California Hous. Sec.*, 959 F.2d at 958-60.

Plaintiffs, moreover, go on to allege that action by FHFA constituted a taking. Pl. Reply at 5-6. But before any analysis of whether Government action may have constituted a taking, a

court "must first determine whether the claimant has established a property interest for purposes of the Fifth Amendment." *Members of Peanut Quota Holders Ass'n, Inc. v. United States*, 421 F.3d 1323, 1330 (Fed. Cir. 2005) (citing *Conti v. United States,* 291 F.3d 1334, 1339 (Fed. Cir. 2002)).  It is this first step that the Federal Circuit found lacking in *Fairholme Funds*, and which is lacking here.  The Federal Circuit's analysis is the same analysis that the Supreme Court employed in *Tyler*, applied to the facts, law, and history at issue here, leading to the holding that substantively identical derivative takings claims were not grounded in a cognizable property interest.  Although in *Tyler* the Supreme Court moved on to an analysis of whether the county's actions constituted a taking, that was true only because the Court first found that Ms. Tyler possessed a cognizable property interest in the excess value of her home.  *Tyler*, 143 S. Ct. at 1380-81.  In *Fairholme Funds*, by contrast, the Federal Circuit determined that Enterprise shareholders lacked a property interest in the value of their shares.  26 F.4th at 1303. The Federal Circuit's decision in *Fairholme Funds*, therefore, is unaffected by *Tyler* and remains both binding on this Court and preclusive of plaintiffs' claims in this case.  Contrary to plaintiffs' argument, Pl. Reply at 6, *Tyler* did not constitute a change in controlling law and, thus, has no bearing on the preclusion analysis.

Finally, even if plaintiffs could show that *Tyler* somehow called into question the Federal Circuit's takings holding—and they cannot—that Court's dismissal of plaintiffs' illegal exaction and breach of fiduciary duty claims would be unaffected and would still preclude plaintiffs' claims.  By failing to challenge the Federal Circuit's holdings on the derivative illegal exaction and breach of fiduciary duty claims, plaintiffs tacitly concede that those claims must be dismissed in any event, irrespective of *Tyler*.

II.     The Derivative Plaintiff In *Fairholme Funds* Adequately Represented The Interests Of
        The Derivative Plaintiffs In This Case

In our previous filing, we demonstrated that each of plaintiffs' claims is barred by claim

preclusion, issue preclusion, or both, stemming from the Federal Circuit's decision in *Fairholme*

*Funds*, the decisions of the Federal Courts in the District of Columbia in the *Perry* cases, or both.

ECF No. 99 at 5-11.  In their reply, plaintiffs allege that the plaintiffs in *Fairholme Funds*

suffered from a conflict of interest and, because the derivative plaintiff in that litigation did not

adequately represent their claims, they are not precluded.  Pl. Reply at 6-10.

As an initial matter, plaintiffs' argument is limited in scope.  Even if plaintiffs were

correct—and they are not—at most they could show that their claims are not subject to claim or

issue preclusion by the holdings regarding the derivative claims in *Fairholme Funds*.  Even if

that were the case, however, plaintiffs' claims would still fail because those holdings constitute

precedent that binds this Court and requires dismissal of each of plaintiffs' claims.  Moreover,

plaintiffs do not argue that the derivative plaintiffs in the *Perry* cases inadequately represented

their derivative claims; therefore, preclusion stemming from those cases bars at minimum Count

III of plaintiffs' complaint, for breach of fiduciary duty, because the Federal Circuit held that the

same derivative claim asserted in *Fairholme Funds* was precluded by the holdings in the *Perry*

cases.  *Fairholme Funds*, 26 F.4th at 1301; ECF No. 99 at 10-11.[1]

In any event, plaintiffs' allegations do not come close to meeting the standard required to

demonstrate that the representation of shareholders' derivative claims by Andrew T. Barrett in

---

[1]  As we explained in footnote 1 in our previous filing, we continue to assert that issue
preclusion stemming from the *Perry* cases bars each of plaintiffs' claims, although we
acknowledge that the Federal Circuit disagreed regarding the substantively identical
constitutional claims asserted by the derivative plaintiff in *Fairholme Funds*.  ECF No. 99 at 9
n.1.

