# In the United States Court of Federal Claims

Nos. 13-608C & 13-672C
(Filed: September 1, 2023)

```
*************************************
BRYNDON FISHER et al.,              *
                                    *
            Plaintiffs,             *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant.              *
*************************************
```

Robert C. Schubert, San Francisco, CA, for plaintiffs.

Anthony F. Schiavetti, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY,** Senior Judge

     Plaintiffs in these consolidated cases are shareholders of the Federal National Mortgage Association ("Fannie Mae") who, through a shareholder derivative suit, challenge the actions of the United States during the conservatorship of Fannie Mae. Specifically, plaintiffs take issue with the conservator for Fannie Mae amending a funding agreement between Fannie Mae and the United States Department of the Treasury ("Treasury"). Based on the revisions to that agreement, plaintiffs allege that Fannie Mae is owed the return of money illegally exacted, damages for breach of fiduciary duty, and compensation for a taking pursuant to the Fifth Amendment to the United States Constitution.

     The United States Court of Appeals for the Federal Circuit ("Federal Circuit") recently rejected claims such as those advanced in these consolidated cases. See Fairholme Funds, Inc. v. United States, 26 F.4th 1274 (Fed. Cir. 2022), cert. denied, 143 S. Ct. 563, and cert. denied sub nom. Barrett v. United States, 143 S. Ct. 562, and cert. denied sub nom. Owl Creek Asia I, L.P. v. United States, 143 S. Ct. 563, and cert. denied sub nom. Cacciapalle v. United States, 143 S. Ct. 563 (2023). On February 15, 2023, this court ordered plaintiffs to show cause why, in light of the Federal Circuit's Fairholme decision, their claims should not be dismissed. As explained below, binding precedent compels the dismissal of plaintiffs' claims.

### I. BACKGROUND

#### A. Shareholders Stop Receiving Dividends

Shareholders of Fannie Mae and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), collectively, "the Enterprises," experienced changes in the benefits of owning stock in the Enterprises that occurred in the context of a government rescue of Fannie Mae and Freddie Mac. As recounted by the Federal Circuit:

> The Enterprises suffered devastating financial losses in 2008 when the national housing market collapsed. In response, Congress enacted the Housing and Economic Recovery Act of 2008 (HERA). HERA created the Federal Housing Finance Agency (FHFA), an independent agency tasked with regulating the Enterprises and (if necessary) stepping in as conservator or receiver. 12 U.S.C. §§ 4511, 4617. HERA also contains a Succession Clause, which states that the FHFA "shall, as conservator or receiver . . . immediately succeed to [ ] all rights, titles, powers, and privileges of the [Enterprises], and of any stockholder . . . with respect to the [Enterprises] and the assets of the [Enterprises]." Id. § 4617(b)(2)(A)(i).
>
> With the consent of the Enterprises' boards of directors, the FHFA's Director placed the Enterprises into conservatorship in September 2008. The FHFA Director then negotiated preferred stock purchase agreements (PSPAs) with the Department of Treasury (Treasury) in which Treasury agreed to allow the Enterprises to draw up to $100 billion in capital in exchange for: (1) senior preferred non-voting stock having quarterly fixed-rate dividends and an initial liquidation preference of $1 billion and (2) warrants to purchase up to 79.9% of the common stock of each Enterprise at a nominal price.
>
> FHFA and Treasury amended the terms of the original PSPAs in the years that followed. . . . [The Third Amendment implemented] a "net worth sweep" under the PSPAs[, which] replaced the fixed-rate dividend formula with a variable one that required the Enterprises to make quarterly payments equal to their entire net worth, minus a small capital reserve amount. The net worth sweep caused the Enterprises to transfer most, if not all, of their equity to Treasury, leaving no residual value that could be distributed to shareholders.

Id. at 1282-83 (alterations in first paragraph in original) (citations to appellate joint appendix omitted). The Third Amendment to the PSPAs, the effects of which provide the basis for plaintiffs' claims, was adopted on August 17, 2012. 2d Am. Compl. ¶ 8.