*Fairholme Funds* was inadequate.  The law in this area is primarily designed to guard against collusion between a nominal derivative plaintiff and a defendant.  *See In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 64 (1st Cir. 2007) (citations omitted); *Arduini v. Hart*, 774 F.3d 622, 635 (9th Cir. 2014).  In measuring inadequacy, courts have looked for indicia of such collusion.  *Id*.  Thus, "the level of inadequacy specified is not 'failure of a representative to invoke all possible legal theories or to develop all possible resources of proof,' but rather representation 'so grossly deficient as to be apparent to the opposing party.'"  *Sonus Networks*, 499 F.3d at 66 (quoting Restatement (Second) of Judgments § 42 (1982)).

   Plaintiffs' allegations of deficiency in Mr. Barrett's representation of the shareholders' derivative claims do not approach such gross deficiency, nor have plaintiffs even alleged any indication of collusion between Mr. Barrett and the United States, the FHFA, or the Enterprises—nor could they.  Instead, plaintiffs primarily allege that the briefing in *Fairholme Funds*, at both the trial and appellate levels, prioritized the direct claims over the derivative.  Pl. Reply at 8-9.  Plaintiffs have failed to demonstrate even this point, however.  On the contrary, although the *Fairholme Funds* plaintiffs maintained—incorrectly—that some of their claims were direct, they vigorously advanced both the direct and derivative claims they asserted.  And contrary to plaintiffs' assertion otherwise, the *Fairholme Funds* plaintiffs defended the derivative claims in their omnibus response to our omnibus motion to dismiss in this Court.  *See, e.g., Fairholme Funds v. United States*, No. 13-465C (Fed. Cl.), ECF No. 428 at 44 (property interest); 56-57 and 58-66 (illegal exaction claim); 69-75 (breach of fiduciary duty claim); Appendix A (indicating that all *Fairholme* plaintiffs join the brief in its entirety).[2]  This Court

---

   [2]  Plaintiffs' claim regarding oral argument is also misleading.  First, the portions of the transcript that plaintiffs cite, Pl. Repy at 8, were presented by counsel for *Cacciapalle v. United States*, not *Fairholme*.  *See Fairholme Funds v. United States*, No. 13-465C (Fed. Cl.), ECF No.

determined that Mr. Barrett's derivative claims survived dismissal and, thus, the *Fairholme Funds* plaintiffs did not address that determination in their opening appeal brief, which addressed the claims on which they had lost. *Fairholme Funds, Inc. v. United States*, 147 Fed. Cl. 1, 51-53 (2019), *aff'd in part, rev'd in part,* 26 F.4th 1274 (Fed. Cir. 2022). In responding to our cross-appeal, however, the plaintiffs-appellants in *Fairholme Funds* defended at length this Court's findings regarding Mr. Barrett's expressly derivative claims. *See Fairholme Funds v. United States*, No. 20-1912, -1914 (Fed. Cir.), ECF No. 58, at 90-106. Moreover, other portions of their briefing address issues common to both the direct and derivative claims. And plaintiffs' allegation that "the Federal Circuit did not have the benefit of adequate briefing on the merits of the derivative takings claims," Pl. Reply at 10, is further undermined by the fact that plaintiffs themselves filed three briefs as *amici curiae* in the appeals defending the derivative claims. *See Fairholme Funds v. United States*, No. 20-1912, -1914 (Fed. Cir.), ECF Nos. 49, 64, 93. Finally, Mr. Barrett continued to defend the derivative claims in a petition for a writ of certiorari, which the Supreme Court denied on January 9, 2023. *Barrett v. United States*, No. 22-99, 2023 WL 124022 (U.S. Jan. 9, 2023).