### B. Fannie Mae and Freddie Mac Shareholders File Numerous Suits

As noted by the Federal Circuit, "[s]hareholders launched a series of challenges to the net worth sweep that have worked their way through several fora, including the [United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit")] and the [Supreme Court of the United States ("Supreme Court")]." Fairholme, 26 F.4th at 1283. In addition, "[p]arallel to these unsuccessful attempts to undo the net worth sweep, shareholders filed complaints with the [United States Court of Federal Claims ("Court of Federal Claims")]," id., such as the above-captioned consolidated cases. In one comprehensive opinion, the Federal Circuit resolved nine

appeals arising from decisions of the Court of Federal Claims and ruled that shareholder claims based on the net worth sweep, whether they were direct claims or derivative claims brought on behalf of the Enterprises, could not proceed in this court. Id. at 1305.

### C. Procedural History

Plaintiffs in these consolidated cases are Bryndon Fisher, Bruce Reid, and Erick Shipmon, and they bring derivative claims on behalf of Fannie Mae.[1] 2d Am. Compl. 1. All three plaintiffs own common stock in Fannie Mae, and owned such stock on August 17, 2012, when the Third Amendment was adopted. Id. ¶¶ 24-26.

Mr. Fisher and Mr. Reid filed their original complaint on August 26, 2013. Mr. Shipmon filed his complaint on September 12, 2013. The two suits were consolidated in October of that year. In their second amended complaint filed March 8, 2018, plaintiffs plead three derivative claims on behalf of Fannie Mae. Plaintiffs first assert that the net worth sweep constitutes an uncompensated taking of Fannie Mae's economic value in violation of the Fifth Amendment (Count I). Id. ¶¶ 224-228. Plaintiffs next assert, in the alternative, that the net worth sweep constitutes an illegal exaction of the payments Fannie Mae made to Treasury after the Third Amendment (Count II). Id. ¶¶ 229-237. Plaintiffs also plead a breach-of-fiduciary-duty claim premised on the FHFA owing a fiduciary duty to Fannie Mae once it became Fannie Mae's conservator (Count III). Id. ¶¶ 238-246.

On October 1, 2018, defendant moved to dismiss—in a single, omnibus motion—the claims in this suit and eleven related cases before the undersigned. The court denied the motion as to this matter. Fisher v. United States, 148 Fed. Cl. 478, 502, amended by 149 Fed. Cl. 204 (2020). Plaintiffs requested the court's leave to pursue an interlocutory appeal, which was granted. Id. at 503. The Federal Circuit declined to hear the interlocutory appeal but did not bar plaintiffs from participating in related appeals as amici curiae. See Fisher v. United States, No. 2020-138, slip op. at 2 (Fed. Cir. Aug. 21, 2020) (denying petition for permission to pursue interlocutory appeal); see also Fairholme, 26 F.4th at 1281 (showing that Mr. Fisher, Mr. Reid, and Mr. Shipmon participated as amici curiae in the appeals resolved by that decision).

In the meantime, proceedings in these consolidated cases were stayed. Once the judgment in Fairholme became final, the court granted the parties' request for an enlargement of time so that plaintiffs could consider the effect of the Fairholme decision on their claims. Plaintiffs ultimately requested a continued stay of proceedings, but the court instead required plaintiffs to show cause why their claims should not be dismissed. Fisher v. United States, No. 13-608C, 2023 WL 2025697, at *1 (Fed. Cl. Feb. 15, 2023); id. at *3 (indicating that the issue was "the viability of plaintiffs' claims" in light of the Fairholme decision). Over the course of

---

[1] Erick Shipmon is listed on the docket, and on the second amended complaint, as a plaintiff in this case, and is also the sole plaintiff in case number 13-672C, which was consolidated with this case in 2013. Because Mr. Shipmon's sole claim for relief in case number 13-672C is a derivative Fifth Amendment takings claim premised on the net worth sweep, resolution of this case would also resolve that case regardless of consolidation. In other words, case number 13-672C has, as a practical matter, merged with this case.

briefing plaintiffs' position on dismissal changed and, in consequence, the court ordered a surreply brief from defendant. The parties have now fully briefed the court's show cause order, and the parties did not request, nor does the court require, oral argument.

## II. ANALYSIS

The issue before the court is whether the Federal Circuit's decision in Fairholme compels the dismissal of plaintiffs' claims. Thus, the court's review of the parties' show cause briefing is analogous to its review of a motion filed under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), where the defendant contends that the plaintiff fails to state a claim upon which relief can be granted. See Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."); HCIC Enters., LLC v. United States, 149 Fed. Cl. 424, 425 (2020) (ordering the plaintiff to "show cause why its . . . complaint should not be dismissed pursuant to [RCFC] 12(b)(6)"). The court begins with a brief recapitulation of the three relevant holdings in the Fairholme decision.