Whether plaintiffs in this case would have taken a different approach to litigating the derivative claims from the one pursued by Mr. Barrett is irrelevant; they have failed to establish that the derivative plaintiff in *Fairholme Funds* was grossly deficient in representing the interests of shareholders or was involved in any sort of collusion.

---

428 at 179-80, 189, 313-15. Moreover, plaintiffs in the various cases that were the subject of that argument, including plaintiffs here, divided the issues on which they presented argument, with counsel for plaintiffs here addressing the derivative claims on behalf of all derivative plaintiffs by agreement among counsel. *Id*. at 179-80, 189-206.

Having failed to establish that the derivative plaintiff in *Fairholme Funds* did not adequately represent the interests of the corporation for these claims via the traditional test, plaintiffs attempt to circumvent the test by suggesting that if they are able to demonstrate a conflict of interest, that would equate to per se inadequate representation.  Pl. Reply at 6, 9-10. For this proposition, plaintiffs cite only dicta from a bankruptcy case from another circuit that involved neither derivative claims nor a conflict-of-interest analysis.  *Id*. at 6 (citing *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1017 (7th Cir. 1988)).  Courts determining whether a derivative shareholder adequately represents the interests of the corporation, however, have generally declined to apply such hard and fast rules and have instead carefully examined the alleged conflict.  *See*, *e.g.*, *Seidel v. Pub. Serv. Co. of New Hampshire*, 616 F. Supp. 1342, 1350 (D.N.H. 1985) ("[A] stockholder sharing a common interest in the subject matter of the suit is not to be held an inadequate representative by 'purely hypothetical, potential or remote conflicts of interest.'") (quoting *G.A. Enterprises, Inc. v. Leisure Living Communities, Inc.,* 517 F.2d 24, 27 (1st Cir.1975)); *In re Corinthian Colleges, Inc. S'holder Derivative Litig.*, No. SA CV 10-1597-GHK, 2012 WL 8502955, at *15 (C.D. Cal. Jan. 30, 2012) ("A theoretical conflict of interest based on one counsel representing parties in both an individual and a derivative action does not justify a *per se* rule prohibiting the concurrent representation.") (internal quotation marks and citations omitted) (collecting cases).  To successfully demonstrate that representation by the derivative plaintiff in *Fairholme Funds* was inadequate, plaintiffs would have to demonstrate that "that a serious conflict exists and that [the derivative] plaintiff could not be expected to act in the interests of the other shareholders because doing so would harm the plaintiff's other interests."  7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1833 (3d ed. 2019).

Plaintiffs have not shown that any such serious conflict of interest existed in *Fairholme Funds*.  Indeed, there was no conflict of interest at all between direct and derivative constitutional claims because the Federal Circuit held that all the plaintiffs' constitutional claims in *Fairholme Funds* were derivative:  even the purportedly direct claims were substantively derivative.  26 F.4th at 1291-92.  Courts are not bound by the labels that plaintiffs assign to their own claims, but instead must scrutinize the allegations themselves, as both this Court and the Federal Circuit did in *Fairholme Funds*.  *See also St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, No. 06CIV688SWK, 2006 WL 2849783, at *7 (S.D.N.Y. Oct. 4, 2006).  Indeed, even where a potential conflict of interest exists, courts have resolved such a conflict by determining whether claims are primarily derivative or direct.  *See id*. at *8.  Here there is no need to conduct such an analysis because the Federal Circuit already determined that all the constitutional claims in *Fairholme Funds* were derivative in nature.  26 F.4th at 1291-92.  Because all the claims were derivative, there was no conflict of interest in *Fairholme Funds*.

Moreover, plaintiffs wrongly focus exclusively on the litigation in *Fairholme Funds* of the question of whether the claims were direct or derivative.  Pl. Reply at 8-10.  The Federal Circuit found that claims substantively identical to each of plaintiffs' claims failed for reasons unrelated to whether they were direct or derivative, and that would be fatal to either type of claim.  For the takings claim, the Federal Circuit stated that its holding that the Enterprises lack any cognizable property interest on which the derivative plaintiff could base a takings claim would apply with equal force to the purportedly direct takings claims, had they not been dismissed on independent grounds.  *Fairholme Funds*, 26 F.4th at 1303 n.14.  The Federal Circuit also explained that this same logic doomed the illegal exaction claims.  *Id*. at 1303.  Those claims also failed for the additional reason, applicable equally to illegal exaction claims,

whether direct or derivative, that, as the Supreme Court made clear in *Collins v. Yellen*, 141 S.