One of the plaintiffs in Fairholme, Andrew T. Barrett, asserted a derivative takings claim based on the net worth sweep of the Enterprises' equity. The Federal Circuit ruled that Mr. Barrett failed to state a viable claim, because "the Enterprises lack any cognizable property interest on which [he could] base a derivative Fifth Amendment takings claim." Fairholme, 26 F.4th at 1303. His derivative illegal exaction claim, alleging that FHFA exceeded its statutory authority when conducting the net worth sweep, fared no better. This claim was not plausible because the net worth sweep was "well within the scope of FHFA's statutory authority under HERA." Id. at 1304 (citing Collins v. Yellen, 141 S. Ct. 1761, 1777 (2021); Perry Cap. LLC v. Mnuchin, 864 F.3d 591, 607 (D.C. Cir. 2017)). Finally, Mr. Barrett's derivative claim for breach of fiduciary duty was barred because the D.C. Circuit had already decided, in Perry, that HERA "bars all non-constitutional derivative shareholder" claims, such as a derivative claim for breach of fiduciary duty. Id. at 1300.

Here, all three counts of plaintiffs' second amended complaint present claims of a type that were unequivocally rejected by the Federal Circuit in Fairholme. Plaintiffs argue that Fairholme was incorrectly decided and oppose the dismissal of these consolidated cases so as to preserve their right to appeal. In plaintiffs' initial response to the court's show cause order, however, they conceded that "the Federal Circuit's binding decision in Fairholme . . . requires this Court to dismiss" their claims. Pls.' Br. 2. Defendant, in its response brief, agreed that dismissal of all of plaintiffs' claims was "required by binding precedent." Def.'s Resp. 1.

In their reply brief, plaintiffs changed their position, in part, arguing that their takings claim, Count I, survives Fairholme because intervening precedent from the Supreme Court invalidates the takings analysis set forth in the Fairholme decision. Plaintiffs assert that "in light of the Supreme Court's decision in Tyler [v. Hennepin County, 143 S. Ct. 1369 (2023)], this Court is no longer bound by the Federal Circuit's decision in Fairholme on the merits of the derivative takings claims." Pls.' Reply 11. Indeed, plaintiffs argue that this court "cannot simply dismiss these [consolidated] actions under Fairholme but must reevaluate whether

[plaintiffs] have stated a takings claim on the merits under the new analytical framework the Supreme Court announced in Tyler." Id. at 1-2. Plaintiffs contend that they "have stated a takings claim under Tyler." Id. at 6.

Defendant does not agree that this court is free to reject the Federal Circuit's takings analysis. See Def.'s Surreply 8 ("The Federal Circuit's decision in Fairholme . . . is unaffected by Tyler and remains . . . binding on this Court . . . ."). Defendant's position on this issue is correct. The Supreme Court's decision in Tyler contains no express overruling of the Federal Circuit's takings analysis in Fairholme. This court is bound by Fairholme and must follow that precedent to dismiss all three of plaintiffs' claims.[2] See Strickland v. United States, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005) (stating that "a trial court may not disregard its reviewing court's precedent . . . [unless] the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision"). Even if this court believed that Tyler contains a takings analysis that conflicts with the Federal Circuit's analysis in Fairholme, it would be for the Federal Circuit, en banc, to revise its own precedent. See id. (stating that a trial court that disagrees with controlling precedent is nonetheless obliged to follow it).

### III.  CONCLUSION

Plaintiffs' Fifth Amendment takings, illegal exaction, and breach-of-fiduciary-duty claims are not viable because the binding precedent of Fairholme bars such claims. Accordingly, the court **DISMISSES** plaintiffs' second amended complaint, **WITH PREJUDICE**, for failure to state a claim upon which relief can be granted. The clerk is directed to enter judgment. No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge

---

[2] The court need not address the parties' arguments regarding defendant's alternative proposed basis for the dismissal of plaintiffs' claims—collateral estoppel—because the binding precedent of Fairholme shows that the second amended complaint fails to state a claim upon which relief can be granted.