Ct. 1761, 1776 (2021), the Third Amendment to the Preferred Stock Purchase Agreements

(PSPAs) fell within the FHFA's broad statutory authority.  *Fairholme Funds*, 26 F.4th at 1304.

Finally, although the derivative breach of fiduciary duty claim failed on preclusion grounds—

grounds that also preclude that same claim by plaintiffs here—the Federal Circuit's holding that

the direct plaintiffs had not pleaded a breach of fiduciary duty grounded in a contract or money

mandating statute and, thus, within the jurisdiction of the Court of Federal Claims, *id*. at 1297-

99, applies equally to Mr. Barrett's derivative claim, as well as to the derivative claim asserted

by plaintiffs here.

Therefore, there was no conflict of interest in *Fairholme Funds*.  For each claim at issue

here, whether they were asserted directly or derivatively, the plaintiffs in *Fairholme Funds* were

well-incentivized to defend against these flaws, which apply equally regardless of whether the

claims are direct or derivative.  *See Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 26

(N.D. Ill. 1980) (finding no conflict-of-interest between direct and derivative claims in part

because "any lack of vigor displayed by plaintiffs in prosecuting the derivative claim would

redound to their detriment in the pursuit of their individual claims.").  That these claims failed

does not establish inadequate representation; rather, it establishes that these claims are deficient

as a matter of law.

Finally, that the plaintiffs in *Fairholme Funds* could not recover twice for the same

claims asserted both directly and derivatively does not establish a conflict of interest.  *Contra* Pl.

Reply at 10.  A plaintiff may pursue alternative theories of recovery, even if recovery on one

theory would preclude recovery on the other.  *See Stockton E. Water Dist. v. United States*, 583

F.3d 1344, 1369 (Fed. Cir. 2009), *on reh'g in part,* 638 F.3d 781 (Fed. Cir. 2011).  And courts

are equipped to prevent double recovery and ensure a proper distribution.  *See Ohio-Sealy Mattress Mfg. Co.*, 90 F.R.D. at 26.  As we have demonstrated, the interests of the plaintiffs in *Fairholme Funds*, both those pursuing expressly derivative and purportedly direct claims, were aligned on the issues that the Federal Circuit found fatal to each of the claims that plaintiffs advance in these cases.

Accordingly, plaintiffs have failed to establish that the derivative plaintiff in *Fairholme Funds* inadequately represented the interests of shareholders in bringing his derivative claims. As a result, not only is this Court bound by the Federal Circuit's holding in *Fairholme Funds*, which is dispositive of each of plaintiffs' claims, but plaintiffs are also precluded from re-litigating the claims and issues that were already resolved against them in that litigation.

<u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court dismiss plaintiffs' complaints in their entirety, both because dismissal is required by binding precedent and because preclusion principles bar plaintiffs' claims.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

OF COUNSEL:

<u>s/ Elizabeth M. Hosford</u>

FRANKLIN E. WHITE, JR.
Assistant Director

ELIZABETH M. HOSFORD
Assistant Director

15

RETA E. BEZAK                          s/ Anthony F. Schiavetti
Senior Trial Counsel                   ANTHONY F. SCHIAVETTI
                                       Senior Trial Counsel
MARIANA T. ACEVEDO                     U.S. Department of Justice
Trial Attorney                         Civil Division
                                       Commercial Litigation Branch
                                       PO Box 480, Ben Franklin Station
                                       Washington, D.C. 20044
                                       Tel: (202) 305-7572
                                       anthony.f.schiavetti@usdoj.gov

August 25, 2023                        Attorneys For Defendant